Robert W. Sealby
Chelan County Prosecuting Attorney's Office
P.O. Box 2596
Wenatchee, WA  98807-2596
509-667-6330
Attorneys for Defendant

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES BOHN, | No. |
| Plaintiff, | |
| vs. | NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 144l(a) (FEDERAL QUESTION) |
| CHELAN COUNTY, | |
| Defendant. | [From Douglas County Superior Court Cause No. 20-2-00147-09] |

TO:  CLERK OF THE ABOVE-ENTITLED COURT

PLEASE TAKE NOTICE that defendant hereby removes to this Court the state court action described below:

1. An action was commenced in the Superior Court of the State of Washington in and for Douglas County entitled *James Bohn v. Chelan County* attached hereto as Exhibit A.  The complaint was filed on June 18, 2020.

NOTICE OF REMOVAL
OF ACTION -1-

**DOUGLAS J. SHAE**
CHELAN COUNTY
PROSECUTING ATTORNEY
401 Washington Street, 5th Floor
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

2.  The date upon which defendant received a copy of the said complaint was June, 23, 2020, when the Chelan County Auditor's office received a copy of the same together with a summons.  A copy of the summons is attached hereto as Exhibit B.

3.  The action is a civil action of which the Court has original jurisdiction under 28 U.S.C. § 1331, and is one that may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441(a), in that it arises under the United States Constitution and 42 U.S.C. § 1983.  The complaint alleges causes of action invoking 42 U.S.C. § 1983 as a result of the alleged violation of plaintiff's rights to due process, equal protection, and the Takings Clause of the United States Constitution.  *See* Exhibit A (complaint) at page 5, 6, 7.

4.  Defendant Chelan County is the sole defendant in this matter and hereby consents to the removal of this case to this Court.

5.  All other pleadings filed in the state court action are attached hereto as Exhibit C.

DATED THIS 21st day of July, 2020.

> s/ ROBERT W. SEALBY
> WSBA # 21330
> Deputy Prosecuting Attorney
> Chelan County Prosecuting Attorney's Office
> *Attorneys for Defendant*
> P.O. Box 2596
> Wenatchee, WA  98807-2596
> Telephone: (509) 667-6330

NOTICE OF REMOVAL
OF ACTION -2-

**DOUGLAS J. SHAE**
CHELAN COUNTY
PROSECUTING ATTORNEY
401 Washington Street, 5th Floor
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

Fax: (509) 667-6511
Email: robert.sealby@co.chelan.wa.us

NOTICE OF REMOVAL
OF ACTION -3-

**DOUGLAS J. SHAE**
CHELAN COUNTY
PROSECUTING ATTORNEY
401 Washington Street, 5th Floor
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2020, I filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

Mr. James Bohn                          bohnengineers@comcast.net

and, I hereby certified that I have mailed by regular United States Postal Service a copy of the foregoing to the following:

Mr. James Bohn
3509 East Deer Road
Mead, WA  99021

s/ ROBERT W. SEALBY
WSBA # 21330
Deputy Prosecuting Attorney
Chelan County Prosecuting Attorney's Office
*Attorneys for Defendant*
P.O. Box 2596
Wenatchee, WA  98807-2596
Telephone: (509) 667-6330
Fax: (509) 667-6511
Email: robert.sealby@co.chelan.wa.us

NOTICE OF REMOVAL
OF ACTION -4-

**DOUGLAS J. SHAE**
CHELAN COUNTY
PROSECUTING ATTORNEY
401 Washington Street, 5th Floor
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

# EXHIBIT A

NOTICE OF REMOVAL
OF ACTION -5-

20-2-00147-09

## CASE TYPE 2

DOUGLAS _____ COUNTY SUPERIOR COURT

### CASE INFORMATION COVER SHEET

Case Number _____ Case Title _____

Attorney Name _JAMES BOHN_____ Bar Membership Number _PRO - SE_

Please check one category that best describes this case for indexing purposes. Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources. Cause of action definitions are listed on the back of this form. Thank you for your cooperation.

**APPEAL/REVIEW**
- ___ Administrative Law Review (ALR 2)
- ___ Appeal of a Department of Licensing Revocation (DOL 2)
- ___ Civil, Non-Traffic (LCA 2)
- ___ Civil, Traffic (LCI 2)

**CONTRACT/COMMERCIAL**
- ___ Breach of Contract (COM 2)
- ___ Commercial Contract (COM 2)
- ___ Commercial Non-Contract (COL 2)
- ___ Third Party Collection (COL 2)

**MERETRICIOUS RELATIONSHIP**
- ___ Meretricious Relationship (MER 2)

**DOMESTIC VIOLENCE/ANTIHARASSMENT**
- ___ Civil Harassment (HAR 2)
- ___ Domestic Violence (DVP 2)
- ___ Foreign Protection Order (FPO 2)
- ___ Vulnerable Adult Protection (VAP 2)

**JUDGMENT**
- ___ Abstract Only (ABJ 2)
- ___ Foreign Judgment (FJU 2)
- ___ Judgment, Another County (ABJ 2)
- ___ Judgment, Another State (FJU 2)
- ___ Tax Warrant (TAX 2)
- ___ Transcript of Judgment (TRJ 2)

**OTHER COMPLAINT/PETITION**
- ___ Action to Compel/Confirm Private Binding Arbitration (MSC 2)
- ___ Change of Name (CHN 2)
- ___ Deposit of Surplus Funds (MSC 2)
- ___ Emancipation of Minor (EOM 2)
- ___ Injunction (INJ 2)
- ___ Interpleader (MSC 2)
- ___ Malicious Harassment (MHA 2)

- ___ Minor Settlement (No guardianship) (MST 2)
- ___ Petition for Civil Commitment (Sexual Predator)(PCC 2)
- ___ Seizure of Property from Commission of Crime (SPC 2)
- ___ Seizure of Property Resulting from a Crime (SPR 2)
- ___ Subpoenas (MSC 2)

**PROPERTY RIGHTS**
- ___ Condemnation (CON 2)
- ___ Foreclosure (FOR 2)
- ___ Land Use Petition (LUP 2)
- ___ Property Fairness (PFA 2)
- ___ Quiet Title (QTI 2)
- ___ Unlawful Detainer (UND 2)

**TORT, MEDICAL MALPRACTICE**
- ___ Hospital (MED 2)
- ___ Medical Doctor (MED 2)
- ___ Other Health Care Professional (MED 2)

**TORT, MOTOR VEHICLE**
- ___ Death (TMV 2)
- ___ Non-Death Injuries (TMV 2)
- ___ Property Damage Only (TMV 2)

**TORT, NON-MOTOR VEHICLE**
- ___ Asbestos (PIN 2)
- ___ Other Malpractice (MAL 2)
- ___ Personal Injury (PIN 2)
- ___ Products Liability (TTO 2)
- ___ Property Damage (PRP 2)
- ___ Wrongful Death (WDE 2)

**WRIT**
- ___ Habeas Corpus (WHC 2)
- ___ Mandamus (WRM 2)
- ___ Restitution (WRR 2)
- ___ Review (WRV 2)

IF YOU CANNOT DETERMINE THE APPROPRIATE CATEGORY, PLEASE DESCRIBE THE CAUSE OF ACTION BELOW.

MISC - UNLAWFUL TAKING OF REAL PROPERTY

NOTICE OF REMOVAL
OF ACTION -6-

James Bohn
3509 East Deer Road
Mead, WA 99021
509-467-1185
Plaintiff – Pro Se



RECEIVED
JUN 23 2020
Auditor
Wenatchee, WA

FILED
JUN 18 2020
TRISTEN WORTHEN
DOUGLAS COUNTY CLERK
WATERVILLE, WA
BY_____DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF DOUGLAS

James Bohn,                )

    Plaintiff          )

    vs.                )

Chelan County,             )

    Defendant           )

No. 20-2-00147-09

COMPLAINT FOR DECLARATORY
JUDGMENT

Comes now, James Bohn, pro se, hereby complains of the Defendant's actions, the unlawful conveyance of the Stehekin Valley Road by Defendant to the United States of America (USA). The subject of this complaint is County Road 21, commonly known as the Stehekin Valley Road (SVR or the road), located in Chelan County, in and through the community of Stehekin, Washington, at the northwest end of Lake Chelan, within the boundaries of the Lake Chelan National Recreation Area (LCNRA) and North Cascades National Park (NCNP).

This action is filed under the Declaratory Judgment Act of the State of Washington and under pertinent sections of the laws of the State of Washington relative thereto, being R.C.W. 7.24.010 and all other pertinent sections.

The Plaintiff is a private property owner in the Stehekin community, Chelan County, Washington. The Plaintiff's small property with modest recreational cabin is bisected by the subject road (Ref: Chelan County tax parcel APN 331736120150). There are many other private properties similarly bisected by, or abutting, to the center line of the road. Chelan County only held the road in the public trust through dedications of right of way (ROW) or easement, and thus, only had a dominate

Bohn v. Chelan County
Complaint for Declaratory Judgment

Page 1 of 8

NOTICE OF REMOVAL
OF ACTION -7-

right and responsibility to operate and maintain the road as a secondary state highway, commonly referred to as a county road. Plaintiff and others similarly situated retained the servient rights and fee title to the land. The road provides the only overland access to the Plaintiff's property, and therefore, he has a special interest in said public road, different in kind and not merely in degree from the general public.

The Defendant was then, now is, and at all times herein mentioned has been a municipal corporation organized and existing under and by virtue of the laws of the State of Washington.

Chelan County, in 1970, aided and abetted by the Department of the Interior, the Bureau of reclamation, the National Park Service (NPS), and other federal agencies (collectively the USA) willfully, fraudulently, and unlawfully conspired to have the road conveyed to the USA in violation of several sections of the Revised Code of Washington (RCW), the United States Code (USC), and Washington State Constitution. The Petitioner specifically complains of the following actions, and results of those actions:

1.  Chelan County willfully, fraudulently, and unlawfully deemed their easement interest to be real property under RCW 36.34.220 as a prerequisite to the conveyance when, in fact, the road only existed as a legal creation from grants of right-of-way for the public way of necessity. A ROW or easement is not legally transferable under RCW 36.34.220 specifically enacted only for the lease or conveyance of real or personal property.

2.  As part of the road conveyance scheme, Chelan County vacated the road in violation of state law RCW 36.87 thus failing to consider and take the administrative steps prescribed therein, which would have proved impossible, foreclosing any possible transfer, thereby protecting the interests of Plaintiff, other Stehekin property owners, and the public from the adverse effects, then, now, and continuing under the present fraudulent claim of fee ownership by the National Park Service (NPS).

Bohn v. Chelan County
Complaint for Declaratory Judgment

NOTICE OF REMOVAL
OF ACTION -8-

3. When the Defendant transferred the rights in and to the public road, there were approximately 44 people residing within the Stehekin community, all being dependent upon the road for ingress and egress to their properties, and for access to the properties from the southeast terminal end known as the Stehekin Landing (ferry terminal). There were numerous other property owners in the area who utilize their property seasonally with recreational homes, all of whom likewise require the road for access.

4. On March 30, 1970, Defendant, by Resolution No. 637-E and quit claim deed, conveyed the road to the United States of America, acting by and through the Bureau of Reclamation. True copies of Resolution 637-E and the quit claim deed are included with Plaintiff's Brief in Support of Declaratory Judgment (Exhibits 13 and 16). The Defendant, by the resolution, purports that the conveyance was authorized by RCW 36.34.220.

5. By its Resolution No. 642-E dated April 20, 1970, the Defendant erroneously determined that the NPS had assumed jurisdiction of all the lands in the Stehekin Valley served by County Road 21 and gave notice of a public hearing to be held on May 11, 1970 to vacate the road. Plaintiff denies the truthfulness of the Chelan County Commissioner's finding in the resolution and denies that the notice of vacation was in accordance with the laws of the State of Washington. True copies of Resolution 642-E and Final Order of Vacation dated May 11, 1970 are included with Plaintiff's Brief in Support of Declaratory Judgment (Exhibits 14 and 15).

6. The State Legislature, in RCW 36.87.010, et. sec., set forth the procedure a county must follow in order to divest itself of the duty to maintain a county road. The action of the Defendant in divesting itself of the duty to maintain County Road 21 was not duly executed thus not legally sufficient for the following reasons:

(a) Notice of Defendant's intention to vacate the road was not given in accordance with RCW 36.87.050.

Bohn v. Chelan County
Complaint for Declaratory Judgment

Page 3 of 8

NOTICE OF REMOVAL
OF ACTION -9-

(b) The required report was not prepared or filed by the County Engineer in accordance with RCW 36.87.010 and RCW 36.87.040.

(c) A hearing was not held and properly documented in accordance with RCW 36.87.060.

(d) There were not sufficient grounds for the vacation of the road under RCW 36.87.060 as the road was constructed and maintained at a considerable public expense, had been in use for more than 80 years, was actually increasing in use, and continued to be important to the private property owners and the public.

(e) Resolution 637-E authorizing the conveyance of the Stehekin road was signed by only two of the three Chelan County Commissioners, and therefore, was not unanimous as required by RCW 36.87.080 (Ref: Session Laws, 1963, applicable at the time of the purported conveyance).

Chelan County fraudulently quit claimed all right, title, and interest in the road to the USA without regard for or protection of the reversionary rights of the servient estates of the property owners. With respect to defined rights and physical titles, Chelan County rights were restricted to holding and maintaining a county road, and there was no physical title or deed to the road or ROW. The titles were held by the respective property owners, and the ROW existed as a granted right from those properties and recorded as encumbrances on those titles.

When the conveyance was made, the NPS non-contractually (verbally) assured the County that it was just taking over "maintenance" and the rights to utilize the road as any county road would continue. Unfortunately for the Stehekin community, the private property owners, and the public, the NPS later claimed to have acquired fee title to the entire Stehekin road. This unfounded claim was sustained in a US District Court quiet title action despite Chelan County attorneys arguing that the transfer by the former county commissioners was not lawful and fraudulent, citing Chelan County Resolution 91-72 (Exhibits 19 and 21).

Bohn v. Chelan County
Complaint for Declaratory Judgment

Page 4 of 8

NOTICE OF REMOVAL
OF ACTION -10-

As a result of the quiet title action, the NPS administers control of the road as exclusive and unrestricted fee title federal land without any respect or recognition of the still valid grants for a County road right of way. Based upon this unlawful conversion or "taking", the NPS is imposing federal management policies upon the private property owners and the public where previously unrestricted road related uses as a county road are now controlled under a federal permit system.

Private and public rights associated with the right-of-way (ROW) for the county road have been diminished or denied under the NPS restrictive management policies and the permit system.

The non-public rights associated with the private properties bisected or abutting the road have been diminished, denied, and possibly lost because of the NPS claim of fee title supporting the restrictive management policies and permit system.

The private property owners and public have lost the free and unrestricted use of the road as a County road, not unlike other county roads, under the terms and conditions of the original grants of ROW, also not unlike ROWs for other county roads.

The property owners suffer a potential loss of guaranteed right of ingress and egress to private property, and a potential loss of reversionary rights to the property overlain by the road right-of-way if the road were ever closed. The NPS has expressed long range plans to convert the road to a foot trail when the private property buyout is complete within the LCNRA. With the NPS claiming fee title ownership of the road, the Plaintiff and private property owners along the route will likely encounter title issues, such as who really owns the servient estate, and those uncertainties will likely aid the NPS in discouraging future prospective buyers of the properties. In other words, the NPS will likely employ the uncertainty and their "ownership" claim to their advantage to negotiate favorable purchase terms to the disadvantage of the property owners. The Plaintiff can testify to the fact that this tactic was successfully utilized against a prospective buyer of the Stehekin property ultimately purchased and successfully developed by the Plaintiff.

Bohn v. Chelan County
Complaint for Declaratory Judgment

Page 5 of 8

NOTICE OF REMOVAL
OF ACTION -11-

State traffic law enforcement responsibilities in the LCNRA and NCNP have been effectively displaced by federal law enforcement. This federal take-over utilizes the quiet title action, the re-definition of the ROW as fee title federal land, and a unique interpretation of the U.S. Constitution Property clause (Article 4, Section 3, Clause 2). The NPS interpretation boldly justifies this new authority with the need to protect the NPS staff from state traffic code scofflaws, and the scofflaws from themselves. The Plaintiff has first hand knowledge of an actual state traffic equipment infraction prosecuted as a federal criminal offense reconditioned under Title 36 CFR §4.2, and done so only because the NPS claimed the road as fee title "federal property" where the event occurred. Had the road stayed under County administration the infraction would have been handled locally in the Chelan County district court.

The Plaintiff and others have been denied due process of law under both the state and federal constitutions because the conveyance scheme was not duly executed and did not afford lawful involvement of the originally and succeeding private landowners and public. The applicable section of the Washington State Constitution states in Article 1, Section 3: *No person shall be deprived of life, liberty or property without due process of law*. The language of the United States Constitution in the Fifth and Fourteenth amendments is identical: 5th reading: *No person shall ... be deprived of life, liberty, or property, without due process of law*, and the 14th reading in part *...nor shall any State deprive any person of life, liberty, or property, without due process of law*.

The conveyance by the County resulting in the quiet title action granting unrestricted fee title in favor of the USA must be seen as an unlawful taking without proper and legal due process being afforded to the Plaintiff and other affected landowners. The effect of the errors committed by the County, USA, and US district court leaves the deeds of the Plaintiff and other affected property legally indeterminate. For example, is the Plaintiff's private property is now divided into three parcels with the NPS apparently the new owner of the middle ROW section and the Plaintiff is left

Bohn v. Chelan County
Complaint for Declaratory Judgment

Page 6 of 8

NOTICE OF REMOVAL
OF ACTION -12-

owning the remaining two areas adjacent to the claimed 60 foot ROW? This division of one parcel into three should be seen as unprecedented, ridiculous, and the direct result of the unprecedented scheme first initiate in 1970 by cooperating public officials, and successfully perpetuated thereafter by the NPS, their attorneys, the Interveners, and the friendly federal court.

The quiet title action must also be seen as a partial taking of the public use without due process. As a County road, private and commercial uses were generally unrestricted subject only to public safety concerns. However, the same ROW under the management of the NPS is restricted to certain favored commercial operations to the exclusion of others, and all because the County illegally conveyed the road and the NPS illegally claims the road is fee title federal land.

Plaintiff has submitted with this complaint a detailed BRIEF IN SUPPORT OF COMPLAINT FOR DECLARATORY JUDGMENT. If statutes of limitations bar civil proceeding on the issues presented, the Plaintiff requests they be tolled because the unusual events and circumstances, the fraudulently egregious behavior by the Chelan County, the NPS and others, and the dire consequences and injustice of leaving the issue unresolved. Furthermore, the collective misdeeds, fraud, and unlawfulness by the identified public officials and agencies were and are so pervasive, for so long, and continuing now, that this issue must he both fully reviewed and lawfully resolved, here, now, and forever. The cloud on the Plaintiff's property deed, and the deeds of other property owners similarly situated, is current and ongoing.

This complaint was filed for the review and correction of the errors committed by Chelan County. With a favorable outcome in this court, the Plaintiff intends on pursuing a suit in US district court to resolve the related errors committed there. The Plaintiff had no other adequate remedy at law to resolve the issues presented.

For the foregoing reasons, in the Complaint and Brief, the Plaintiff prays that the 1970 transfer documents and actions by Chelan County are deemed UNLAWFUL, and therefore, NULL

Bohn v. Chelan County
Complaint for Declaratory Judgment

NOTICE OF REMOVAL
OF ACTION -13-

and VOID. Such a ruling will sustain the simple legal premise of RCW 36.87 and Washington state attorney general opinions on the subject; that once a county road, always a county road, unless truly deemed of no value, then, only when properly vacated according to the prescribed steps with reversionary interests to the landowners.

WHEREFORE, the Plaintiff prays that the Court will grant the following relief:

1. Enter a declaratory judgment that the Stehekin Valley Road was created and exists through grants of right-of-way for a secondary state highway – i.e.: a county road.

2. Enter a declaratory judgment that Chelan County Resolution 637-E, 642-E, and Final Order of Vacation under RCW 36.34.220 were legally insufficient to discharge Chelan County's responsibility to hold, maintain, and protect the Stehekin Valley Road, and thus, the resolutions, and quit claim deed are null and void in their entirety.

3. Enter a declaratory judgment that Chelan County did not employ the administrative steps of RCW 36.87 for the vacation of a County road, and thus, the final resolution to vacate the Stehekin Valley Road is null and void in its entirety.

4. Grant reasonable costs of bring this action, to be determined by the court.

RESPECTFULLY SUBMITTED this ___16___ day of ___JUNE___ 2020

By: _____

James Bohn - Plaintiff

Bohn v. Chelan County
Complaint for Declaratory Judgment

Page 8 of 8

NOTICE OF REMOVAL
OF ACTION -14-

# EXHIBIT B

NOTICE OF REMOVAL
OF ACTION -15-

SUPERIOR COURT OF WASHINGTON

FOR DOUGLAS COUNTY

JAMES BOHN,
Plaintiff,                           )
                                     )          No. 20-2-00147-09
         v.                          )
                                     )          Complaint for Declaratory Judgment
                                     )
CHELAN COUNTY,                       )          SUMMONS (20 days)
Defendant.                           )

TO THE DEFENDANT: A lawsuit has been filed against you in the above entitled court by JAMES BOHN, plaintiff. Plaintiff's claim is stated in the Complaint for Declaratory Judgment and Brief in Support of Complaint for Declaratory Judgment, one copy of each is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

This summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

Signed _____

James Bohn, Plaintiff

3509 East Deer Road

Dated  June 23, 2020

Telephone:  509-467-1185

Email:  bohnengineers@comcast.net

NOTICE OF REMOVAL
OF ACTION -16-

# EXHIBIT C

NOTICE OF REMOVAL
OF ACTION -17-

James A. Bohn
3509 East Deer Road
Mead, WA 99021
509-467-1185
Plaintiff – Pro Se

FILED

JUN 1 8 2020

TRISTEN WORTHEN
DOUGLAS COUNTY CLERK
WATERVILLE, WA
BY_____DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF DOUGLAS

| | | |
|---|---|---|
| James A. Bohn, | ) | |
| Plaintiff | ) | No. 20-2-00147-09 |
| vs. | ) | |
| Chelan County, | ) | BRIEF IN SUPPORT OF COMPLAINT |
| Defendant | ) | FOR DECLARATORY JUDGEMENT |
| | ) | |

_____

BACKGROUND:

In 1970, Chelan County, with a series of resolutions and a quit claim deed, conveyed the county road to the federal government. The road had been established with grants of right-of-way (ROW). Fee title to the land underlying the road was retained by the respective landowners along the route. With the helpful but coercive assistance of Department of Interior attorneys and others, the conveyance was unlawfully made under a narrow, special purpose state law for transfer of "*real or personal property*", RCW 36.34.220. A road ROW, by definition, common understanding, and legal precedence, is a property interest but not real or personal property.

The land-hungry NPS assumed they were getting more land in the Lake Chelan National Recreation Area (LCNRA), possibly because the road/ ROW description with the quit claim deed indicated a "strip of land...". The NPS quickly began imposing restrictions on private and commercial uses while protecting special uses including a concessionaire's monopoly on Stehekin visitor and transportation services. Lawful transportation related rights enjoyed on other county roads were

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 1 of 26

NOTICE OF REMOVAL
OF ACTION -18-

reconditioned as privileges, restricted under a federal permit system, or denied outright by the NPS contrary to the terms and conditions of the unchanged ROW dedication language.

In 1991, because of the unusual restrictions contrary to the original intent to only transfer "maintenance" responsibility, Chelan County attempted to "reclaim" the road by passing Resolution 91-72 and resuming certain maintenance operations. The NPS then sued Chelan County for quiet title in federal court. The NPS prevailed in the final order affirming the transfer as valid and involving a grant of real property in fee title (U.S. District Court CS-92-0331-AAM, E.D. Wash. June 4, 1993). The ruling was improperly supported by several cases involving transfer of properties and land while ignoring the misapplication of state law and the critical fact that the county road only existed as a legal creation from ROW grants. Chelan County attorneys weakly defended the case, failing to successfully argue the fact that the County did not have, and thus, could not transfer fee title, RCW 36.34.220 had been incorrectly applied, and RCW 36.87 specifically enacted for the vacation of roads had not been considered. In Resolution 91-72, Chelan County stated they were *fraudulently* misled by the NPS. This admission may be true but the available records from 1970 indicate both parties mutually cooperated and worked to execute the "conveyance" contrary to state law.

Throughout the process, the public and non-public rights associated with the original grants of ROW have been effectively diminished or denied by the compounding mistakes of Chelan County, the Department of Interior, the NPS, the federal court, so many attorneys, the Interveners, and others with self-serving interests who championed road improvements by the big-spending NPS. Private property owners affected but not involved in the civil action were afforded no involvement or right of appeal. The illegitimate outcome in federal court strengthened and accelerated the NPS assumed powers over road-related maintenance, regulation, and law enforcement. As a consequence, Chelan County has all but abandoned road-related public safety and law enforcement in the Stehekin community.

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 2 of 26

NOTICE OF REMOVAL
OF ACTION -19-

UNLAWFUL ACTIONS:

Misapplication of RCW 36.34.220: The road/ROW was not an ownership interest as "real or personal property", as would be required under this statute and, therefore, the road was not legally conveyable *"for flood control, navigation, or allied purposes"* within the narrow intent of this statute.

The road was vacated in violation of RCW 36.87: This statute was expressly enacted for the vacation of county roads but only when no longer useful to the public. The law mandates several administrative steps intended to protect private and public rights associated with the vacation of county roads. Steps not taken are outlined in the Complaint. As a result, public and private rights to transportation, access, and commercial activities have been diminished by the NPS granting exclusive use contracts to a for-profit concessionaire while restricting or denying similar uses by others under a permit system.

The road was vacated in violation of RCW 36.87.130: This section of the vacation statute prohibits vacating a county road or part thereof which abuts on a body of water unless the purpose of the vacation is for public use. The road abuts Lake Chelan, and the Stehekin River and its tributaries. The NPS may not be a *"public authority"* and the NPS's granting of exclusive use contracts to a for-profit concessionaire may not be *"public purposes"* within the meaning and intent of the statute.

The US District Court case, United States v. Chelan County, CS-92-0331-AAM, (E.D. Wash. June 4, 1993), specifically the Order Granting Motion for Summary Judgment, capitalizes on the earlier errors of Chelan County and the federal agencies. Instead of recognizing the error in misapplying RCW 36.34.220 and not applying RCW 36.87 to the transaction, and the existence of the road as a creation by ROW grants, the court justified the transfer as valid by citing extensive expenditures for improvements and maintenance by the NPS, important uses by federal agencies which must be protected, and the need to regulate and restrict commercial uses under a permit system. Case citations and argument in support of the government's argument involve terminology of fee title,

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 3 of 26

acquisition of land, use of real property, the federal government's exclusive jurisdiction to administer tracts of land, and enforcement of exclusive jurisdiction. Not one case was cited or mention made of the conveyance being limited to the original and specific grant of ROW for a County Road. The final order affirms that the deed was unrestricted, involved a transfer of land, and the NPS has exclusive jurisdiction to manage the now *"federal road"*.

With respect to public safety and law enforcement the NPS, with the road under their control as *"federal land"*, have assumed jurisdiction over state traffic laws *"adopted"* under 36 CFR despite only having proprietary federal jurisdiction (i.e.: lowest level of federal jurisdiction, limited to being the proprietor of land without legislative powers). Under this added insult to the community, simple state traffic law infractions have been elevated to petty criminal offenses with exorbitant fines, and if contested, the burden of travel to distant federal court in Spokane or Yakima.

FACTS and ARGUMENT:

Legal Status of Road: The Stehekin Valley Road was created by right-of-way grants from the landowners and appropriations under R.S. 2477 (1866) across unreserved federal land. The subject road is the 23 plus mile section running northwest from the Stehekin Landing area (Lodge and public boat docks) to Cottonwood Camp, and possibly to the summit of Cascade Pass located on the interior of the North Cascades National Park[1]. The original ROW grants for the road's southeast end above the present high water line of Lake Chelan were made to the County by the Chelan Electric Co and various landowners in 1927 when the road was relocated to higher ground prior to the lake level being raised by the Chelan hydroelectric dam. The deed from Chelan Electric was executed on November 3, 1927 and reads in part: *"... Chelan Electric...for the sum of one dollar ($1.00)... , does ... release, convey, and quit claim unto Chelan County... its successors and assigns, a right of way for highway*

---

[1] Location Map; Stehekin Valley Road within LCNRA (Ref: NPS Land Protection Plan, June 1995)

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 4 of 26

purposes."[2] The ROW for "*a County Road*" was, and still is, recorded as a legal encumbrance on the property deeds held by the abutting landowners.[3] The Plaintiff's property is located in this section of the road with the various succeeding deeds for the small parcel indicating the exception for a *County Road*, for *a Highway*, *a Road*, or *the Road*, all being legally equal in terms of purpose, scope, terms, and conditions.

According to a published opinion by the Washington state office of the Attorney General (AGO 1970 No. 26)[4] "*...the Washington court has consistently held that fee title to a public street or road remains with the abutting landowners, with the public acquiring only a right of passage with powers and privileges implied in the granting of an easement. Finch v. Matthews, 74 Wn.2d 161, 443 P.2d 833 (1968); Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle, 70 Wn.2d 222, 422 P.2d 799 (1967); State ex rel. Patterson v. Superior Court, 102 Wash. 331, 173 Pac. 186 (1918).*" The words '*A right-of-way... for road purposes*' "*creates an easement, not fee simple estate*" Veach v. Culp 599 P.526. In this same case, the court referred to a previous decision which clearly described the legal creation of a ROW: " *In Swan v. O'Leary, ... 225 P.2d 199... this court clarified the holding of Morsbach by stating: 'It is clear that we adopted the rule that when the granting clause if a deed declares the purpose of the grant to be a right-of-way...the deed passes as easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey fee title.'* Accordingly, Chelan County could not legally convey the road as real property, and the NPS cannot claim and the federal court cannot affirm that the road was conveyed with any type of fee interest.

The number of parcels increased over time through the process of land subdivision[5]. The original grants of ROW have been transferred to and are recorded as legal encumbrances in the succeeding deeds. Many of the parcels are now owned by the United States as a result of an aggressive land

---

[2] Quitclaim Deed, dated November 3, 1927
[3] Property deed with encumbrance as "right-of-way for County Road"
[4] Attorney General Opinion AGO 1970 No. 26
[5] Subdivision maps for lakeshore parcels

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 5 of 26

NOTICE OF REMOVAL
OF ACTION -22-

acquisition program. Despite the federal government being the majority landowner in the area, the Chelan County PUD still owns a small acreage and utility easements related to the valley's electrical service and the remaining parcels (~300 acres) are privately owned with current uses under residential, business and agricultural zoning. The ROW recorded with the deeds for all parcels adjoining the road exists as a defined legal right which cannot be taken and converted to an unlimited or exclusive fee title right by prescription, quitclaim deed, or court order. Nor can the road/ROW sections across land owned by the federal government be conditioned, restricted, or treated differently than the sections across private land. No matter who owns the underlying land today, the road/ ROW remains a homogenous legal unit from one end to the other, subject only to the purpose, scope, terms, conditions, and clear language of the original and succeeding grants.

Creation of the LCNRA and NPS jurisdiction: In 1968, Congress created the LCNRA and adjacent national park under Public Law PL90-544,[6] *"subject to valid existing rights"*. This means that the federal lands and NPS management thereof are subject to the valid existing rights rather that the rights being subject to NPS management. The legislation acknowledged the NPS as having only proprietary jurisdiction[7] in managing federal land. This lowest level of federal jurisdiction restricts the federal government to that of a landowner without any legislative powers. Through an aggressive land acquisition program the NPS eventually purchased 1400 of the original 1700 acres of privately owned property in the LCNRA. Concurrent with the NPS desire to control Stehekin through land ownership, Chelan County apparently wished to divest itself of the single road and the costly maintenance. Prior to the enactment of PL-90-544, the NPS and closely aligned environmental groups such as the Sierra Club lobbied Congress for full National Park status and buyout of all private interest in the Stehekin Valley. The compromise was the creation of the LCNRA which would "allow" the community to exist. The NPS went forward undeterred, and taking over the road was only one of many tactics

---

[6] PL90-544 (Sec. 202 created LCNRA)
[7] NPS General Management Plan, Appendix C, VII

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 6 of 26

employed with the goal of reduction and eventual elimination of all private property. The current NPS so called "Land Protection Plan" lists only three (3) acres of land that are not "desired" for acquisition. The few acres must have been left off the list so they can rightly claim they do not want it all.

Public Law 90-544, in Title III, Land Acquisition, Section 301, states in part: "...*the Secretary of the Interior may acquire lands, water, interests therein by donation, purchase.... except that he may not acquire any such interest within the recreation area without the consent of the owner...*" Conversion of the ROW to fee title via the quiet title action is a "taking" done without consent of the many affected private landowners and must be seen as illegal under Section 301.

Misapplication RCW 36.34.220 in violation of RCW 36.87: Chelan County was persuaded by the NPS to deed the road to them in a round about way through the Bureau of Reclamation. This deal was concluded with little notice to the public using the narrow state statute relating to the conveyance of real property for *"flood control, navigation, and allied purposes"* (RCW 36.34.220).[8]

In a key letter[9], the lead attorney for the NPS described the plan: *"I believe that such a procedure will accomplish the purposes we wish and will raise no question as to the legality of the county's actions since this statute was expressly enacted to permit transfer of county properties..."* With respect to the NPS' role, the attorney said: *"...it will be an internal administrative matter for the Bureau to assign responsibility for maintenance of the road to the National Park Service for the reason they have personnel in the area to take care of it and the Bureau does not."*

This plan overlooked two critical facts. The applicability of RCW 36.34.220 is limited to real and personal property belonging to the county, and the ROW is a shared real property interest not transferable without involvement by both parties (i.e.: County and landowners). The ROW exists as a package of limited and specific legal rights entrusted to the County for use by the general public, and all other rights not interfering with the road-related rights were reserved to the adjoining landowners.

---

[8] 1963, c4 §RCW 36.34.220
[9] Letter from Edward Grant to E.R. Whitmore, dated March 16, 1970

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 7 of 26

To protect these rights, the county should have employed RCW 36.87 which requires a formal review and report by the county engineer, notice to the public and affected landowners, a public hearing in advance of the decision to vacate.[10] A review of the vacation statute reveals it is only intended for situations where there is a mutual desired to terminate public use and have full, unencumbered use revert to the landowners. No legal precedence or similar circumstances could be found in any public records to support the vacation / conveyance scheme employed for the Stehekin Valley Road. Had the County followed the lawful process of RCW 36.87 the simple facts disclosed by that process would have forever prevented the vacation and quitclaim to the federal government since the road was still very useful. And, that is most likely why the lawful process was found to be a permanent road block and never mentioned again (except in Stehekin River Resort v. Chelan County lawsuit to be outlined below).

The Washington State Office of the Attorney General confirmed that the lawful vacation of county roads must be made in accordance with RCW 36.87. The intent of vacation is to formally remove the encumbrance from the property deeds when a road is no longer useful. It is NOT intended to permit vacation of a County road (i.e.: to legally terminated), followed by quitclaim to a federal agency (interest terminated but then deeded??), and the federal agency overtly converts (via federal court) the ROW to fee title and unrestricted exclusive use. Again, there is no precedence for this sequence of events and round-about "taking", and rightly so, because the scheme is simply illegal in its entirety:

AGO 57-58 No. 32 [11] reads in part: *"The duty and liability of a county to maintain a county road once a part of the county road system cannot be divested by mere resolution."*

*"The legislature has provided in RCW chapter 36.87, the statutory procedure by which a county may divest itself of the duty and liability of maintaining county roads which become part of the county road*

---

[10] Chapter 36.87 RCW
[11] Attorney General Opinion AGO 57-58 No. 32

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 8 of 26

system… *In conclusion, it is our opinion that a county can only escape the duty and liability of maintaining a county road, once a part of the county road system, by following the statutory vacation procedure. To allow otherwise would deny to the public the safeguards incorporated in the vacation statutes."*

AGO 1980 No.12 [12] reads in part: *"Chapter 36.87 RCW also deals, among other things, with the vacation of county roads upon the petition of freeholders residing in the vicinity thereof. See, RCW 36.87.020 and 36.87.030… We would regard chapters 58.11 RCW and 36.87 RCW as authorizing alternative methods for the vacation of a county road. Moreover, as far as we know, they are the only methods. Therefore, if the vacation of a plat or part thereof entails the vacation of a county road, one or the other of these two laws must be utilized."*

County resolutions to vacate under RCW 36.34.220 violated RCW 36.87: Chelan County unlawfully transferred the subject road under RCW 36.34.220. This section entitled Lease or conveyance to United States for flood control, navigation, and allied purposes states in part: *"If the board of county commissioners… adjudges that it is desirable…and for the interests of the county to lease or convey property, real or personal, belonging to the county… to the United States for the purpose of flood control, navigation, power development, or for use in connection with federal projects…the board, by majority vote, may lease or convey such property to the United States. This property may be conveyed or leased by deed or other instrument of conveyance or lease without notice and upon such consideration, if any, as shall be determined by the board… Any deed issued heretofore by any county to the United State under authority of section 1, chapter 46, Laws of 1937 and the amendments thereto, is ratified and approved and declared to be valid."*

The operative words in RCW 36.34.220 are *"property, real or personal"*. Obviously, the meaning here is full ownership, fee title property belonging to Chelan County. The ROW cannot be

---

[12] Attorney General Opinion AGO 1980 No. 12

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 9 of 26

NOTICE OF REMOVAL
OF ACTION -26-

legally conveyed under this statute since it is a shared property interest involving parties other than Chelan County and the federal government.

The County issued three (3) resolutions to initiate and conclude the transfer:  1) Resolution 637-E, 2) Resolution 642-E, and 3) Resolution - Final Order of Vacation:

RESOLUTION 637-E reads as follows:

*A RESOLUTION authorizing the conveyance to the United States of the Stehekin Valley Road.*

*WHEREAS, the United States has acquired title to virtually all of the property served by the Stehekin Valley Road and has included the same within the newly created North Cascades National Park thereby leaving said road to service virtually no citizens of Chelan County; and*

*WHEREAS, said road is of value to the United States acting by and through the Bureau of Reclamation for the use in making water and snow measurements and surveys; and*

*WHEREAS, by the laws of 1963 chapter 4, the legislature has authorized counties to convey property to the United States for flood control, navigation and allied purposes and said road is no longer of value to the county for county purposes but is of value to the United States for said federal purposes;*

*NOW THEREFORE, BE IT RESOLVED BY THE BOARD OF CHELAN COUNTY COMMISSIONERS as follows; That Chelan County, a Municipal Corporation of the State of Washington, covey to the United States of America, acting by and through the Bureau of Reclamation, by Quit Claim Deed the Stehekin Valley Road, the legal description to which is marked "Description of the Stehekin Valley Road" attached thereto and by this reference made a part hereof.*

*Dated at Wenatchee, Washington, this 30th day of March, 1970.* [13]

Resolution 637-E premise is fraudulent in two ways:  1) The road was still very serviceable and especially valuable to Stehekin residents, Chelan County citizens, and the visiting public, and 2) The

---

[13]  Resolution 637-E; part of record w/Quitclaim Deed; (Vol. 698 Page 253)

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

NPS had not acquired title to virtually all the land since there was approximately 1700 acres of private and/or non-federal land in the boundaries of the LCNRA and NCNP.  Resolution 637-E is additional invalid because it was not unanimously approved, only being signed by two of the three county commissioners.

Resolution 642-E was issued to formally vacate the County's interest in the road.

RESOLUTION 642-E reads as follows:

*WHEREAS, the National Parks Service has assumed jurisdiction of all the land in the Stehekin River Valley served by Chelan County Road No. 21;*

*WHEREAS, it is in the public interest that the administration and responsibility for this road be vested in the National Parks Service;*

*THEREFORE, BE IT RESOLVED that is the desire of the Chelan County Commissioners to formally vacate this road so that the National Parks Service will have this authority;*

*THEREFORE, BE IT RESOLVED THAT A PUBLIC HEARING be held by the County of County Commissioners at their office in the Chelan County Courthouse, Wenatchee, Washington, at the hour of 11:00 AM, Monday, May 11th, 1970, at which time any person may appear for or against said proposed road vacation.*

*Dated this 20th day of April, 1970.*[14]

Resolution 642-E premise is likewise fraudulent:  The NPS had assumed a transfer of management from the U.S. Forest Service, and both agencies only held proprietary federal jurisdiction as a landowner.  Local jurisdiction for public safety and law enforcement was still retained by Chelan County in the entire LCNRA and NCNP areas, and the local county and state elected officials would continue representing the owners of the 1700 acres of private property.

---

[14]  Resolution 642-E

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 11 of 26

NOTICE OF REMOVAL
OF ACTION -28-

RESOLUTION – FINAL ORDER OF VACATION was issued (apparently) to officially vacate the road or some section of the road thought to have been omitted from the legal description in Resolution 642-E.

The resolution reads as follows:

*WHEREAS, by Resolution No. 642-E, dated April 20th, 1970, the Board of County Commissioners indicated their intent to vacate County Road No. 21, from the end of the portion thereof conveyed by deed to the National Park Service March 30, 1970;*

*WHEREAS, due Notice of a Hearing on the proposed vacation was duly posted and advertised pursuant to statute;*

*WHEREAS, said hearing was held by the Board of County Commissioners at their office in the Chelan County Courthouse at the hour of 11:00 AM, Monday, May 11th, 1970;*

*WHEREAS, no one appeared to oppose the proposed vacation;*

*THEREFORE, BE IT RESOLVED that all that portion of the Stehekin Valley Road, known as County road No. 21, lying northerly and westerly of the portion of the same road conveyed to the National Park Service March 30, 1970, is hereby declared vacated.*

*Dated this 11th day of May, 1970.* [15]

The resolutions are inconsistent with procedural steps of RCW 36.87 and Attorney General Opinion AGO 57-58 No. 32 which states that *"a county road once a part of the county road system cannot be divested by mere resolution."*, and, AGO 1980 No.12 which reads in part *"We would regard chapters 58.11 RCW and 36.87 RCW as authorizing alternative methods for the vacation of a county road. Moreover, as far as we know, they are the only methods* (emphasis added).

Moreover, Chelan County presently has no record of any other notices to the public, affected landowners, or Chelan PUD, or any records relating to the referenced public hearing on May 11, 1970

---

[15] Resolution – Final Order of Vacation, County Road No. 21

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 12 of 26

which would typically including items such as a meeting agenda, the county engineer's report, public comments, landowner comments, meeting minutes, and final decision by the county commissioners.

Maybe the County sincerely thought the NPS was legally assuming all jurisdiction in the Stehekin valley and the County was "required to" divest itself of the road. The more likely reason is revealed in the record as a whole. The County wanted to be free of the expensive maintenance of the remote road; the NPS, with bigger budgets, could improve the road; and the NPS wished to "control... the roadside scene" (see Exhibit 19).   The news article entitled "County gets rid of Stehekin Road" documented the event: Turning over title to a 12-mile stretch of county road from Stehekin to Bridge Creek to the federal government was approved Monday by Chelan County commissioners.  And County Engineer Don West breathed a sigh of relief. 'It's one of the most expensive roads to maintain that we have,' West said of the isolated Stehekin area road (Wenatchee World, March 31, 1970)[16]. However, these reasons do not form a valid legal basis to vacate / transfer the county road to the NPS. The County still retained jurisdiction over all private property, the road, and public safety and law enforcement.

The quitclaim deed:  Concurrent with the first resolution, the county commissioners prepared and executed a quitclaim deed On March 30th, 1970, several weeks in advance of the public hearing, and the issuance of Resolution 642-E and the Resolution – Final Order of Vacation. The deed[17] reads as follows: THE GRANTOR, Chelan County, a Municipal Corporation of the State of Washington, for and in consideration of the sum of One Dollar and other valuable consideration conveys and quit claims to the United States of America, acting by and through the Bureau of Reclamation, all right, title and interest in and to the following described county road situated in Chelan County, State of Washington, to-wit:

---

[16]  Wenatchee World, March 31, 1970
[17]  Quit Claim Deed, dated March 30, 1970

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 13 of 26

*The Stehekin Valley Road, the legal description to which is marked "Description of the Stehekin Road" attached hereto and by this reference made a part thereof.*

*Dated this 30th day of March, 1970.*

The attachment reads in part:

*Description of Stehekin Road*

*Parcel A:  A strip of land 60 feet in width, being 30 feet on each side of and running parallel with the following described survey line, to-wit:  (metes and bounds description follows)… containing an area of 1.18 acres.*

*Parcel B:  (similar to A)…containing an area of 13.40 acres.*

*Parcel C:  (similar to A).  No area indicated.*

The assumption by the NPS that the transfer involved "ownership" of land may have been reinforced here since the legal description indicated a "strip of land"[18] and a certain number of acres. This terminology is commonly employed with the ROW descriptions, however, its misinterpretation (or re-definition…) by the NPS and district court is no justification for claiming the deed conveyed real property.  In Swan v. O'Leary, 225 P.2d 199 we are instructed that the parties should be aware of the substance rather than the form of the deed: *"the deed passes as easement only, and not a fee with a restricted use, even though the deed is in the usual form to convey fee title."*

Chronology of events relating to road conveyance:

| | |
|---|---|
| NPS letter; intent to transfer | December 11, 1969[19] |
| NPS survey of road | Prior to March 16, 1970 (See E. Grant letter – Exhibit 9) |
| NPS letter w/ transfer plan | March 16, 1970 (E. Grant letter – Exhibit 9) |
| Resolution No. 637-E: | March 30, 1970 |
| Quitclaim Deed: | March 30, 1970 |

---

[18] Description of Stehekin Valley Road attached to Quit Claim Deed
[19] Letter from NPS Superintendent to Chelan County Commissioners, dated December 11, 1969

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

NOTICE OF REMOVAL
OF ACTION -31-

| Resolution No. 642-E: | April 20, 1970 (includes public hearing notice) |
| Public Hearing | May 11, 1970 (11:00 AM) |
| Resolution – Final Order | May 11, 1970 |

The chronology indicates that the deal was conceived, planned, and executed with the full knowledge of both parties prior to the public notice and hearing. The deed was also prepared concurrent with the first resolution well in advance of the public meeting notice and the actual meeting. This sequence also demonstrates the true intentions of the public officials not wanting public or landowner involvement under RCW 36.87 which would derail the deal which had already been concluded.

United States District Court case CS-92-0331-AAM: This lawsuit was brought by the NPS and North Cascades Conservation Council (NCCC), a special interest "Intervenor" group closely aligned with the ideology and policies of the NPS. The quiet title action was filed in 1992 some months after the County, in 1991, attempted to "reclaim" the road by means of Resolution 91-72 rescinding the 1970 conveyance[20], and by resuming maintenance work on the roadway. The final Order Granting Motion for Summary Judgment[21], dated June 4, 1993, affirmed the transfer and NPS claim of "exclusive title" as valid.

The final ruling in this case was improperly supported by several cases involving transfer of properties and land while ignoring the misapplication of state law and the critical fact that the county road only existed as a legal creation from ROW grants. In the proceedings Chelan County denied the road was lawfully vacated[22] and claimed that the former county commissioners were fraudulently mislead by the NPS in executing the transfer (Res. 91-72, Exhibit 20).

---

[20] Chelan County Resolution 91-72, dated July 9, 1991
[21] USA & NCCC vs. Chelan County; US District Court, No. CS-92-0331-AAM, Order Granting Motion for Summary Judgment
[22] Chelan County's First Amended Answer to the Complaint of the Unite State of America CS-92-0331-AAM

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 15 of 26

NOTICE OF REMOVAL
OF ACTION -32-

A few excerpts from the argument in support of the final order will prove that the government was seeking and was unlawfully "granted" real property in fee title, and restrictions on road uses have been imposed under the NPS special use permit system. It should seem incredible that the term *"right-of-way"* or *"easement"* never appears in the 24 page Summary Judgment. Page and line numbers are shown in parentheses (P-L). (NOTE: Especially egregious is the fact that the NPS and others stood by silently knowing that the road existed as a ROW dedication while their attorneys proceeded to spin the false narrative that Chelan County actually had no title to convey yet the quitclaim of "land" was valid. This aspect of the quiet title action is outlined below in further detail).

A.  *"This civil action is brought by the United States to quiet title to the Stehekin Valley Road... and to enjoin defendant Chelan County and its agents and officers from the using the road without authorization..."* (1-15).

B.  *"the present litigation concerns the legal title to a portion of the Lake Chelan National Recreation Area, specifically, the Stehekin Valley Road which begins at Stehekin Landing on the north end of Lake Chelan and runs in a northwesterly direction approximately 23 miles."* (4-4)

C.  *"The Board of Chelan County Commissioner first sought to transfer the road to the NPS through the Chelan county Port Authority but this route of transfer was foreclosed by certain legal barriers (Footnote 4)"*. (5-17)  The footnote reads: *"The title company through which the parties sought to acquire title insurance refused to issue such insurance if the property was transferred through the Port Authority."* (5-25).

D.  *"In addition to maintenance responsibility, NPS personnel assumed law enforcement responsibilities..."* (10-17).

E.  *"The NPS has also regulated commercial use of the road since 1970. It has issued concession contracts, concession permits, commercial use licenses and special use permits for various*

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 16 of 26

NOTICE OF REMOVAL
OF ACTION -33-

commercial services that occur on federal lands with the Lake Chelan National Recreation Area." (10-21).

F.  "Since 1973, shuttle bus service to various trailhead locations along the Stehekin Valley Road has been provided by the NPS or by a private concessionaire with the NPS's permission. Since 1972, commercial use of the Stehekin Valley road for tours and taxi service has been authorized by the NPS under a single concessions contract. The NPS has also issued special use permits and right-of-way permits for water lines on federal lands which run beneath the surface of the Stehekin Valley Road." (10-26).

G.  "In the past few years, the NPS has denied permission for certain commercial uses of the road by several local residents of the Stehekin Valley. The denials have been based on a perceived conflict between the proposed commercial uses and the contractual right of an NPS concessionaire." (11-9).

H.  On, July 9, 1991, the County adopted Resolution 91-72 which purports to rescind the quitclaim deed...Following the adoption of Resolution 91-72, the County began to take action inconsistent with the United States' ownership of the road." (11-17).

I.  "INTERPRETATION OF THE QUITCLAIM DEED: " ...The intent of the parties is to be derived from the entire instrument and, if ambiguity exists, the situation and circumstances of the parties at the time of the grant are to be considered.... A deed which by its terms conveys land to a grantee operates as a grant of fee. King County v. Hanson Investment Company, 34Wn.2d 112, 119 (1949)." (17-17).

J.  "The deed contains no language whatsoever indicating an intent on the part of the donor to retain a reversionary interest in the road. Nor does the deed limit the United States' use of the land in any way. In fact, the deed is silent as to any alleged purposes for the conveyance." (19-17).

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 17 of 26

NOTICE OF REMOVAL
OF ACTION -34-

K.  *"The resolution's reference to the enabling legislation, which is codified at RCW 36.34.220, merely serves to show the grantee's authority to take title to the land...A companion statute, RCW 36.34.240, gives the federal government exclusive authority to administer tracts or parcels of land conveyed pursuant to RCW 36.34.220."* (19-8).

L.  *"The record is devoid of any evidence which would lend support to the County's claim that the parties agreed, expressly or impliedly, that the United States would administer the road so as to provide users for the road with the same unrestricted access they enjoyed prior to the transfer... Regardless, the County has failed to show that the NPS has stopped or suspended any commercial uses that were in existence at the time of the 1970 transfer. It has merely shown that the NPS refused to permit new or expanded commercial uses on the road."* (21-20).

M.  *"The unconverted facts show that the United States, beginning as early as 1972, has claimed an interest in the Stehekin Valley Road beyond its limited use for flood control, navigation and other water-related purposes. In 1973, the NPS issued a concession permit to John O. E. Moore to provide food, lodging, transportation and other associated services along the road. Since 1972, the NPS began operating a shuttle bus services to various trailhead location along the road. Since 1972, the NPS has authorized commercial use of the Stehekin Valley Road, including tours and taxi, under a single concession contract. Individuals who have attempted to engage in business without the NPS's permission have been cited and prosecuted for their conduct."* (23-1).

N.  *"In 1984, various residents of the Stehekin Valley filed an action in the United States District Court.., attacking the manner in which the recreation area was being administered. The plaintiffs alleged specific grievances concerning the limitations placed on the use of the Stehekin Valley Road and the NPS's regulation of commercial activity. The plaintiffs sought, among other things, to enjoin the United States from attempting to regulate the... Road. While*

NOTICE OF REMOVAL
OF ACTION -35-

*the action was construed as one for judicial review under the APA and dismissed for failure of the plaintiffs to exhaust their administrative remedies, it serves as further evidence of the United States' claim to exclusive title in the Stehekin Valley Road. (23-15).*

Reference in Item N above is to Stehekin Heritage Defense Committee et. al. v. William Clark et. al. USDC C-84-045-RJM. Judicial review was denied on a procedural technicality, yet the presumed outcome is presented as *"further evidence"* to substantiate the claim of exclusive title in the Stehekin Valley Road (24-1).

The myth perpetuated by the government and intervener attorneys include a bizarre claim that *"Chelan County never could have acquired... use of the Stehekin Road"*, or *"a legal right-of-way over them"* (the federal lands) *"because these lands were reserved from entry or settlement"*. The argument continues with the assertion that Chelan County *'baseless ownership claims* amount to *trifling with this court, contrary to Rule 11.* (Apparently suggesting sanctions. See CS-92-0331-AAM, Plaintiff North Cascades Conservation Council's Memorandum of Point and Authorities in Support of Motion for Summary Judgment, Pages 8, 9). The claim directly contradicts the self-executing land grants under R.S. 2477 and indirectly suggests that all of the land in Stehekin is federally owned and residents are now nothing more than trespassers. Contrary to such an unfounded argument, the grants of land in the North Cascades region were originally established by the Great Northern Railway Company and the state of Washington on federal lands opened for development. Succeeding property deeds were carried forward from those original grants. Without question, the ROW dedications for the Stehekin road, a secondary state highway, are legal, with plenty of recorded evidence, and entrusted to Chelan County.

Other judicial actions: Shortly after the road transfer, a small group of Stehekin residents protested the quality and extent of NPS road maintenance. The main complaint was that the NPS did not intend to plow snow on the road spur commonly known as the Company Creek Road branching off the main road at the Harlequin Bridge. The NPS knew that section was not included in the quitclaim

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 19 of 26

deed and thought the County should continue the maintenance as they had for many years prior (Note: A formal ROW did not exist for this private section of road and the protest group thought the NPS could accept it anyway, possibly because of "prescriptive" use and maintenance by the County for a certain number of years). When the County discontinued maintenance, and the NPS likewise declined the task, the protest group filed a lawsuit questioning the legality of the conveyance citing noncompliance with RCW 36.87 (Stehekin River Resort, Inc. v. Chelan County, No. 25845). This action prompted an agreement from the County and NPS to the protesting group: The NPS would take over maintenance of the Company Creek road and pursue a ROW dedication to justify the new task and associated costs. With respect to settling the lawsuit, the action was seen by all parties as legal "leverage" only to obtain a continued maintenance agreement from the County or the NPS. The legality of the conveyance was not an issue since the NPS promised to improve and maintain that section. In the end the protest group received maintenance promise from the NPS in trade for agreeing that the conveyance was legal…The stipulation memorandum dated April 17, 1973 states in part: *That it is for the best interest of all parties concerned that the status of the said road be settled and hereby stipulate that the court may enter its judgment herein declaring that the Chelan County was authorized pursuant to RCW 36.34.220 to convey that portion of County Road No. 21, also known as the Stehekin Valley Road, to the United States of America.* According to LCNRA Final General Management Plan, Appendix G, (1995), the road has not been formally dedicated and the NPS has performed maintenance on the private section since 1970. At that time, no one could foretell the future and how the NPS would incrementally change how the two roads would be managed. Later, in the quiet title action against Chelan County, the stipulation above was referenced several times as "*further evidence*" that RCW 36.34.220 was a lawful method of transferring the road. Despite the very narrow, self-serving agreement benefiting the parties then, the original complaint referencing the statutory

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 20 of 26

NOTICE OF REMOVAL
OF ACTION -37-

omissions of RCW 36.87 remains valid today and is the basis for the Plaintiff's complaint before this court. For further details refer to a series of correspondence on this subject.[23]

NPS acknowledgment of the right-of-way: While the NPS outwardly enjoys its assumed exclusive jurisdiction over the road, internally it seems to understand the legal foundation is a little weak: In a 1974 memorandum[24] on the subject of running a sewer line in the ROW, the NPS Regional Solicitor advised the Park administration about the legal status: *"We have reviewed the right-of-way deed which you forwarded to us with your letter of February 13, 1974, and it is our interpretation of the instrument as a grant of determinable fee. As such, the United States has full title to the strip of land as described in the deed so long as said strip is used for road purposes and no other use is made of the strip which would be incompatible with its use as a road and public thoroughfare. The use of the road for a sewer line which will be buried is not incompatible with its use as a public road and such use would not terminate the interest of the United States."* "You should be aware that the deed could be construed as an easement. The language of the deed even uses the word "easement". However, we do not view this as controlling and believe the proper interpretation is that of determinable fee. *Should the grant be construed by a court as an easement, it could also be held that the United States did not have the right to use the roadway for the laying of a sewer pipe."*(Emphasis added). The memorandum documents NPS understanding of easements as well as their creative interpretation that an easement is not really an easement but a grant of determinable fee, and the specific "road" easement is also a "utility" easement (at least until anyone would question this added use…and take the issue to court).

---

[23] Letter from NPS Director to Congressman H.M. Jackson, dated November 13, 1970
Letter from attorney R. Jeffers to Chelan Co. Commissioners, dated March 29, 1971
Memorandum from NPS Superintendent to NPS Regional Director, dated April 15, 1971
Letter from R. Jeffers to Assistant Regional Solicitor C.R. Neely, May 4, 1973
Appendix G, Final General Management Plan - LCNRA, June 1995
[24] Memorandum from NPS Regional Solicitor to Assistant Regional Director, dated February 20, 1974

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 21 of 26

NOTICE OF REMOVAL
OF ACTION -38-

After the 1992 court case between the NPS and Chelan County, the Plaintiff wrote a letter[25] to the NPS Superintendent inquiring about the final outcome and court affirmed legal status of the road. In the NPS reply letter[26], the park superintendent explained that the *"Court confirmed the validity… of the quitclaim deed… that Chelan County conveyed and quitclaimed to the United States 'all right, title and interest in and to the Stehekin Valley Road'."* While this letter appears to suggest *"all of the road"* was conveyed to the NPS, the reply letter correctly describes the government's interest being limited to an easement/ right-of-way: *"The United States owns an easement for a 60 foot right-of-way, being 30 feet on each side of a surveyed center line. This easement is for the exclusive use, operation, and maintenance of a road with the 60 foot right-of-way. Although adjoining land owners would have retained ownership of the underlying real property, any activity within the 60 foot right-of-way that would adversely affect or interfere with use and maintenance of the road and its ability to accommodate public travel would not be permitted. For your information, we have enclosed a copy of the survey map showing the road right-of-way crossing your property."* In this second paragraph, using the words "easement" two times and the term "right-of-way" four times, the NPS Superintendent acknowledges that the United States' interest in the road is limited to an easement/ right-of-way.

Despite the NPS acknowledgements of the ROW, the several generations of NPS management continue to act as if the conveyance involved an unrestricted grant of land or real property without recognition of the actual legal status as a right-of-way. They owned it, they controlled it, their uses were unlimited but uses by others could be restricted under the permit system, and no one could interfere with the NPS administration of the former county road. To most citizens, this "acting" was accepted without question because the road has been improved and the legal inconsistencies are probably beyond their immediate interest and comprehension. Over time, however, the problems with NPS exclusive management became more apparent and questionable. The unsuccessful effort by the

---

[25] Letter from Bohn to NPS Superintendent Paleck, date January 23, 1997
[26] Letter from Paleck to Bohn, date February 21, 1997

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 22 of 26

County to reclaim the road provided a final, unquestionable sense of legitimacy to the road transfer scheme. To prevent the subject from being revisited, the court ordered Chelan County to refrain from any further legal action.

Unfortunately, the verbal assurances, promises, memos, and letters from the transient NPS employees are hearsay without any legal effect unlike the quiet title summary judgment that will live on forever as a legal precedence if the original error by Chelan County is not corrected here, and the correction carried forward to the federal court. The complaint before this court is the only remedy with which to examine and resolve the legal errors affecting the Plaintiff's property interests.

### SUMMARY of ARGUMENT:

The road conveyance was unlawful under Washington state law, specifically RCW 36.87 and the three related published opinions of the Washington State Attorney General. Additional unlawfulness is apparent under RCW 36.34.220, RCW 36.87.130, and PL90-544.

The road was planned, constructed, maintained at a considerable cost in terms of public and private money, and work effort. A review of newspaper articles collected by, and obtained from, the NPS reveal a significant investment in the road for the public good. In addition, there were funds given by private companies, organizations, and individuals to promote and support the road building effort. Excerpts specific to the Cascade Pass – Stehekin route are included as an exhibit herein[27]. The costs incurred from 1891 to 1970 have not been tabulated or calculated in today's dollars but a cursory review will show a considerable investment for many decades, that the road was indeed valuable, and it was not something to be casually given away by mere resolution by Chelan County.

The property owners adjoining the ROW were denied "due process" protection of the state and federal constitutions when the County unlawfully took and conveyed the road to the NPS in 1970, and

---

[27] Chronology of Cost and Work Effort – Stehekin Valley Road (1891 – 1970)

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 23 of 26

after the 1993 final order in USA & NCCC vs. Chelan County because there was no right of appeal in both situations.

The validity of the Plaintiff's property deed is presently, and will continue to be, indeterminate because of the federal court summary judgment sustaining the NPS interest as fee title for the ROW section, effectively taking this center section away from the Plaintiff ownership. This issue is real, current, ongoing, and must be resolved so that the Plaintiff's deed is legally certain now and in the future.

The public rights to utilize the road as any other county road have been partially taken by the NPS who has reconditioned many of those rights into privileges under a permit system. Since the conveyance in 1970, the general public has been denied full rights to use road as originally granted. As a county road, all persons, legal vehicles, licensed commercial enterprises, and other legal road related activities would have equal access subject only to restrictions related to public safety and engineering standards (e.g.: speed and weight limits). However, since managed as an exclusive federal road, rights to use the road have been diminished or denied under a permit system. Title 18, USC, Section 242 makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States. This issue is real, current, ongoing, and must be resolved first with Chelan County and then with the NPS so that the public can resume use of the road consistent with all county roads.

### LIST of EXHIBITS (corresponding to footnotes in the text):

1    Location Map:  Stehekin Valley Road, Chelan County, WA

2    Quitclaim Deed, dated November 3, 1927

3    Property deed with encumbrance as "right-of-way for County Road"

4    Attorney General Opinion AGO 1970 No. 26

5    Subdivision maps for lakeshore parcels

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 24 of 26

NOTICE OF REMOVAL
OF ACTION -41-

6   PL90-544 (Sec. 202 created LCNRA)

7   NPS General Management Plan, Appendix C, VII

8   1963, c4 §RCW 36.34.220

9   Letter from Edward Grant to E.R. Whitmore, dated March 16, 1970

10  Chapter 36.87 RCW

11  Attorney General Opinion AGO 57-58 No. 32

12  Attorney General Opinion AGLO 1980 No. 12

13  Resolution 637-E; part of record w/Quit Claim Deed; (Vol. 698 Page 253)

14  Resolution 642-E; Vacate Co. Road No. 21 at Stehekin

15  Resolution – Final Order of Vacation, County Road No. 21

16  Wenatchee World, March 31, 1970

17  Quitclaim Deed, dated March 30, 1970

18  Description of Stehekin Valley Road attached to Quit Claim Deed

19  Letter from NPS Superintendent to Chelan County Commissioners, dated December 11, 1969

20  Chelan County Resolution 91-72, dated July 9, 1991

21  USA & NCCC vs. Chelan County; US District Court, No. CS-92-0331-AAM, Order Granting Motion for Summary Judgment

22  Chelan County's First Amended Answer to the Complaint of the USA CS-92-0331-AAM

23  Letter from NPS Director to Congressman H.M. Jackson, dated November 13, 1970

Letter from attorney R. Jeffers to Chelan Co. Commissioners, dated March 29, 1971

Memorandum from NPS Superintendent to NPS Regional Director, dated April 15, 1971

Letter from R. Jeffers to Assistant Regional Solicitor C.R. Neely, May 4, 1973

Appendix G, Final General Management Plan - LCNRA, June 1995

24  Memorandum from NPS Regional Solicitor to Assistant Regional Director, dated February 20, 1974

25  Letter from Bohn to NPS Superintendent Paleck, date January 23, 1997

26  Letter from Paleck to Bohn, date February 21, 1997

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

Page 25 of 26

NOTICE OF REMOVAL
OF ACTION -42-

27 Chronology of Cost and Work Effort – Stehekin Valley Road (1891 – 1970)

RESPECTFULLY SUBMITTED this ___16___ day of ___JUNE___ 2020

By: _____

James Bohn - Plaintiff

Bohn v. Chelan County
Brief in Support of Complaint for Declaratory Judgment

NOTICE OF REMOVAL
OF ACTION -43-





EXH - ②

Page 3 of #-e

Page 1 of 2

JOHN GODFREY
County Auditor.

201/543

No. 160265
QUIT CLAIM DEED

The Grantor, CHELAN ELECTRIC COMPANY, a corporation, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, lawful money of the United States, to it in hand paid, the receipt of which is hereby acknowledged, does by these presents remise, release, convey and quit claim unto CHELAN COUNTY, WASHINGTON, a municipal corporation, its successors and assigns, a right of way for highway purposes situate in the County of Chelan, State of Washington, more particularly described as follows, to-wit:

A strip or parcel of land 60 feet in width, over and across the North half of Lot 5, the Southeast quarter of the Southwest quarter, Lot 3, and the Northeast quarter, Section 31, Township 33 North, Range 18 E.W.M., and also over and across the Northeast quarter of Section 6, Township 33 North Range 17 E.W.M., said strip or parcel of land being more particularly described as follows, to-wit:

Description "A"

A strip or parcel of land 60 feet in width, being 30 feet on each side of and running parallel with the following described line, to-wit:

Beginning at a point in the south boundary of Section 31, Township 33 North, Range 18 E.W.M. which bears west 359.2 feet from the south quarter corner of Section 31 in said Township, thence north 13° 44' west 219.6 feet, thence north 20° 10' east 216.9 feet, thence north 20° 20' east 250.5 feet, thence north 6° 15' west 252.5 feet, thence north 20° 47' west ... thence north 10° 02' west 195.0 feet, thence north 25° 7' west 194.0 feet, thence ... 19' west 115.7 feet, thence north 35° 50' east 162.0 feet, thence north 22° 21' ... thence north 46° 24' west 575.9 feet, thence north 25° 57' west 121.5 feet, thence north 21° 18' west 202.5 feet, thence north 40° 29' west 130.1 feet, thence north 47° ... thence north 59° 24' west 202.2 feet, thence north 44° 47' west 267.4 ... 40' west 190.4 feet, thence north 47° 00' west 181.5 feet, thence ... west 199.0 feet, thence north 63° 25' west 116.8 feet, thence north 63° 32' ... feet, thence north 53° 40' west 162.9 feet, thence north 45° 34' west 43.4 feet, ... west 69.9 feet, thence north 50° 08' west 182.5 feet, thence north 68° ...

... a point ... distant 900.0 feet from the east quarter corner of Section 36, thence north ... west 167.0 feet, thence north 49° 26' west ... feet, thence north 6° 55' west ... feet, thence north 51° 29' west 207.4 feet, thence north 20° 04' west ... feet, thence ... west 121.1 feet, thence north 10° 46' west 69.5 feet, thence north 14° 46' west ... feet, thence north 60° 41' west 109.0 feet, thence north 16° 00' west ... feet, ... west 94.1 feet, thence north 75° 14' west 115.3 feet, thence north 27° 09' west ... thence north 66° 42' west 192.1 feet, thence north 69° 15' west 104.9 feet, ...

EXH-②

Page ⅟ of ⅟ e
Page 2 of 2



544  DEED RECORD—No. 201

CHELAN COUNTY, WASHINGTON

tion in the west boundary of the east one-half of the east one-half of the northwest quarter of the northwest quarter of Section 24, Township 28 North, Range 17, E.W.M., containing an area of 12.40 acres, more or less.

Reserving unto the Grantor, its successors and assigns, the right, in perpetuity, to impound the waters of Lake Chelan and to raise the same to the elevation of 1130 feet, still water measurement, above mean sea level, and thereby inundate and overflow to said elevation the above described property and damage the same by wave wash, erosion, seepage, inundation or any similar cause, which may result from the holding of said waters up to said maximum elevation of 1300 feet, still water measurement, above mean sea level.

TO HAVE AND TO HOLD the said premises, with all the appurtenances, unto the Grantee, its successors and assigns, forever.

IN WITNESS WHEREOF, the said Grantor has caused these presents to be executed this 3rd day of November, 1927.
(CORPORATE SEAL)

CHELAN ELECTRIC COMPANY
By M. W. Birkett
Vice-President.
Attest: T. G. Shinkle
Secretary.

STATE OF WASHINGTON }
County of Spokane } ss,

On this 5 day of November, 1927, before me personally appeared M. W. Birkett and T. G. Shinkle, to me known to be the Vice-President and Secretary, respectively, of Chelan Electric Company, the corporation that executed the within and foregoing instrument, and acknowledged the said instrument to be the free and voluntary act and deed of said corporation for the uses and purposes therein mentioned, and on oath states that they were authorized to execute said instrument, and that the seal affixed is the corporate seal of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Grant D. Godfrey
Notary Public in and for the State of Washington, residing at Spokane.
Filed for record at the request of Chelan County, November 18, 1927
at 9:04 A. M.

JOHN GODFREY
County Auditor.

No. 160266
QUITCLAIM DEED

The Grantor, CHELAN ELECTRIC COMPANY, a corporation organized and existing under the laws of the State of Washington, for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration to it in hand paid, conveys and quitclaims to CHELAN COUNTY, a Municipal Corporation, for highway purposes, the following described property in the County of Chelan, State of Washington, more particularly described:

NOTICE OF REMOVAL
OF ACTION -46-



EXH-3

36-33-17

Page 1 of 5

THIS AGREEMENT, Made and entered into this 25 day of August, 1967, between PAUL KINZEL, individually, and as Executor of the Estate of Mary Helen Kinzel, deceased, Chelan County Probate No. 6015, hereinafter called the "seller," and JACK T. THARP and AVIS E. THARP, husband and wife, of Chelan, Washington, hereinafter called the "purchaser,"

WITNESSETH: That the seller agrees to sell to the purchaser and the purchaser agrees to purchase of the seller the following described real estate situate in the County of Chelan, State of Washington, to-wit:

That part of the Northeast quarter of Section 36, Township 33 North, Range 17 East of the Willamette Meridian, described as follows: Beginning at a point on the North line of said Section 36, which is 1100 feet East of the North ¼ corner; thence East 48 feet; thence South 2°27' East 100.4 feet; thence South 29°42' West 110 feet; thence North 48°15' West 100 feet; thence North 44°45' East 32.5 feet; thence East 34.2 feet; thence North 60 feet to beginning, EXCEPT right of way for County Road described as follows: Beginning at a point 1100 feet East and 25 feet South of the North ¼ corner of said Section 36; thence South 52°10' East 63 feet; thence South 2°27' East 39 feet; thence North 52°10' West 65 feet; thence North 38 feet, more or less to beginning.

with the appurtenances, on the following terms and conditions: The purchase price for said described premises is the sum of Two thousand five hundred and no/100--------- Dollars ($2,500.00) of which the sum of Four hundred and no/100------------------- Dollars ($400.00) has this day been paid, the receipt whereof is hereby acknowledged, and the balance of said purchase price is the sum of Two thousand one hundred and no/100--------- Dollars ($2,100.00) shall be paid as follows: Said unpaid balance shall earn interest at the rate of six per cent (6%) per annum from August 15, 1967, and shall be paid in payments of Forty and no/100-----Dollars ($40.00) per month, or more, including interest, the first of such monthly payments to be on or before September 15, 1967, and to continue on or before the 15th day of each and every month thereafter until the entire balance of principal and interest is paid in full. Payments shall apply first to interest earned and then to retire the principal. Purchasers shall have the right to make payments in advance of the due dates and the right to pay the entire balance in advance, interest to be computed only for the actual time earned.

23253

REAL ESTATE EXCISE TAX
PAID $25.00
Chelan County Treasurer

FEE 300
O FILED FOR RECORD
TRANSAMERICA TITLE INSURANCE CO.
1967 SEP 5 PM 3 56
Cont.
BOOK 683 PAGE 1784-85
CHELAN COUNTY AUDITOR
WENATCHEE, WASH.

THE PURCHASER AGREES:

1. To pay before delinquency all taxes and assessments that may as between seller and purchaser hereafter became a lien on said premises;

2. Until full payment of the said purchase price, to keep all buildings on said described premises insured to the full insurable value thereof against loss or damage by fire and for the seller's benefit as seller's interest may appear, and to pay all premiums therefor and to deliver all policies and renewals thereof to the seller;

3. To assume all hazards of damage to or destruction of any improvements upon the premises, and that no such damage shall constitute a failure of consideration on the part of the seller;

4. That full inspection of said described premises has been made and that the seller shall not be held to any covenant respecting the condition of said premises nor to any agreement for alterations, improvements or repairs unless the agreement relied on be in writing and attached to and made a part of this contract.

LYLE C. HIGGINS
ATTORNEY AT LAW
CHELAN, WASHINGTON

BK 683   1784

September 5, 1967

C4-155

EXH - ③

Page 2 of 5

THIS AGREEMENT, Made and entered into this 25 day of August , 1967,

between     PAUL KINZEL, individually, and as Executor of the Estate of Mary
Helen Kinzel, deceased, Chelan County Probate No. 8915,

hereinafter called the "seller," and     JACK T. THARP and AVIS E. THARP, husband
and wife, of Chelan, Washington,

hereinafter called the "purchaser,"
WITNESSETH: That the seller agrees to sell to the purchaser and the purchaser agrees to purchase of
the seller the following described real estate situate in the County of     Chelan    , State of Washington,
to-wit:

That part of the Northeast quarter of Section 36, Township 33 North,
Range 17, East of the Willamette Meridian, described as follows:
Beginning at a point on the North line of said Section 36, which is 1100 feet
East of the North ¼ corner; thence East 48 feet; thence South 2°27' East 100.4
feet; thence South 39°42' West 110 feet; thence North 48°15' West 100 feet;
thence North 44°45' East 82.5 feet; thence East 34.2 feet; thence North 60 feet
to beginning. EXCEPT right of way for County Road described as follows:
Beginning at a point 1100 feet East and 25 feet South of the North ¼ corner of
said Section 36; thence South 52°10' East 63 feet; thence South 2°27' East 39
feet; thence North 52°10' West 65 feet; thence North 38 feet , more or less to
beginning.

*Exception
created
here.

with the appurtenances, on the following terms and conditions: The purchase price for said described prem-
ises is the sum of  Two thousand five hundred and no/100--------- Dollars ($2,500.00)
of which the sum of   Four hundred and no/100------------------- Dollars ($400.00 )
has this day been paid, the receipt whereof is hereby acknowledged, and the balance of said purchase price
in the sum of      Two thousand one hundred and no/100---------Dollars ($2,100.00)
shall be paid as follows:   Said unpaid balance shall earn interest at the rate of six
per cent (6%) per annum from August 15, 1967, and shall be paid in payments
of Forty and no/100-----Dollars ($40.00) per month, or more, including
interest, the first of such monthly payments to be on or before September 15,
1967, and to continue on or before the 15th day of each and every month
thereafter until the entire balance of principal and interest is paid in full.
Payments shall apply first to interest earned and then to retire the principal.
Purchasers shall have the right to make payments in advance of the due dates
and the right to pay the entire balance in advance, interest to be computed
only for the actual time earned.

33258

REAL ESTATE EXCISE TAX
PAID $25.00
Chelan County Treasurer
T. E. McGrath
By _____
Deputy

FEE 3.00
○ FILED FOR RECORD
TRANSAMERICA TITLE INSURANCE CO.
1967 SEP 5 PM 3 56
Cont
BOOK 683 PAGE 1784-85
CHELAN COUNTY AUDITOR
WENATCHEE, WASH.

THE PURCHASER AGREES:
1. To pay before delinquency all taxes and assessments that may as between seller and purchaser here-
after become a lien on said premises;

2. Until full payment of the said purchase price, to keep all buildings on said described premises insured
to the full insurable value thereof against loss or damage by fire and for the seller's benefit as seller's interest
may appear, and to pay all premiums therefor and to deliver all policies and renewals thereof to the seller;

3. To assume all hazards of damage to or destruction of any improvements upon the premises, and that
no such damage shall constitute a failure of consideration on the part of the seller;

4. That full inspection of said described premises has been made and that the seller shall not be held to
any covenant respecting the condition of said premises nor to any agreement for alterations, improvements
or repairs unless the agreement relied on be in writing and attached to and made a part of this contract.

Maith
LYLE B. HIGGINS
ATTORNEY AT LAW
CHELAN, WASHINGTON

BOOK 683 PAGE 1784

NOTICE OF REMOVAL
OF ACTION -48-



EXH- ③

Page 3 of 5

PRIVATE PROPERTY LEGAL DESCRIPTION

Scale 1" = 40'

Description:

That part of the Northeast quarter of Section 36, Twp. 33 N R.17 E.W.M. described as follows:

Beginning at a point on the North line of said Section 36 which is 1100 feet East of the North 1/4 corner; thence East 48 feet; thence South 2°27' East 100.4 feet; thence South 39°42' West 110 feet; then North 48°18' West 100 feet; thence North 44°43' East 82.5 feet; thence East 34.2 feet; thence North 60 feet to beginning.

Except right of way for County Road described as follows:

Beginning at a point 1100 feet East and 25 feet South of the North 1/4 corner of said Section 36; thence South 52°10' East 51 feet; thence South 2°27' East 39 feet; thence North 52°10 West 65 feet; thence North 38 feet more or less to beginning.

ROW FOR "COUNTY ROAD"

NOTICE OF REMOVAL
OF ACTION -49-

EXH-③

Page 4 of 5



72247

Exhibit "A"

LEGAL DESCRIPTION:

That part of the Northeast quarter of Section 36, Township 33 North, Range 17 East of the Willamette Meridian, Chelan County, Washington, described as follows:

Beginning at a point on the North line of said Section 36, which is 1100 feet East of the North quarter corner;
thence East 48 feet;
thence South 2°27' East 100.4 feet;
thence South 38°42' West 110 feet;
thence North 48°15' West 100 feet;
thence North 44°45' East 82.5 feet;
thence East 34.2 feet;
thence North 60 feet to the beginning.
EXCEPT right of way for roadway described as follows:

Beginning at a point 1100 feet East and 25 feet South of the North quarter corner of said Section 36;
thence South 52°10' East 63 feet;
thence South 2°27' East 39 feet;
thence North 52°10' West 65 feet;
thence North 38 feet, more or less, to the beginning.

ROW DESCRIPTION

NOTICE OF REMOVAL
OF ACTION -50-



AGO_1970_No_026                                                        Page 1 of 5



AGO_1970_No_026
[[Orig. Op. Page 1]]

COUNTIES □- ROADS □- LIMITATIONS ON VACATION.

(1) Section 7, chapter 185, Laws of 1969, Ex. Sess. (RCW 36.87.130) limiting the power of a county to vacate a county road which abuts on a body of salt or fresh water, applies to a county road, a lateral edge of which touches or encroaches upon a body of salt or fresh water, as well as to one whose terminal end touches upon such a body of water.

(2) A county road abuts on a body of salt or fresh water if it touches or encroaches upon the line of ordinary high tide or high water as marked by the line of vegetation.

- - - - - - - - - - - - -

November 30, 1970

Honorable Myron H. Freyd
Prosecuting Attorney
Kitsap County
823 Bay Street
Port Orchard, Washington 98366

Cite as: AGO 1970 No. 26

Dear Sir:

We are writing in response to your recent letter asking for our construction of § 7, chapter 185, Laws of 1969, Ex. Sess. (RCW 36.87.130). We paraphrase your questions as follows:

(1) Does § 7, chapter 185, Laws of 1969, Ex. Sess., limit the vacation of a county road, a lateral right of way line of which touches upon a body of salt or fresh water or does this statute apply only to a county road whose terminal ends touch upon a body of salt or fresh water?

(2) Assuming the statute is to be construed to limit the vacation of roads whose lateral edges touch upon a body of salt or fresh water, what is to be considered the boundary of a "body" of salt or fresh water as the term is used in the statute?

In answer to your first question, we believe that the statute [[Orig. Op. Page 2]] applies to a county road, a

http://www.wa.gov/AGO/opinions/1970/opinion_1970_026.html                    10/1/2003

NOTICE OF REMOVAL
OF ACTION -52-

AGO_1970_No_026                                    EXH - ④                    Page 2 of 5

Page 2 of 5

lateral edge of which touches or encroaches upon a body of salt or fresh water, as well as to one whose terminal end touches upon such a body of water.  The answer to your second question is found in the analysis below.

## ANALYSIS

Section 7, chapter 185, Laws of 1969, Ex. Sess. (now codified as RCW 36.87.130), to which your questions refer, provides as follows:

"No county shall vacate a county road or part thereof which abuts on a body of salt or fresh water unless the purpose of the vacation is to enable any public authority to acquire the vacated property for port purposes, boat moorage or launching sites, or for park, viewpoint, recreational, educational or other public purposes, or unless the property is zoned for industrial uses."1/

Question (1):

Your first question suggests a possible construction of this statute which would interpret the word "abuts" to mean the touching of a body of water only at the terminal end of a county road right of way; conversely, the touching of a body of water by a lateral right of way line, it is suggested, would more appropriately be described as "adjoining" the body of water.  However, we do not consider such an interpretation to be correct in view of the manner in which the words "abuts" or "abutting" have been uniformly used and construed in this state □ both in statutes and in court decisions.

So far as we can determine, the word "abuts" has been consistently used in this state, as it applies to streets or roads, to include both touching at a terminal end and being contiguous on lateral boundaries.  As for the word "abutting," perhaps the most common usage of this word may be found in  [[Orig. Op. Page 3]] the very body of law to which your questions refer; i.e., the law relating to vacation of streets and roads.

For example, the standing of property owners to enjoin the vacation of a street or to recover damages as the result of such a vacation normally has hinged upon whether they were "abutting" owners.  Thus, it was said in the early case of Freeman v. Centralia, 67 Wash. 142, 143, 120 Pac. 886 (1912):

"It is contended that appellants have a right to the use of the streets upon which their property abuts for its entire length, and are entitled to compensation as abutting owners, if any part of the street is vacated. Authority upon the particular proposition advanced is divided; but this court has, in several cases, aligned itself with the great majority of American courts in holding that a property owner does not come within the rule of compensation unless his property abuts upon or touches that part of the street which is actually vacated, or a special or peculiar damage is made to appear; or, to state the proposition in its elementary form, unless his injury differs in kind rather than in degree from that suffered by the general public. . . ."

Accord: Ponischil v. Hoquiam Sash, Etc. Co., 41 Wash. 303, 83 Pac. 316 (1906); Mottman v. Olympia, 45 Wash. 361, 88 Pac. 579 (1907); Kemp v. Seattle, 149 Wash. 197, 270 Pac. 431 (1928); State v. Wineberg, 74 Wn.2d 372, 444 P.2d 787 (1968).

In Hensler v. Anacortes, 140 Wash. 184, 186, 248 Pac. 406 (1926), the court, in determining whether a certain lot was subject to an assessment, construed the word "abut" as used in the foregoing statute to refer to property that faces or abuts the marginal lines of the street being improved.  In thus concluding, the court quoted with approval the

NOTICE OF REMOVAL
OF ACTION -53-

AGO_1970_No_026

Page 3 of 5



EXH-④

Page 3 of 5

following dictionary definitions of the word "abut":

"Century Dictionary defines abut,

"'To touch at the end; be contiguous; join at a border or boundary; terminate; rest: [[Orig. Op. Page 4]] with on, upon, or against before the object; as, his land abuts upon mine; the building abuts on the highway; the bridge abuts against the solid rock.'

"1926 Merriam Series, Webster's New International Dictionary defines abut,

"'To project; to terminate or border; to be contiguous; □-with on, upon, or against; as, his land abuts on the road. Usually abut implies contact, but this is not always so. To end at; to border on; to reach or touch with an end; as, two lots abutting each other.'"

Our statutes relating to the procedures for vacating city streets have similarly referred to property "abutting" in the sense of lateral touching. See, RCW 35.79.010, et seq.

Of particular note is the usage of the word "abutting" in RCW 79.01.448. This statute, granting preferential rights to upland owners to purchase tide or shore lands, provides in part:

"The owner or owners of land abutting or fronting upon tide or shore lands . . ."

Clearly the word "abutting" in the statute is used in the sense of "contiguous to."

In another area where the word "abutting" has been similarly used, the Washington court has consistently held that the fee title to a public street or road remains in "abutting" landowners, with the public acquiring only a right of passage with powers and privileges necessarily implied in the granting of an easement. Finch v. Matthews, 74 Wn.2d 161, 443 P.2d 833 (1968); Puget Sound Alumni of Kappa Sigma, Inc. v. Seattle, 70 Wn.2d 222, 422 P.2d 799 (1967); State ex rel. Patterson v. Superior Court, 102 Wash. 331, 173 Pac. 186 (1918).

Finally we may note that more recent statutes providing for the establishment of limited access highways have referred to the "abutting owner's right of access" and "abutting property" clearly in the sense of property which is contiguous or touching along the lateral edge of the highway right of way. See, RCW 47.52.080. Our court in construing these statutes [[Orig. Op. Page 5]] and discussing access rights of owners of land along the highway, conventionally has referred to land abutting upon the highway. State v. Calkins, 50 Wn.2d 716, 314 P.2d 449 (1957); State v. Besselman, 55 Wn.2d 524, 348 P.2d 406 (1960); Deaconess Hosp. v. Highway Commission, 66 Wn.2d 378, 403 P.2d 54 (1965).

The foregoing legislative and judicial uses of the word "abutting" are by no means exhaustive; however, they fairly represent the uniform meaning which has been given to the word by our legislature and courts. Therefore, consistent with this usage, it is our opinion that as used in chapter 185, the term "abuts" means contiguous, both on the lateral edges of a county road right of way and the terminal end of such a right of way.

Question (2):

Your remaining question assumes the foregoing answer to your initial question, and asks:

NOTICE OF REMOVAL
OF ACTION -54-

". . . what is to be considered the boundary of a 'body' of salt or fresh water as the term is used in . . ." § 7, chapter 185, Laws of 1969, Ex. Sess.?

The apparent purpose of the legislature in enacting this statute2/ was to preserve for the public, for recreational or other purposes, existing access to bodies of salt or fresh water. This purpose has perhaps been brought into sharper focus by the recent court decision upholding the public's right of navigation (and rights corollary thereto) on navigable bodies of water. See Wilbour v. Gallagher, 77 W.D. 2d 307 □ □- P.2d □ □- [[77 Wn.2d 306, 462 P.2d 232]](1969). Also to be noted are Bach v. Sarich, 74 Wn.2d 575, 445 P.2d 648 (1968); and Snively v. Jaber, 48 Wn.2d 815, 296 P.2d 1015 (1956), recognizing the rights of riparian owners and their licensees to use the entire surface of a nonnavigable lake for recreational and other purposes.

In considering your question in the light of this purpose, we may first observe in passing that in the case of navigable bodies of water there are certain statutorily established boundaries between uplands and tidelands (on navigable tidal waters) or shore lands (on navigable fresh waters). See, RCW 79.01.020 □ 79.01.024, which refer to the "line of ordinary high [[Orig. Op. Page 6]] tide" and RCW 79.01.029 □ 79.01.032, which speak of the "line of ordinary high water." In the case of nonnavigable waters, on the other hand, since the contiguous owners on such waters own the bed of the lake, there is no upland and shore land boundary as such.

For the purposes of this opinion, however, we are not so much concerned with these legal boundaries which may exist between the ownership interests of competing property owners as we are with legislative intent in terms of the precise subject at hand; i.e., the extent of a limitation upon the powers of a county to vacate any county road abutting on a body of salt or fresh water. Consistent with the apparent purpose of this legislation □ the preservation of public access to bodies of salt or fresh water □ it is our opinion that the statute should be read as referring to any county road, the lateral or terminal right of way of which touches or encroaches upon the line of ordinary high tide or high water as marked by the line of vegetation □ a line which is more explicitly described in Harkins v. Del Pozzi, 50 Wn.2d 237, 240, 310 P.2d 532 (1957), as the "line which the water impresses on the soil by covering it for sufficient periods to deprive the soil of vegetation . . ." A line inland from this line would not provide usable access to water from the county road since the intervening strip of land, if privately owned, would preclude the public from gaining legal access from the road to the water, except perhaps during unusually high tide or exceptionally high water. On the other hand, it is not likely that a county road will be located below this line of vegetation unless constructed on a structure.

In summary, therefore, it is our opinion that § 7, chapter 185, Laws of 1969, Ex. Sess., precludes (except in specified circumstances) the vacation of a county road, the lateral margin or the terminal end of which touches or encroaches upon that line along a body of salt or fresh water (whether [[Orig. Op. Page 7]] navigable or nonnavigable)3/ which the water impresses on the soil by covering it for sufficient periods to deprive it of vegetation.

We trust the foregoing will be of assistance to you.

Very truly yours,

SLADE GORTON
Attorney General

THOMAS R. GARLINGTON

NOTICE OF REMOVAL
OF ACTION -55-

AGO_1970_No_026

Assistant Attorney General



EXH - ④

Page 5 of 5

### *** FOOTNOTES ***

1/See, also, § 4, chapter 28, Laws of 1969 (RCW 35.79.030), which established an identical limitation upon the vacation of city streets.

2/And the companion provisions of § 4, chapter 28, Laws of 1969 (RCW 35.79.030), supra, dealing with city streets.

3/Although the authorities cited deal particularly with navigable waters, we believe that in order to effect its apparent purpose, the statute should be given a consistent construction in terms of both navigable and nonnavigable waters.

NOTICE OF REMOVAL
OF ACTION -56-



NOTICE OF REMOVAL
OF ACTION -57-



SUBDIVISION MAP

NOTICE OF REMOVAL
OF ACTION -58-



SUBDIVISION MAP

NOTICE OF REMOVAL
OF ACTION -59-



Public Law 90-544
90th Congress, S. 1321
October 2, 1968



## An Act

To establish the North Cascades National Park and Ross Lake and Lake Chelan National Recreation Areas, to designate the Pasayten Wilderness and to modify the Glacier Peak Wilderness, in the State of Washington, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

### TITLE I—NORTH CASCADES NATIONAL PARK

SEC. 101. In order to preserve for the benefit, use, and inspiration of present and future generations certain majestic mountain scenery, snow fields, glaciers, alpine meadows, and other unique natural features in the North Cascade Mountains of the State of Washington, there is hereby established, subject to valid existing rights, the North Cascades National Park (hereinafter referred to in this Act as the "park"). The park shall consist of the lands, waters, and interests therein within the area designated "national park" on the map entitled "Proposed Management Units, North Cascades, Washington," numbered NP-CAS-7002, and dated October 1967. The map shall be on file and available for public inspection in the office of the Director, National Park Service, Department of the Interior, and in the office of the Chief, Forest Service, Department of Agriculture.

*Establishment.*

82 STAT. 926
82 STAT. 927

### TITLE II—ROSS LAKE AND LAKE CHELAN NATIONAL RECREATION AREAS

SEC. 201. In order to provide for the public outdoor recreation use and enjoyment of portions of the Skagit River and Ross, Diablo, and Gorge Lakes, together with the surrounding lands, and for the conservation of the scenic, scientific, historic, and other values contributing to public enjoyment of such lands and waters, there is hereby established, subject to valid existing rights, the Ross Lake National Recreation Area (hereinafter referred to in this Act as the "recreation area"). The recreation area shall consist of the lands and waters within the area designated "Ross Lake National Recreation Area" on the map referred to in section 101 of this Act.

*Establishment.*

SECTION 202 →

SEC. 202. In order to provide for the public outdoor recreation use and enjoyment of portions of the Stehekin River and Lake Chelan, together with the surrounding lands, and for the conservation of the scenic, scientific, historic, and other values contributing to public enjoyment of such lands and waters, there is hereby established, subject to valid existing rights, the Lake Chelan National Recreation Area (hereinafter referred to in this Act as the "recreation area"). The recreation area shall consist of the lands and waters within the area designated "Lake Chelan National Recreation Area" on the map referred to in section 101 of this Act.

### TITLE III—LAND ACQUISITION

SEC. 301. Within the boundaries of the park and recreation areas, the Secretary of the Interior (hereinafter referred to in this Act as the "Secretary") may acquire lands, waters, and interests therein by donation, purchase with donated or appropriated funds, or exchange, except that he may not acquire any such interests within the recreation areas without the consent of the owner, so long as the lands are devoted to uses compatible with the purposes of this Act. Lands

EXH - ⑦ Page 1 of 1
Appendix C: Laws Affecting Lake Chelan NRA

Orders also apply such as the EO 11988 "Floodplain Management."

Policy originates in law. The management of the national park system and Lake Chelan NRA is guided by the Constitution, public law proclamations, executive orders, rules and regulations, and directives by the secretary of the interior. Since 1968, the enactment of NEPA and other new legislation has had a significant effect on policy formulation for Lake Chelan NRA.

## VII. NATIONAL PARK SERVICE AUTHORITY

Authority to regulate NPS areas is an enumerated power under the property clause of the United States Constitution, "Congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States."[10]

The National Park Act, passed by Congress and signed into law by President Wilson on August 25, 1916, delegates rulemaking authority:

> The Secretary of the Interior shall make and publish such rules and regulations as he may deem necessary or proper for the use and management of park, monuments, and reservations under the jurisdiction of the National Park Service.[11]

General and permanent rules promulgated under this authority are codified in the Code of Federal Regulations (CFR), Title 36, which contains regulations specific to the National Park Service. 36 CFR Part 2 is dedicated to Resource Protection, Public Use, and Recreation regulations. Special regulations applicable only to Lake Chelan NRA are found in § 7.62. Violations of any of these rules is a misdemeanor, punishable by a fine of up to $5,000 and imprisonment of up to six months. Cases are brought before a Federal District Court or federal magistrate. The General Authorities Act, P.L. 94-458, provides authority for park rangers with law enforcement commissions to carry firearms, make arrests, execute warrants, and conduct investigations of offenses against the United States.

The applicability of some laws and regulations is dependent on the type of jurisdiction that the federal government has. There are four types of jurisdiction exercised by the federal government over federal lands: exclusive, partial legislative, concurrent, and proprietary. The National Park Service has proprietary jurisdiction over Lake Chelan NRA. Under proprietary jurisdiction, the National Park Service regulates the use of resources, public use and recreation. The state of Washington exercises its full civil and criminal jurisdiction over private activities on federal lands in Stehekin. However, the state may not impose its regulatory power directly upon the United States without specific congressional intent, nor may it tax federal land. The state also cannot regulate the actions of the residents of the federal area in any way which may directly interfere with the performance of a United States function.

The National Park Service generally does not have jurisdiction over felony crimes occurring on privately owned lands within the boundary of Lake Chelan NRA. The National Park Service has jurisdiction over certain Federal offenses, such as the Endangered Species Act, which are offenses wherever they are committed. The Park Service also has authority to regulate activities on privately owned land that threaten the resources or values of Lake Chelan NRA. This is an implied power under the property clause of the Constitution which is supported by a wide body of case law going back nearly a century. In United States v. Alford, 274 U.S. 264 (1927), the Supreme Court upheld the conviction of a defendant who left a fire burning on private property adjacent to federal land. The court held that Congress had a statutory authority to prohibit activity on privately owned land that imperiled federal property. The court reasoned that "the danger depends upon the nearness of the fire, not upon the ownership of the land where it was built." In State of Minnesota by Alexander v. Block, 660 F.2d 1240 (8th Cir. 1981), cert. denied, 455 U.S. 1007, in which it had concluded that "under the authority to protect public land, Congress' power must extend to

419

NOTICE OF REMOVAL
OF ACTION -61-

EXH - Ⓑ

Page 1 of 1

**RCW 36.34.220**
**Lease or conveyance to United States for flood control, navigation, and allied purposes.**

If the board of county commissioners of any county adjudges that it is desirable and for the general welfare and benefit of the people of the county and for the interest of the county to lease or convey property, real or personal, belonging to the county, however acquired, whether by tax foreclosure or in any other manner, to the United States for the purpose of flood control, navigation, power development, or for use in connection with federal projects within the scope of the federal reclamation act of June 17, 1902, and the act of congress of August 30, 1935, entitled "An Act authorizing the construction, repair, and preservation of certain public works on rivers and harbors, and for other purposes," and federal acts amendatory thereof and supplemental thereto, for the reclamation and irrigation of arid lands, the board, by majority vote, may lease or convey such property to the United States for flood control, navigation, and power development purposes, or for use in connection with federal projects for the reclamation and irrigation of arid lands. This property may be conveyed or leased by deed or other instrument of conveyance or lease without notice and upon such consideration, if any, as shall be determined by the board and the deed or lease may be signed by the county treasurer when authorized to do so by resolution of the board. Any deed issued heretofore by any county to the United States under authority of section 1, chapter 46, Laws of 1937 and the amendments thereto, is ratified and approved and declared to be valid.

[1963 c 4 § 36.34.220. Prior: 1945 c 94 § 1; 1941 c 142 § 1; 1937 c 46 § 1; Rem. Supp. 1945 § 4015-6.]

NOTICE OF REMOVAL
OF ACTION -62-



United States Department of the Interior

OFFICE OF THE SOLICITOR

PORTLAND REGION, 1002 N.E. HOLLADAY ST.
P. O. Box 4621, Portland, Oregon  97208

Ex. R I
EXH-⑨ Page 1 of 2

In reply refer to:

March 16, 1970

Mr. E. R. Whitmore
Attorney at Law
P. O. Box 596
Wenatchee, Washington  98801

Dear Mr. Whitmore:

As you may have been informed we are considering a new approach to the transfer of the Stehekin Valley Road.  The local branch of the title company raised some objection to a transfer through the Port District and it was necessary to abandon this idea.  Faced with this dilemma I conferred at considerable length with Mr. William Noel, Divisional Manager and Vice-President of Pioneer National Title Company.  He suggested that the conveyence should be made pursuant to Section 36.34.220 RCW and stated that the Company would issue a policy if such conveyence were made, subject only to certain exceptions on the portions acquired by prescription which the Government could accept.

I contacted the Bureau of Reclamation through their attorney, Mr. William Burpee, Field Solicitor, P. O. Box 8008, Boise, Idaho 83707.  Mr. Burpee informed me that the Project Director was quite willing to accept the road as project related, in that it is used for water and snow measurement.  Since these deeds are normally to the United States of America (although it does not matter if deed shows "acting by and through the Bureau of Reclamation"), and since the Bureau is a member of the same Department as the National Park Service, it will be an internal administrative matter for the Bureau to assign responsibility for maintenance of the road to the National Park Service for the reason they have personnel in the area to take care of it and the Bureau does not.

I believe that such a procedure will accomplish the purpose we wish and will raise no question as to the legality of the county's actions since this statute was expressly enacted to permit transfer of county properties to the Bureau of Reclamation.

NOTICE OF REMOVAL
OF ACTION -63-

EXH - (9)

Page 2 of 2

If you concur and the commissioners agree I request that you prepare a
quitclaim deed for the road. The deed would then be mailed to Mr. Burpee
as attorney for the Bureau of Reclamation. I believe Chelan County has
made previous conveyances to the Bureau of Reclamation and any previously
approved deed form, or any statutory quitclaim deed form, would be accept-
able. In the event you do not have a copy of the description of the        *NPS*
Stehekin Road I enclose a copy of the survey made by a registered engineer  *SURVEYED*
in the employ of the National Park Service. Because of the isolation        *ROAD*
of the area, there may be some minor errors, but they would be trivial
in extent and should cause no one any difficulty.

Thank you for your cooperation.

Sincerely,

Edward E. Grant
Attorney

Enclosure

cc: Keith Watkins, Realty Officer
    National Park Service
    Doneen Building, Room 533
    5 North Wenatchee Avenue
    Wenatchee, Washington  98801

    Roger J. Contor, Superintendent
    North Cascades National Park
    Sedro Woolley, Washington  98284

NOTICE OF REMOVAL
OF ACTION -64-

Chapter 36.87 RCW   **EXH - ⑩**
ROADS AND BRIDGES -- VACATION

Page 1 of 4

## SECTIONS

36.87.010 Resolution of intention to vacate.

36.87.020 County road frontage owners' petition -- Bond, cash deposit, or fee.

36.87.030 Freeholders' petition -- Action on petition.

36.87.040 Engineer's report.

36.87.050 Notice of hearing on report.

36.87.060 Hearing.

36.87.070 Expense of proceeding.

36.87.080 Majority vote required.

36.87.090 Vacation of road unopened for five years -- Exceptions.

36.87.100 Classification of roads for which public expenditures made -- Compensation of county.

36.87.110 Classification of roads for which no public expenditures made -- Compensation of county.

36.87.120 Appraised value as basis for compensation -- Appraisal costs.

36.87.130 Vacation of roads abutting bodies of water prohibited unless for public purposes or industrial use.

36.87.140 Retention of easement for public utilities and services.

36.87.900 Severability -- 1969 ex.s. c 185.

**RCW 36.87.010**
**Resolution of intention to vacate.**
When a county road or any part thereof is considered useless, the board by resolution entered upon its minutes, may declare its intention to vacate and abandon the same or any portion thereof and shall direct the county road engineer to report upon such vacation and abandonment.

[1969 ex.s. c 185 § 1; 1963 c 4 § 36.87.010. Prior: 1937 c 187 § 48; RRS § 6450-48.]

**RCW 36.87.020**
**County road frontage owners' petition -- Bond, cash deposit, or fee.**
Owners of the majority of the frontage on any county road or portion thereof may petition the county legislative authority to vacate and abandon the same or any portion thereof. The petition must show the land owned by each petitioner and set forth that such county road is useless as part of the county road system and that the public will be benefited by its vacation and abandonment. The legislative authority may (1) require the petitioners to make an appropriate cash deposit or furnish an appropriate bond against which all costs and expenses incurred in the examination, report, and proceedings pertaining to the petition shall be charged; or (2) by ordinance or resolution require the petitioners to pay a fee adequate to cover such costs and expenses.

[1991 c 363 § 89; 1985 c 369 § 4; 1963 c 4 § 36.87.020. Prior: 1937 c 187 § 49, part; RRS § 6450-49, part.]

**NOTES:**

NOTICE OF REMOVAL
OF ACTION -65-

Page 2 of 4

EXH - 10

Purpose -- Captions not law -- 1991 c 363: See notes following RCW 2.32.180.

Page 2 of 4

**RCW 36.87.030**
**Freeholders' petition -- Action on petition.**
On the filing of the petition and bond and on being satisfied that the petition has been signed by petitioners residing in the vicinity of the county road or portion thereof, the board shall direct the county road engineer to report upon such vacation and abandonment.

[1963 c 4 § 36.87.030. Prior: 1937 c 187 § 49, part; RRS § 6450-49, part.]

**RCW 36.87.040**
**Engineer's report.**
When directed by the board the county road engineer shall examine any county road or portion thereof proposed to be vacated and abandoned and report his opinion as to whether the county road should be vacated and abandoned, whether the same is in use or has been in use, the condition of the road, whether it will be advisable to preserve it for the county road system in the future, whether the public will be benefited by the vacation and abandonment, and all other facts, matters, and things which will be of importance to the board, and also file his cost bill.

[1963 c 4 § 36.87.040. Prior: 1937 c 187 § 50; RRS § 6450-50.]

**RCW 36.87.050**
**Notice of hearing on report.**
Notice of hearing upon the report for vacation and abandonment of a county road shall be published at least once a week for two consecutive weeks preceding the date fixed for the hearing, in the county official newspaper and a copy of the notice shall be posted for at least twenty days preceding the date fixed for hearing at each termini of the county road or portion thereof proposed to be vacated or abandoned.

[1963 c 4 § 36.87.050. Prior: 1937 c 187 § 51, part; RRS § 6450-51, part.]

**RCW 36.87.060**
**Hearing.**
(1) On the day fixed for the hearing, the county legislative authority shall proceed to consider the report of the engineer, together with any evidence for or objection against such vacation and abandonment. If the county road is found useful as a part of the county road system it shall not be vacated, but if it is not useful and the public will be benefited by the vacation, the county legislative authority may vacate the road or any portion thereof. Its decision shall be entered in the minutes of the hearing.

(2) As an alternative, the county legislative authority may appoint a hearing officer to conduct a public hearing to consider the report of the engineer and to take testimony and evidence relating to the proposed vacation. Following the hearing, the hearing officer shall prepare a record of the proceedings and a recommendation to the county legislative authority concerning the proposed vacation. Their decision shall be made at a regular or special public meeting of the county legislative authority.

[1985 c 369 § 5; 1963 c 4 § 36.87.060. Prior: 1937 c 187 § 51, part; RRS § 6450-51, part.]

**RCW 36.87.070**

http://www.leg.wa.gov/rcw/index.cfm?fuseaction=chapter&chapter=36.87&RequestTimeout=500        10/1/2003

NOTICE OF REMOVAL
OF ACTION -66-

**Expense of proceeding.**
If the county legislative authority has required the petitioners to make a cash deposit or furnish a bond, upon completion of the hearing, it shall certify all costs and expenses incurred in the proceedings to the county treasurer and, regardless of its final decision, the county legislative authority shall recover all such costs and expenses from the bond or cash deposit and release any balance to the petitioners.

[1985 c 369 § 6; 1963 c 4 § 36.87.070. Prior: 1937 c 187 § 51, part; RRS § 6450-51, part.]

## RCW 36.87.080
**Majority vote required.**
No county road shall be vacated and abandoned except by majority vote of the board properly entered, or by operation of law, or judgment of a court of competent jurisdiction.

[1969 ex.s. c 185 § 2; 1963 c 4 § 36.87.080. Prior: 1937 c 187 § 51, part; RRS § 6450-51, part.]

## RCW 36.87.090
**Vacation of road unopened for five years -- Exceptions.**
Any county road, or part thereof, which remains unopen for public use for a period of five years after the order is made or authority granted for opening it, shall be thereby vacated, and the authority for building it barred by lapse of time: PROVIDED, That this section shall not apply to any highway, road, street, alley, or other public place dedicated as such in any plat, whether the land included in such plat is within or without the limits of an incorporated city or town, or to any land conveyed by deed to the state or to any county, city or town for highways, roads, streets, alleys, or other public places.

[1963 c 4 § 36.87.090. Prior: 1937 c 187 § 52; RRS § 6450-52.]

## RCW 36.87.100
**Classification of roads for which public expenditures made -- Compensation of county.**
Any board of county commissioners may, by ordinance, classify all county roads for which public expenditures were made in the acquisition, improvement or maintenance of the same, according to the type and amount of expenditures made and the nature of the county's property interest in the road; and may require persons benefiting from the vacation of county roads within some or all of the said classes to compensate the county as a condition precedent to the vacation thereof.

[1969 ex.s. c 185 § 4.]

## RCW 36.87.110
**Classification of roads for which no public expenditures made -- Compensation of county.**
Any board of county commissioners may, by ordinance, separately classify county roads for which no public expenditures have been made in the acquisition, improvement or maintenance of the same, according to the nature of the county's property interest in the road; and may require persons benefiting from the vacation of county roads within some or all of the said classes to compensate the county as a condition precedent to the vacation thereof.

[1969 ex.s. c 185 § 5.]

## RCW 36.87.120

http://www.leg.wa.gov/rcw/index.cfm?fuseaction=chapter&chapter=36.87&RequestTimeout=500    10/1/2003

EXH - (10) Page 4 of 4

**Appraised value as basis for compensation -- Appraisal costs.**
Any ordinance adopted pursuant to this chapter may require that compensation for the vacation of county roads within particular classes shall equal all or a percentage of the appraised value of the vacated road as of the effective date of the vacation. Costs of county appraisals of roads pursuant to such ordinances shall be deemed expenses incurred in vacation proceedings, and shall be paid in the manner provided by RCW 36.87.070.

[1969 ex.s. c 185 § 6.]

**RCW 36.87.130**
**Vacation of roads abutting bodies of water prohibited unless for public purposes or industrial use.**
No county shall vacate a county road or part thereof which abuts on a body of salt or fresh water unless the purpose of the vacation is to enable any public authority to acquire the vacated property for port purposes, boat moorage or launching sites, or for park, viewpoint, recreational, educational or other public purposes, or unless the property is zoned for industrial uses.

[1969 ex.s. c 185 § 7.]

**RCW 36.87.140**
**Retention of easement for public utilities and services.**
Whenever a county road or any portion thereof is vacated the legislative body may include in the resolution authorizing the vacation a provision that the county retain an easement in respect to the vacated land for the construction, repair, and maintenance of public utilities and services which at the time the resolution is adopted are authorized or are physically located on a portion of the land being vacated: PROVIDED, That the legislative body shall not convey such easement to any public utility or other entity or person but may convey a permit or franchise to a public utility to effectuate the intent of this section. The term "public utility" as used in this section shall include utilities owned, operated, or maintained by every gas company, electrical company, telephone company, telegraph company, and water company whether or not such company is privately owned or owned by a governmental entity.

[1975 c 22 § 1.]

**RCW 36.87.900**
**Severability -- 1969 ex.s. c 185.**
If any provision of this act, or its application to any person, property or road is held invalid, the validity of the remainder of the act, or the application of the provision to other persons, property or roads shall not be affected.

[1969 ex.s. c 185 § 8.]

NOTICE OF REMOVAL
OF ACTION -68-

AGO_1957-58_No_032                                                        Page 1 of 3

 Opinion

JOHN JAMES O'CONNEL 1951-1957    ATTORNEY GENERAL OF WASHINGTON

EXH -

Page 1 of 3

AGO_1957-58_No_032
[[Orig. Op. Page 1]]

COUNTY ROADS -- VACATION AND ABANDONMENT.

The duty and liability of a county to maintain a county road once a part of a county road system cannot be divested by
mere resolution.

- - - - - - - - - - - - -

March 13, 1957

Honorable Thurman E. Ward
Prosecuting Attorney
Klickitat County
Goldendale, Washington

                                                     Cite as:  AGO 57-58 No. 32

Dear Sir:

        In your letter of February 19, 1957, you requested the opinion of this office on a certain question which we
paraphrase as follows:

        May the county commissioners by resolution withdraw county roads from the county road system and thus
relieve the county from the duty and liability of maintenance without the road losing the status of a county road?

        We answer this question in the negative.

                                        ANALYSIS

        Your letter referred to RCW 36.75.080 (1955 Supp.) as possible authority for action by the county
commissioners pursuant to the aforementioned question.

        Section 3, chapter 361, Laws of 1955, (RCW 36.75.080) provides:

        "All public highways in this state, outside incorporated cities and towns and not designated as state
        highways, which have been used as public highways for a period of not less than ten years are county
        roads: Provided, That no duty to maintain such public highway for any liability for any injury or

http://www.wa.gov/AGO/opinions/1957-58/opinion_1957-58_032.html                          12/8/2003

NOTICE OF REMOVAL
OF ACTION -69-

AGO_1957-58_No_032

damage for failure to maintain such public highway or any road signs thereon shall attach to the county until the same shall have been adopted as a part of the county road system by resolution of the county commissioners."

[[Orig. Op. Page 2]]

Prior to the amendment of RCW 36.75.080 by chapter 361, Laws of 1955, a public highway used for the prescriptive time of not less than ten years became a county road and part of the county road system. It is evident that the object of chapter 361 is to relieve the counties of the duty and liability of maintaining public roads that become county roads on the basis of the expiration of the prescriptive ten-year period. By this amendment the legislature intended that the duty and liability of maintaining roads that automatically become county roads after ten years would not necessarily devolve upon the county. Rather the road must be adopted by resolution as a part of the county road system by the county commissioners before the duty of maintenance attaches to the county.

We are of the opinion that under RCW 36.87.080 (1955 Supp.), a county may, by resolution, assume the duty and liability of maintenance of a county road on the expiration of the prescriptive period but cannot, by mere resolution, divest itself of this duty and liability, once assumed.

The legislature has provided in RCW chapter 36.87, the statutory procedure by which a county may divest itself of the duty and liability of maintaining county roads which become part of the county road system either before or after the enactment of chapter 361, Laws of 1955.

RCW 36.87.010 reads:

"When a county road or any part thereof is considered useless, the board by unanimous resolution entered upon its minutes, may declare its intention to vacate and abandon the same or any portion thereof and shall direct the county road engineer to report upon such vacation and abandonment."

RCW 36.87.020 reads in part:

"Ten freeholders residing in the vicinity of any county road or portion thereof may petition the board to vacate and abandon the same or any portion thereof . . ."

This chapter of the code further provides that the county engineer shall examine the county road under consideration for vacation and report his opinion as to whether the county road should be vacated and abandoned; provides for publication of notice of hearing on the report; provides for a public hearing; and stipulates that a unanimous vote is required by the board of [[Orig. Op. Page 3]] county commissioners properly entered, or by operation of law, or judgment of a court of competent jurisdiction (for vacation and abandonment).

In an annotation at 175 A.L.R. 760, 762, the following statement is made:

"While some limitations to its application are to be found, the rule appears to be quite general that where the procedure for the vacation, discontinuance, or alteration of a public street or highway by direct action of public authorities is prescribed by statute, it is necessary to adhere to such procedure in order that the vacation or alteration may be effective. . . ." Brazell v. Seattle, 55 Wash. 180.

In any event, the vacation and abandonment of a county road would not destroy the private easement of egress and ingress of a property owner established by prescription, when the only means available would be by the vacated

http://www.wa.gov/AGO/opinions/1957-58/opinion_1957-58_032.html                         12/8/2003

Page 3 of 3

EXH - ⑪

Page 3 of 3

and abandoned county road. <u>Van Buren v. Trumbull</u>, 92 Wash. 691.

   In conclusion, it is our opinion that a county can only escape the duty and liability of maintaining a county road, once a part of the county road system, by following the statutory vacation procedure. To allow otherwise would deny to the public the safeguards incorporated in the vacation statutes. 39 C.J.S., Highways, 121.

Very truly yours,

JOHN J. O'CONNELL
Attorney General


CLARENCE H. FIDLER
Assistant Attorney General

http://www.wa.gov/AGO/opinions/1957-58/opinion_1957-58_032.html                12/8/2003

NOTICE OF REMOVAL
OF ACTION -71-

AGLO_1980_No_012

Page 1 of 5

EXH - ⑫ Page 1 of 5

SEE p 5

Opinion

THOMAS SLADE GORTEN 1959-1981    ATTORNEY GENERAL OF WASHINGTON

AGLO_1980_No_012
[[Orig. Op. Page 1]]

COUNTIES -- CITIES AND TOWNS -- PLATTING AND SUBDIVISIONS -- RESUBDIVISION OF LOT WITHIN EXISTING SUBDIVISION

When, within an existing land subdivision established pursuant to either chapter 58.16 or chapter 58.17 RCW, the owner of an individual lot proposes to divide it into a number of smaller lots for the purpose of sale or lease, while such action constitutes a "resubdivision" as defined in RCW 58.17.020(6) and is, thereby, subject to the general provisions of chapter 58.17 RCW relating to subdivisions (AGO 1980 No. 5), the subdivider is not, in addition, required to vacate his existing lot or lots pursuant to chapter 58.11 RCW or alter the plat pursuant to chapter 58.12 RCW; if, however, the vacation of a plat or part thereof entails the vacation of a county road, one or the other of the procedures set forth in chapter 58.11 RCW and chapter 36.87 RCW, respectively, must be utilized.

- - - - - - - - - - - - -

March 14, 1980

Honorable Patrick D. Sutherland
Prosecuting Attorney
Thurston County
2000 Lakeridge Drive S.W.
Olympia, Washington 98502

Cite as: AGLO 1980 No. 12

Dear Sir:

By letter previously acknowledged, you requested our opinion regarding the relationship between chapters 58.11, 58.12 and 58.17 RCW. Specifically, you asked:

1.    Must a platted lot or lots, created at any time and in any manner other than by short subdivision pursuant to RCW 58.17.060 or "large lot" subdivision pursuant to RCW 58.17.040(2), be vacated pursuant to Chapter 58.11 RCW or altered or replatted pursuant to Chapter 58.12 RCW before the lot may be redivided in any manner pursuant to Chapter 58.17 RCW?

[[Orig. Op. Page 2]]
2.    To what extent, if any, would the answer to Question No. 1 be affected by the fact that the original platted lot was created by short subdivision pursuant to RCW 58.17.060 or by "large lot"

http://www.wa.gov/AGO/opinions/AGLOs/1980/opinion_1980_012.html    10/1/2003

NOTICE OF REMOVAL
OF ACTION -72-

AGLO_1980_No_012



subdivision pursuant to RCW 58.17.040(2)?

3.    If the vacation of a plat or part thereof entails the vacation of a county street, do the vacation requirements of RCW 58.11.010, et seq., and Chapter 36.87 RCW apply?

We answer your questions in the manner set forth in our analysis.

### ANALYSIS

In AGO 1980 No. 5 we recently concluded that:

"Where, within an existing land subdivision established pursuant to either chapter 58.16 or 58.17 RCW, the owner of an individual lot proposes to divide that lot into four or fewer smaller lots for the purpose of sale or lease, such action will not constitute the establishment of a 'short subdivision' as defined in RCW 58.17.020(6) and, thereby, be subject to the city or county's short subdivision ordinance as enacted pursuant to RCW 58.17.060; instead, such action will constitute a 'resubdivision' and thus be subject to the general provisions of chapter 58.17 RCW relating to subdivisions."

Question (1):

As we understand it, the essence of your first question is whether, in addition to thus complying with the requirements of chapter 58.17 RCW relating to subdivisions, it is legally necessary for a person owning a lot or lots within an existing subdivision who desires further to divide that lot or lots to:

(a) Vacate the existing lots pursuant to chapter 58.11 RCW; and/or

(b) Alter the plat pursuant to chapter 58.12 RCW.

[[Orig. Op. Page 3]]
In posing this question, you further asked us to assume that:

". . . the proposed redivision entails, in the first instance, only the creation of new lot lines and not the alteration of any existing lines . . .; in the second instance, an alteration of the plat only to accommodate a road and new lots . . .; in the third instance, a change in existing lot lines . . .; and in the fourth instance, not the alteration of a lot or road line but rather a change in a condition of approval of the original plat, for example a deletion of an open space dedication or reservation."

You also supplemented your request with three drawings illustrating the first three of these four assumptions. In drawing "A", what is identified as Lot 9 in an existing subdivision would be divided into three numbered smaller lots. In drawing "B", the same Lot 9 would be divided into four smaller lots, each facing a cul-de-sac created by the extension of an adjacent county road. And in drawing "C", Lot 9 and adjoining Lot 10 (both presumably in common ownership) would first be combined and then divided into ten smaller lots also including a cul-de-sac and an extension of the county road.

Clearly, each of these three cases would constitute a "resubdivision" within the meaning of so much of RCW 58.17.020(1) as defines the term "subdivision" as:

http://www.wa.gov/AGO/opinions/AGLOs/1980/opinion_1980_012.html                    10/1/2003

NOTICE OF REMOVAL
OF ACTION -73-



"... the division of land into five or more lots, tracts, parcels, sites or divisions for the purpose of sale and lease and shall include all resubdivision of land." (Emphasis supplied)

Accord, AGO 1980 No. 5, supra. On the other hand, the fourth case described in your letter (involving only a change in a condition of approval of the original plat) would not constitute such a "resubdivision" but, instead, would be governed by chapter 58.17 RCW only as an amendment, in effect, to a previously established plat. It is our considered opinion, however, that none of the actions described additionally fall under, or require compliance with, either chapter 58.11 or chapter 58.12 RCW.

[[Orig. Op. Page 4]]
(a) Chapter 58.11 RCW:

This RCW chapter codifies several sections of the territorial code of 1881 and relates, generally, to the vacation of any street, alley, lot or common in either an unincorporated (RCW 58.11.010) or an incorporated (RCW 58.11.040) town. The only apparent purpose of this territorial legislation, however, was to facilitate the removal from dedicated status of land previously dedicated for some public use in connection with the formation or proposed formation of a town. See, RCW 58.11.030 and 58.11.050. Therefore, as we read it, the provisions of chapter 58.11 RCW have nothing to do with any of the hypothetical cases described in your letter.

(b) Chapter 58.12 RCW:

This chapter codifies the provisions of chapter 92, Laws of 1903, and involves the vacation or alteration of an existing plat. The first section thereof, RCW 58.12.010, reads as follows:

"That whenever three-fourths in number and area of the owners of any townsite, city plat or plats, addition or additions, or part thereof, shall be desirous of altering the plat or plats, replatting or vacating the same or any part thereof, they may prepare a plat or plats, showing such alterations or replat, drafted upon a copy of the existing plat or plats, or that portion desired to altered, replatted or vacated, and file the same with the clerk of the board of county commissioners, or city council or other governing body having jurisdiction of the establishment or vacation and control of the streets to be affected, accompanied with a petition for the change desired: PROVIDED, That this section shall not be construed as applying to the alteration, replatting or vacation of any plat of state granted, tide, or shore lands."

The remaining sections of the chapter, RCW 58.12.020 through 58.12.080 then spell out what is to be done in response to such a petition--along with the legal consequences of [[Orig. Op. Page 5]] such action. Again, however, we can see no basis for saying that compliance with this chapter is required in order to further subdivide a lot or lots within an existing subdivision in the manner contemplated by your question.

In the first place, chapter 58.12 RCW is simply not mandatory but, rather, constitutes only one of several alternative approaches to the alteration of an existing platted subdivision. Accord, our letter opinion of November 15, 1978, to the Pend Oreille County prosecuting attorney, copy enclosed, in which we said:

"... Chapter 58.12 RCW, to which you have referred, covers only one of those methods; namely, the alternation of a plat (presumably long in existence) on the basis of a petition signed by at least three quarters of the '... number and area of the owners ...' of land comprising the plat. Alternatively, however, an existing platted subdivision may be altered by the subdivider himself upon compliance

NOTICE OF REMOVAL
OF ACTION -74-



with the applicable provisions of chapter 58.17 RCW dealing with replatting. And finally, a new platted subdivision may be created within an existing subdivision through the process of further platting and subdividing a single lot within the original subdivision."

And secondly, as we also then went on to say in that same letter opinion, the provisions of chapter 58.12 RCW are, in any event,

". . . only pertinent in those instances in which the alteration is being initiated by property owners within the subdivision involved and amounts to something other than simply the creation of a new, smaller, subdivision through the process of dividing a single lot within an existing subdivision."

Accord, Hamilton v. Link-Hellmuth, Inc., 104 Ohio App. 1, 146 N.E.2d 615 (1957), recently cited with approval in Bersos v. Cape George Colony Club, 4 Wn.App. 663, 434 P.2d 485 (1971).

We therefore answer your first question, as above set forth, in the negative.

[[Orig. Op. Page 6]]
Question (2):

Next you have asked:

To what extent, if any, would the answer to Question No. 1 be affected by the fact that the original platted lot was created by short subdivision pursuant to RCW 58.17.060 or by "large lot" subdivision pursuant to RCW 58.17.040(2)?

Conceivably, had we, instead, answered question (1) in the affirmative, we might nevertheless have distinguished the cases referred to therein from either the "large lot" or the "short subdivision" situations. Having answered question (1) in the negative, however, there obviously is no need to attempt making such a distinction. The provisions of chapter 58.11 and 58.12 RCW, supra, are at least equally inapplicable, in terms of some form of mandatory compliance here.

Question (3):

Your third and final question, as we understand it, does not involve any of the four hypothetical cases referred to in connection with questions (1) and (2), supra. This question asks:

If the vacation of a plat or part thereof entails the vacation of a county street, do the vacation requirements of RCW 58.11.010, et seq., and Chapter 36.87 RCW apply?

We have already noted chapter 58.11 RCW in our response to question (1). Clearly, it constitutes one method of vacating a county road. Specifically, RCW 58.11.010 provides that:

"Any person interested in any town not incorporated, who may desire to vacate any lot, street, alley, common, or any part thereof, or any public square, or part thereof, in any such town, may petition the board of county commissioners for the proper county. The petition shall set forth the facts pertinent thereto, with a description of the property to be vacated, and shall be filed in the office [[Orig. Op. Page 7]] of the county auditor. The auditor shall give notice of the time and place of

NOTICE OF REMOVAL
OF ACTION -75-

AGLO_1980_No_012                                          **EXH - (12)** Page 5 of 5

hearing on the petition before the commissioners, by posting notice thereof, containing a description of the property to be vacated, in three of the most public places in said town, at least twenty days before the hearing."

Chapter 36.87 RCW also deals, among other things, with the vacation of county roads upon the petition of freeholders residing in the vicinity thereof. See, RCW 36.87.020 and 36.87.030.

We would regard chapters 58.11 RCW and 36.87 RCW as authorizing alternative methods for the vacation of a county road. Moreover, as far as we know, they are the only methods. Therefore, if the vacation of a plat or part thereof entails the vacation of a county road, one or the other of these two laws must be utilized. But it is not necessary to comply with both.

This completes our consideration of your questions. We trust that the foregoing will be of assistance to you.

Very truly yours,

SLADE GORTON
Attorney General

PHILIP H. AUSTIN
Deputy Attorney General

ROBERT F. HAUTH
Senior Assistant Attorney General

NOTICE OF REMOVAL
OF ACTION -76-



EXHIBIT "A"

RESOLUTION NO. 6.27-E                    Page 1 of 2

A RESOLUTION authorizing the conveyance to the United States of the Stehekin Valley Road.

WHEREAS the United States has acquired title to virtually all of the property served by the Stehekin Valley Road and has included the same within the newly created North Cascades National Park thereby leaving said road to service virtually no citizens of Chelan County; and

WHEREAS said road is of value to the United States acting by and through the Bureau of Reclamation for use in making water and snow measurements and surveys; and

WHEREAS, by the laws of 1963, Chapter 4, the legislature has authorized counties to convey property to the United States for flood control, navigation and allied purposes and said road is no longer of value to the county for county purposes but is of value to the United States for said federal purposes;

NOW THEREFORE, BE IT HEREBY RESOLVED BY THE BOARD OF CHELAN COUNTY COMMISSIONERS as follows:

That Chelan County, a Municipal Corporation of the State of Washington convey to the United States of America, acting by and through the Bureau of Reclamation, by Quit Claim Deed the Stehekin Valley Road, the legal description to which is marked "Description of the Stehekin Road" attached hereto and by this reference made a part hereof.

DATED at Wenatchee, Washington, this 30TH day of MARCH, 1970.

BOARD OF CHELAN COUNTY COMMISSIONERS

Benton M. Bangs, Chairman

Homer J. Trefry

Claude A. Hower

Attest:
Earl Miller, Clerk of the Board

NOTICE OF REMOVAL
OF ACTION -77-



RESOLUTION 642-E

Vacate Co. Road No. 21 at Stehekin

~~EXHIBIT "C"~~

WHEREAS, the National Parks Service has assumed jurisdiction of all the lands in the Stehekin River Valley served by Chelan County Road No. 21;

WHEREAS, it is in the public interest that the administration and responsibility for this road be vested in the National Parks Service;

THEREFORE, BE IT RESOLVED that it is the desire of the Chelan County Commissioners to formally vacate this road so that the National Parks Service will have this authority;

THEREFORE, BE IT RESOLVED THAT A PUBLIC HEARING be held by the Board of County Commissioners of Chelan County at their office in the Chelan County Courthouse, Wenatchee, Washington, at the hour of 11:00 A.M., Monday, May 11th, 1970, at which time any person may appear for or against said proposed road vacation.

Dated this 20th day of April, 1970.

                                    BOARD OF COUNTY COMMISSIONERS
                                    CHELAN COUNTY, WASHINGTON

                                    _Benton M. Bangs_
                                    BENTON M. BANGS, Chairman

                                    _Claude A. Hower_
                                    CLAUDE A. HOWER

                                    _Homer J. Trefry_
                                    HOMER J. TREFRY

ATTEST:
    EARL MILLER
    EARL MILLER, Clerk of the Board.
    by _Emily DeBord_
       Deputy.                      10 copies to Co. Engineer 4-20-70



EXH - ④
Page 1 of 1

EXH - 15

EK

Page 1 of 1

No Fee

FILED FOR RECORD
Chelan County Commission    R E S O L U T I O N
1970 MAY 21    11 07    FINAL ORDER OF VACATION
Final Order Vacation
BOOK 678  PAGE 615          County Road No. 21
CHELAN COUNTY AUDITOR          Stehekin Valley Road

WHEREAS, by Resolution No. 642-E, dated April 20th, 1970, the Board of County Com-
missioners indicated their intent to vacate County Road No. 21, from the
end of the portion thereof conveyed by deed to the National Park Service
March 30, 1970;

WHEREAS, due Notice of a Hearing on the proposed vacation was duly posted and
advertised, pursuant to statute;

WHEREAS, said hearing was held by the Board of County Commissioners at their office
in the Chelan County Courthouse at the hour of 11:00 A.M., Monday, May 11th,
1970;

WHEREAS, no one appeared to oppose the proposed vacation;

THEREFORE, BE IT RESOLVED that all that portion of the Stehekin Valley Road, known
as County Road No. 21, lying northerly and westerly of the portion of the
same road conveyed to the National Park Service March 30, 1970, is hereby
declared vacated.

Dated this 11th day of May, 1970.

BOARD OF COUNTY COMMISSIONERS
CHELAN COUNTY, WASHINGTON

BENTON H. BANGS, Chairman

CLAUDE A. HONER

HOMER J. TREFRY

ATTEST:

EARL MILLER, Clerk of the Board.

VOL 698 PAGE 615

6

NOTICE OF REMOVAL
OF ACTION -79-

Wenatchee World, March 31, 1970, page 2     **EXH -**

# County gets rid of Stehekin road

Page 1 of 1

Turning over title to a 12-mile stretch of county road from Stehekin to Bridge Creek to the federal government was approved Monday by Chelan County commissioners.

And County Engineer Don West breathed a sign of relief.

"It's one of the most expensive roads to maintain that we have," West said of the isolated Stehekin area road.

Maintenance had been done by contract with area residents.

County commissioners said the area is included in the North Cascades National Park. That agency will assume the responsibility of improving and maintaining the roadway now.

Commissioners yesterday also approved spending $25,000 this year on improvement of rural roads that connect to Wenatchee streets.

Engineer West said the work will be done as county crews have the time.

Existing roadways will be widened as much as possible within their present rights-of-way, ditches will be cleaned, ballasting put down and resurfacing material applied.

The streets involved include: Poplar Row, Circle, Cherry, Crawford (Miller to Fuller and Okanogan to Methow), Orchard, Fuller, Gehr, Okanogan, Tacoma and Ninth streets.

RO-3

NOTICE OF REMOVAL
OF ACTION -80-

EXH - 17

Page 1 of 1

FILED FOR RECORD
PIONEER NATL TITLE INSURANCE Co.
1970 MAY 11 AM 3 45

BOOK 608 PAGE 249-53
CHELAN COUNTY AUDITOR

G893842

## QUIT CLAIM DEED

THE GRANTOR, Chelan County, a Municipal Corporation of the State of Washington, for and in consideration of the sum of One Dollar and other valuable consideration conveys and quit claims to the United States of America, acting by and through the Bureau of Reclamation, all right, title and interest in and to the following described county road situate in Chelan County, State of Washington, to-wit:

The Stehekin Valley Road, the legal description to which is marked "Description of the Stehekin Road" attached hereto and by this reference made a part hereof.

Dated this _30th_ day of _____March_____, 1970.

CHELAN COUNTY, A Municipal Corporation

By _Benton M Bangs_
Chairman of the Board of County
Commissioners

Attest:

_Earl Miller_
Clerk of the Board

STATE OF WASHINGTON )
                     ) ss.
County of Chelan     )

I, the undersigned, a Notary Public in and for the State of Washington, do hereby certify that on this _30th_ day of _March_, 1970, before me personally appeared Benton M. Bangs and Earl Miller, to me known to be the Chairman of the Board of County Commissioners and the Clerk of the Board of County Commissioners respectively, the individuals who executed the within and foregoing instrument and acknowledged said instrument to be the free and voluntary act and deed of the Board of Commissioners of Chelan County, Washington, for the uses and purposes therein mentioned, and on oath stated that they are authorized to execute said instrument on behalf of Chelan County.

In witness whereof, I have hereunto set my hand and affixed my official seal this _30th_ day of _March_, 1970.

_Clara V. Searle_
Notary Public in and for the State of
Washington, residing at Wenatchee.

VOL 608 PAGE 249



EXH - (18)

Page 1 of 3



Description of the Stehekin Road

PARCEL "A"

A strip of land 60 feet in width, being 30 feet on each side of and running parallel with the following described survey line, to-wit: Beginning at a point in the south boundary line of Section 31, Township 33 North, Range 18, E.W.M., a distant 359.2 feet west of the south quarter corner of Section 31, located in said boundary, thence south 20°19' east 130.7 feet, thence south 2°00' west 85.1 feet, thence south 20°45' east 114.2 feet, thence south 17°15' east 93.0 feet, thence south 55°45' east 119.0 feet to survey station 5+42, thence south 69°56' east 96.8 feet to a point, the end of this description, which bears south 23°45' west 550.0 feet from a point in the south boundary line of Section 31, Township 33 North, range 18 E.W.M., said point being 165.0 feet east of the south quarter corner thereof; also a strip or parcel of land 60.0 feet in width, being 30 feet on each side of the following described survey line, to-wit:
Beginning at survey station 5+42 in the above described survey line, thence south 87°09' west 53.5 feet, thence north 54°06' west 173.0 feet to a point on the shore of Lake Chelan, containing an area of 1.18 acres, more or less.

PARCEL "B"

A strip of land 60 feet in width, being 30 feet on each side of and running parallel with the following described line, to-wit:
Beginning at a point in the south boundary of Section 31, Township 33 North, Range 18 E.W.M., which bears west 359.2 feet from the south quarter corner of Section 31 in said boundary, thence north 13°44'west 219.6 feet, thence north 20°10' east 218.9 feet, thence north 13°28' east 220.3 feet, thence north 8°12' west 252.5 feet, thence north 20°47' west 177.7 feet, thence north 10°52' west 195.0 feet, thence north 38°07' west 194.0 feet, thence north 23°19' west 113.7 feet, thence north 36°50' east 162.0 feet, thence north 22°21' west 70.1 feet, thence north 46°24' west 273.9 feet, thence north 55°27' west 131.5 feet, thence north 34°18' west 302.6 feet, thence north 40°28' west 136.1 feet, thence north 47°01' west 136.9 feet, thence north 57°24' west 302.2 feet, thence north 44°47' west 267.4 feet, thence north 58°40' west 190.4 feet, thence north 47°00' west 121.5 feet, thence north 37°31' west 199.0 feet, thence north 68°35' west 118.8 feet, thence north 53°32' west 154.1 feet, thence north 73°40' west 168.9 feet, thence north 43°26' west 43.4 feet, thence north 21°16' west 69.9 feet, thence north 50°03' west 162.3 feet, thence north 85°24' west 70.6 feet to a point in the east boundary line of Section 36, Township 33 North, Range 17 E.W.M., distant 900.0 feet from the east quarter corner of Section 36, thence north 38°44' west 157.0 feet, thence north 49°26' west 132.1 feet, thence north 39°55' west 509.2 feet, thence north 41°29' west 207.4 feet, thence north 30°59' west 203.5 feet, thence north 54°56' west 171.1 feet, thence north 18°46' west 67.3 feet, thence north 44°46' west 67.3 feet, thence north 44°46' west 157.3 feet, thence north 68°21' west 109.5 feet, thence north 16°09' west 95.9 feet, thence north 52°32' west 94.1 feet, thence north 73°12' west 115.3 feet, thence north 27°09' west 80.0 feet, thence north 66°42' west 102.1 feet, thence north 59°12' west 134.9 feet, thence north 51°40' west 86.8 feet, thence south 87°04' west

VOL 698 PAGE 250

EXH - (18)

Page 2 of 3



along a line 30 feet south of and parallel with the south line of Section 25, 2688.7 feet to a point, the end of this description in the west boundary of the east one-half of the east one-half of the northwest quarter of the northwest quarter of Section 36, Township 33 North, Range 17, E.W.M., containing an area of 13.40 acres, more or less.

PARCEL "C"

A strip of land 60 feet in width, being 30 feet on each side of and running parallel with the following described line, to-wit:
Beginning at a point in the west boundary of the east one-half of the east one-half of the northwest quarter of the northwest quarter of Section 36, Township 33 North, Range 17 East, Willamette Meridian, 30 feet south of the south line of Section 25, said point being the center of the right-of-way described in a quit claim deed from the Chelan Electric Company to Chelan County dated November 3, 1927 and recorded in book 201, Page 543, thence north 37°24' west 187.2 feet, thence north 23°41' west 1,3.... feet, thence north 39°50' west 692.2 feet to a point on the east boundary line of Section 26, Township 33 North, Range 17 East, W.M., distant 720.7 feet south of the east quarter corner of Section 26, thence north 39°50' west 434.2 feet, thence north 48°40' west 533.2 feet to a point on the north line of the southeast quarter of Section 26, 643.1 feet west of the east quarter corner of Section 26, thence north 32°39' west 550.6 feet, thence north 15°10' west 239.7 feet, thence north 2°46' west 335.2 feet, thence north 1°58' east 277.1 feet, thence north 13°14' west 538.7 feet, thence north 40°46' west 468.1 feet, thence north 6°4' west 413.2 feet to a point on the north line of Section 26, 1321.8 feet east of the north quarter corner of Section 26, thence north 6°4' west 148.1 feet, thence north 39°4' west 746.1 feet, thence north 67°38' west 426.0 feet, thence north 50°59' west 351.3 feet, thence south 52°4' west 313.6 feet, thence south 84°6' west 597.2 feet, thence north 68°55' west 439.9 feet, thence north 34°43' west 727.2 feet, thence north 34°1' west 730.0 feet, thence north 63°26' west 196.3 feet, thence north 47°6' west 540.5 feet, thence north 57°56' west 298.1 feet, thence north 52°38' west 684.7 feet, thence north 37°34' west 341.8 feet, thence north 23°57' west 710.6 feet, thence north 57°48' west 134.1 feet, thence north 66°40' west 244.8 feet, thence north 35°10' west 194.0 feet, thence north 51°38' west 245.1 feet, thence north 37°west 263.4 feet, thence north 44°43' west 538.3 feet, thence north 44°20' west 412.0 feet, thence north 56°10' west 282.6 feet, thence north 38°15' west 300.5 feet, thence north 19°39' west 609.9 feet to a point that bears north 87°46' east distant 51.5' from corner number 4, H.E.S. number 148, thence north 71°56' west 285.6 feet, thence south 87°11' west 392.4 feet, thence north 62°12' west 753.3 feet, thence north 44°12' west 866.3 feet, thence north 79°33' west 705.6 feet, thence north 68°56' west 201.7 feet to a point that bears south 40°40' west distant 70.3 feet from corner number 10, H.E.S. number 148, thence north 68°56' west 228.2 feet, thence north 58°23' west 819.2 feet, thence north 35°32' west 656.8 feet to a point that bears north 54°41' east distant 175.3 feet from corner number 3, H.E.S. number 233, thence north 61°43' west 806.4 feet, thence north 75°7' west 298.9 feet, thence north 15°6' west 182.0 feet, thence north 56°38' west 780.9 feet to a point which bears south 71°9' west distant 326.7 feet from corner number 2, H.E.S. number 233, thence north 47°15' west 674.1 feet, thence north 65°7' west 1,465.1 feet to a point which bears south 35°19' west distant 410.5 feet

ανα 698 πιτ 251



EXH - 18

Page 3 of 3

from corner number 1, H.E.S. number 149, thence north 65°7' west 195.4 feet, thence north 60°25' west 1084.8 feet, thence south 81°42' west 1065.8 feet, thence north 87°41' west 695.5 feet, thence north 74°44' west 932.4 feet, north 41°29' west 620.0 feet, thence north 49°30' west 481.0 feet, north 41°29' west 422.1 feet, thence north 64°49' west 378.9 feet, thence north 61°45' west 1024.1 feet, thence south 81°24' west 150.9 feet, thence south 52°18' west 425.2 feet, thence south 73°36' west 737.1 feet, thence north 83°19' west 421.8 feet, thence north 79°36' west 461.6 feet, thence north 83°25' west 836.5 feet, thence north 52°22' west 610.6 feet, thence south 88°13' west 882.1 feet, thence north 87°27' west 290.8 feet to a point that bears north 3°23' west distant 66.5 feet from corner number 6, H.E.S. number 150, at which point the road enters land formerly under the jurisdiction of the U.S. Forest Service and now under the Department of Interior, National Park Service.

Leaving the lands now under the jurisdiction of the Department of Interior, National Park Service and beginning at a point in the center line of the road on the south east end line of the Rock Island Mining claim which bears north 34°46' east distant 370.7 feet from the southwest corner of the Rock Island mining claim, thence north 39°19' west 251.8 feet, thence north 48° 34' west 436.4 feet, thence north 29°53' west 349.6 feet, thence north 7° 18' west 464.9 feet, thence north 3°45' east 141.6 feet to a point on the northwest end line of the Rock Island mining claim which bears south 34° 46' west distant 134.3 feet from corner number 1.

NOTICE OF REMOVAL
OF ACTION -84-



D-30

Page 1 of 1

North Cascades National Park
Sedro Woolley, Washington 98284

December 11, 1969

Chelan County Commissioners
Chelan County Court House
Wenatchee, Washington 98801

Gentlemen:

This confirms our discussion with you on December 8. We would
appreciate the County Commissioner's action in withdrawing the
blanket approval of private excavation within the Stehekin Road
right-of-way.

A matter of concern at this time is large scale excavation
adjacent to the lake shore between Stehekin Landing and the head
of the lake. This constitutes a considerable scar and disruption
of the lake shore scene. We are not objecting to the use of the
material for lake shore fills. In fact, we have been making avail-
able fill material from the Stehekin River bed to the citizens of
the community. We realize excavation from the right-of-way directly
opposite from the fill location is less expensive, but the haul
distance from the river bed is not excessive.

Control of the roadside scene is one of the objectives in our
proposed transfer of the Stehekin Road from your administration to
ours. In honor of this intended transfer, we would appreciate a
moratorium on such excavation until the outcome of our transfer
efforts are known.

Sincerely yours,

Roger J. Contor
Superintendent

cc:
District Manager Wagner  H C
Northwest District Director, NPS  H C
Dave Burkhardt

RJContor:al  12/11/69

NOCA 22169          2517

NOTICE OF REMOVAL
OF ACTION -85-

EXH-(20) I-417
Page 1 of 2

RESOLUTION NO. 91-72

A RESOLUTION to place approximately nine miles of the Stehekin Valley Road (Road #21) on the County Road System, from the Steeling Landing to the easterly boundary of Township 33, Range 16 East, W.M., as traveled.

WHEREAS, the Stehekin Valley Road (Road #21) does serve citizens of Chelan County as well as other; and

WHEREAS, the requirements of the transfer of the Stehekin Valley Road (Road #21) to the U.S. Bureau of Reclamation for use in making water and snow measurements and surveys has not been met; and

WHEREAS, Federal agencies have gone farther in regulating the road than could have been foreseen and specifically, the National Park Service is restricting the movement of private citizens on the subject roadway; and

WHEREAS, it appears that Chelan County was fraudulently misled by the National Park Service in 1970 as to the nature of the area and the Stehekin Road (Road #21); and

WHEREAS, Resolution No. 637-E, adopted March 30, 1970, erroneously states "The United States has acquired title to virtually all of the property served by the Stehekin Valley road and has included the same within the newly created North Cascade National Park thereby leaving said road to service virtually no citizens of Chelan County"; and

WHEREAS, it appears that Chelan County could not transfer the Stehekin Valley Road (Road #21) thus eliminating service to Chelan County citizens and property owners; and

WHEREAS, it is deemed in the public interest that the Stehekin Valley Road (Road #21) be returned to the Chelan County road system; and

WHEREAS, the overwhelming majority of private property owners in Stehekin support the return of the Stehekin Valley Road (Road #21) to Chelan County.

FEE NO FEE
FILED

Chelan County
Commissioners
JUL 11  9 11 AM '91
Resolution
BOOK 951   1844-45
CHELA
WENA

EXHIBIT 7

BK 0951 PG 1844

NOTICE OF REMOVAL
OF ACTION -86-



Page 2 of 2

THEREFORE, BE IT RESOLVED by the Board of Chelan County Commissioners that Resolution No. 637-E, adopted March 30, 1970, was not and is not representative of the conditions in Stehekin and that Resolution No. 637-E, adopted March 30, 1970 is hereby rescinded and that the quit claim deed of March 30, 1970 is also hereby rescinded; and

BE IT FURTHER RESOLVED THAT that portion of the Stehekin Valley Road (Road #21) from the Stehekin Landing to the easterly boundary of Township 33, Range 16 East, W.M., as traveled be returned to the Chelan County Road system and be know as the Stehekin Valley County Road, Road #21.

DATED this 9th day of July, 1991.

BOARD OF CHELAN COUNTY COMMISSIONERS

_____
THOMAS A. GREEN, CHAIRMAN

_____
JOHN S. WALL, COMMISSIONER

_____
RONALD W. MYERS, COMMISSIONER

ATTEST: EVELYN L. ARNOLD, Auditor and
        Clerk of the Board

_____
        Deputy Auditor

BK0951PG1845

NOTICE OF REMOVAL
OF ACTION -87-

; BY: SPOKANE          ; 6- 7-93 ; 9:14PM ; U.S. ATTY. E.D. WA. →          4156276740;# 2/ 2



EXH – ㉑

Page 1 of 24

UPER  ...
US ...
EASTERN DISTR... WASHINGTON

JUN  4 1993

JAMES R LAPSEN ...

YAKIMA

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff and            )    No. CS-92-0331-AAM
                                   )
NORTH CASCADES CONSERVATION        )    ORDER GRANTING MOTION
COUNCIL, a nonprofit Washington    )    FOR SUMMARY JUDGMENT
corporation,                       )
                                   )         RECEIVED
          Intervenor-Plaintiff,    )         BY MAIL
                                   )
          vs.                      )    JUN 0 7 1993
                                   )
CHELAN COUNTY, a municipal         )    U.S ATTORNEY
corporation of Washington,         )    SPOKANE, WA
                                   )
          Defendant.               )
                                   )

This civil action is brought by the United States to quiet title to the Stehekin Valley Road located in the Lake Chelan National Recreation Area and to enjoin defendant Chelan County[1] and its agents and officers from using the road without authorization and from interfering with the National Park Service's management and administration of the Lake Chelan National Recreation Area. By order dated January 23, 1993, the court granted North Cascades

---

[1]Chelan County is a municipal corporation vested with certain governmental authority over Chelan County in the State of Washington. The County acts through the Board of Chelan County Commissioners.

Order Granting Motion
for Summary Judgment - 1

BY:SPOKANE          ; 6- 7-93 ; 2:50PM ; U.S. ATTY. E.D. WA.          56276740;# 3/25

EXH - (21)

Page 2 of 24

Conservation Council's ("NCCC")[2] motion to intervene as a plaintiff. (Ct. Rec. 41).

The matter comes before the court on the United States' and the NCCC's motions for summary judgment (Ct. Rec. 46, 52). Assistant United States Attorney James R. Shively appears on behalf of the United States. Stephan C. Volker of the SIERRA CLUB LEGAL DEFENSE FUND, Rodney L. Brown, Jr. of MORRISON & FOERSTER, and Thomas H.S. Brucker of SMITH, BRUCKER, WYNN & EHLERT represent the Intervenor-Plaintiff North Cascades Conservation Council. The defendant Chelan County is represented by Dale M. Foreman, Robert G. Dodge and Camille Peterson of FOREMAN & ARCH. For the reasons stated below, the court grants the motions.

## FACTUAL BACKGROUND

In 1968, Congress established the North Cascades National Park and two adjacent national recreational areas in the North Cascade Mountains of the State of Washington. Pub. L. 90-544, 82 Stat. 927 (codified at 16 U.S.C. §§ 90 to 90a-1). The two recreation areas (Lake Chelan National Recreation Area and Lake Ross National Recreation Area) were carved out of the proposed boundaries of the North Cascade National Park and essentially separate the park into two

---

[2]The North Cascades Conservation Council is a non-profit corporation organized under the laws of the State of Washington. It was formed in 1957 to protect and preserve the scenic, scientific, recreational, educational, wildlife, and wilderness values of the Cascades Mountain Range from the Canadian border to the Columbia River.

Order Granting Motion
for Summary Judgment - 2

, BY:SPOKANE              ; 6- 7-89 ; 2:51PM +U.S. ATTY. E.D. WA.-          4156276740;# 4/25

EXH - 21

Page 3 of 24

units.  The Park and the two recreation areas are collectively referred to as the North Cascades National Park Complex.

The Lake Chelan National Recreation Area was established "[i]n order to provide for the public outdoor recreation use and enjoyment of portions of the Stehekin River and Lake Chelan, together with the surrounding lands, and for the conservation of the scenic, scientific, historic, and other values contributing to public enjoyment of such lands and waters . . .."  16 U.S.C. § 90a-1.  The Lake Chelan National Recreation Area consists of approximately 62,000 acres of federal lands formerly administered as National Forest and approximately 500 acres of privately-owned lands.  Under the terms of the 1968 Act, responsibility for administering the recreation areas is bestowed upon the Secretary of the Interior, who is charged with administering the recreation areas in a manner which in his judgment will best provide for public outdoor recreation benefits and conservation of scenic, scientific, historic, and other values contributing to public enjoyment.  16 U.S.C. § 90c-1(a).[3]  The National Park Service (NPS) assumed this responsibility for the Secretary in 1969.  The

[3] Under the Act, the Secretary "may utilize such statutory authorities pertaining to the administration of the national park system, and such statutory authorities otherwise available to him for the conservation and management of natural resources as he deems appropriate for recreation and preservation purposes and for resource development compatible therewith."  16 U.S.C. § 90c-1(a).

Order Granting Motion
for Summary Judgment      8

NOTICE OF REMOVAL
OF ACTION -90-



Lake Chelan National Recreation Area is currently administered by the NPS through a Superintendent at Sedro Woolley and through district officials at Stehekin.

The present litigation concerns the legal title to a portion of the Lake Chelan National Recreation Area, specifically, the Stehekin Valley Road which begins at Stehekin Landing on the north end of Lake Chelan and runs in a northwesterly direction approximately 23 miles. The Stehekin Valley Road is unusual in that it is not connected to any other road system. To enter the Stehekin Valley, one must travel by foot, plane, or boat. The Valley is not accessible by automobile. The Stehekin Valley Road serves as the primary access route for the Stehekin Valley and is used by permanent and seasonal residents of the Valley and by visitors to the Lake Chelan National Recreation Area. There is a two-mile long, unpaved spur called Company Creek Road that branches off the Stehekin Valley Road.

When the Lake Chelan National Recreation Area was established in 1968, the Stehekin Valley Road existed in an unpaved condition and was maintained as a county roadway by Chelan County. The upper seven miles of the road were overgrown with vegetation and impassable to vehicular traffic; the wooden bridge across Bridge Creek was closed due to structural decay; and the vegetation adjacent to the lower four miles of the road was continually covered with dust during the summer months due to the substantial use of

Order Granting Motion
for Summary Judgment - 4

se 2:20-cv-00257-SMJ    ECF No. 1    filed 07/21/20    PageID.92    Page 92
148
.J. BY: SPOKANE            ; 6- 7-93 ; 2:53PM ; U. S. ATTY. E.D. WA.            '6276740;# 6/25

EXH - ㉑

Page 5 of 24

that segment by private vehicles. The NPS paved the lower four miles of the road to eliminate the dust problem, reconstructed the Bridge Creek bridge, and opened the upper seven miles of the Stehekin Road to vehicular traffic pending a final decision on the permanent closure of that section. A public shuttle bus service was instituted by the NPS to reduce private vehicle use on the Stehekin Valley Road and to provide park rangers an opportunity to educate the public concerning the important biologic, scenic and historic resources of the Lake Chelan National Recreation Area and the North Cascades National Park.

Because of its isolation and exposure to extreme snow loads and high creek flows, the repair and upkeep of the Stehekin Valley Road and its bridges is a costly endeavor. In 1970, the County, no doubt eager to relinquish its maintenance responsibility to the NPS, determined to convey its interest in the road to the federal government. The Board of Chelan County Commissioners first sought to transfer the road to the NPS through the Chelan County Port Authority, but this route of transfer was foreclosed by certain legal barriers.[4] This left the Board with only two alternatives: (1) to seek transfer of the road through the state legislature, which would delay the transfer for several months, or (2) to transfer the road to the United

[4] The title company through which the parties sought to acquire title insurance refused to issue such insurance if the property was transferred through the Port Authority.

Order Granting Motion
for Summary Judgment - 5

Case 2:20-cv-00257-SMJ    ECF No. 1    filed 07/21/20    PageID.93    Page 93
148
, BY: SPOKANE            ; 6- 7-93 ; 2:54PM ; U.S. ATTY. E.D. WA.→    6276740;# 7/25

EXH- 21
Page 6 of 24

States under RCW 36.34.220. (Ct. Rec. 64, Exhibit A).  The Board chose to follow the latter alternative.

RCW 36.34.220 in relevant part provides:

If the board of county commissioners of any county adjudges that it is desirable and for the general welfare and benefit of the people of the county and for the interest of the county to lease or convey property . . . to the United States for the purpose of flood control, navigation, power development, or for use in connection with federal projects . . . for the reclamation and irrigation of arid land, the board, by majority vote, may lease or convey such property to the United States for [such purpose].

Because the Stehekin Valley Road was at that time being used by the Bureau of Reclamation for water and snow measurements, counsel for the Bureau agreed to accept the road as project related.  Following the transfer, responsibility for maintaining the road was assigned to the NPS as an internal administrative matter, the Bureau and the NPS both being members of the Department of the Interior.

On March 30, 1970, the Board of Chelan County Commissioners adopted a resolution[5] authorizing the

[5]The resolution, entitled 637-E, reads as follows:

A RESOLUTION authorizing the conveyance to the United States of the Stehekin Valley Road.

WHEREAS the United States has acquired title to virtually all of the property served by the Stehekin Valley Road and has included the same within the newly created North Cascades National Park thereby leaving said road to service virtually no citizens of Chelan County; and

WHEREAS said road is of value to the United States acting by and through the Bureau of Reclamation for use in making water and snow measurements and

Order Granting Motion
for Summary Judgment - 6

NOTICE OF REMOVAL
OF ACTION -93-



EXH- ㉑

Page 7 of 24

conveyance of all of the County's deeded interests in the southernmost 9.5 miles of the Stehekin Valley Road to the United States by quitclaim deed. The quitclaim deed was executed and delivered that same day. It reads, in pertinent part, as follows:

THE GRANTOR, Chelan County, a Municipal Corporation of the State of Washington, for and in consideration of the sum of One Dollar and other valuable consideration conveys and quit claims to the United States of America, acting by and through the Bureau of Reclamation, all right, title and interest in and to the following described county road situated in Chelan County, State of Washington, to-wit:
The Stehekin Valley Road, the legal description to which is marked "Description of the Stehekin Road" attached hereto and by this reference made a part hereof.

Complaint, Exhibit 2.

surveys; and

WHEREAS, by the laws of 1963, Chapter 4, the legislature has authorized counties to convey property to the United States for flood control, navigation and allied purposes and said road is no longer of value to the county for county purposes but is of value to the United States for said federal purposes;

NOW THEREFORE, BE IT HEREBY RESOLVED BY THE BOARD OF CHELAN COUNTY COMMISSIONERS as follows:

That Chelan County, a Municipal Corporation of the State of Washington convey to the United States of America, acting by and through the Bureaus of Reclamation, by Quit Claim Deed the Stehekin Valley Road, the legal description to which is marked "Description of the Stehekin Road" attached hereto and by this reference made a part hereof.

Resolution No. 637-E, dated March 30, 1970, is attached to the Complaint as Exhibit 1.

Order Granting Motion for Summary Judgment - 7

NOTICE OF REMOVAL
OF ACTION -94-



EXH- (21)

Page 8 of 24

Shortly thereafter, in April 1970, the Board adopted Resolution No. 642-E,[6] wherein the County resolved to vacate its interest in the remaining portion of Stehekin Valley Road. The Board's decision was made in response to the NPS's assumption of jurisdiction over all land serviced by the road. A Final Order of Vacation was issued on May 11, 1970. (Complaint, Exhibit 4).

The water and snow studies that served as the basis of the 1970 transfer, as well as other scientific studies and works relating to flood control, have been conducted on a regular and continual basis from 1970 to the present. The

---

[6]Resolution No. 642-E reads:

WHEREAS,   the National Parks Service has assumed jurisdiction of all the land in the Stehekin River Valley served by Chelan County Road No. 21;

WHEREAS,   it is in the public interest that the administration and responsibility for this road be vested in the National Parks Service;

THEREFORE,   BE IT RESOLVED that it is the desire of the Chelan County Commissioners to formally vacate this road so that the National Parks Service will have this authority;

THEREFORE, BE IT RESOLVED THAT A PUBLIC HEARING be held by the Board of County Commissioners of Chelan County at their office in the Chelan County Courthouse, Wenatchee, Washington, at the hour of 11:00 A.M., Monday, May 11th, 1970, at which time any person may appear for or against said proposed road vacation.

Complaint, Exhibit 3.

Order Granting Motion for Summary Judgment - 8

BY:SPOKANE           ; 6- 7-83 ; 2:57PM ; US. ATTY. E.D. WA.→          276740;#10/25



EXH- ㉑

Page 9 of 24

Stehekin Valley Road continues to be used to get to and from the federal monitoring sites.

In 1971, the Stehekin River Resort, Inc. and twenty-nine individual property owners sued Chelan County to nullify the County's conveyance of the Stehekin Valley Road to the United States. *Stehekin River Resort, Inc. v. Chelan County*, No. 25845 (Chelan County Superior Court filed October 5, 1971). The United States was not a party to the suit. The suit was settled in 1973 by stipulation between Chelan County and the plaintiffs. As part of that stipulation, the parties agreed:

> [T]hat the court may enter its judgment herein declaring that Chelan County was authorized pursuant to RCW 36.34.220 to convey that portion of County Road No. 21, also known as the Stehekin Valley Road, to the United States of America.
>
> That the vacation of the upper portion of said road within the North Cascades National Park as evidenced by the County Commissioners' Order of May 11, 1970, shall be approved and title to said road shall vest in the parties entitled thereto.
> * * *
> That the United States of America has agreed to the satisfaction of the Plaintiffs, subject to the availability of appropriated funds, to maintain said roadways described in Paragraph II and IX herein in as good a condition as the same exist as of this date, including the removal of snow sufficient to allow those persons living along said road reasonable ingress and egress to their real property abutting upon said road.

*Stehekin River Resort, Inc. v. Chelan County*, Chelan County Superior Court April 17, 1973.

Since 1970, the National Park Service has continually maintained and improved the Stehekin Valley Road and taken

Order Granting Motion for Summary Judgment - 9

JUN-07-93 12:15  IL:STEPPH CLUE LEGAL ...
T BY:SPOKANE        ; 6- 7-93 ; 2:58PM;.o8. ATTY. E.D. WA.-        76740;#11/25

EXH - ㉑



Page 10 of 24

other actions demonstrating its claim of interest in the road. It has assumed sole responsibility for roadside brushing, grading or shaping the road surface, snow removal operations, pothole and surface crack repairs, ditch and drainage work, rock removal, roadside litter collection, sign repair and replacement, minor bridge repair, heavy equipment operation, gravel hauling and spreading, and hazardous tree removal. The NPS has replaced eleven bridges, paved the first four miles of the road, repaired slide removals, cleared plugged culverts, and replaced lost sections of roadway. For the period between 1980 and 1992, the NPS spent $1,408,000 on road maintenance and repair. It is estimated that a comparable amount was spent by the NPS from 1970 to 1980. Maintenance and improvement of the road is an integral part of the NPS's General Management Plan for the area.

In addition to maintenance responsibilities, NPS personnel assumed law enforcement responsibilities and, in this capacity, have investigated accidents and administered emergency medical services to those injured along the road.

The NPS has also regulated commercial use of the road since 1970. It has issued concession contracts, concession permits, commercial use licenses and special use permits for various commercial services that occur on federal lands within the Lake Chelan National Recreation Area. Since 1973, shuttle bus service to various trailhead locations

Order Granting Motion
for Summary Judgment - 10

NOTICE OF REMOVAL
OF ACTION -97-

along the Stehekin Valley Road has been provided by the NPS or by a private concessioner with the NPS's permission. Since 1972, commercial use of the Stehekin Valley road for tours and taxi service has been authorized by the NPS under a single concession contract. The NPS has also issued special use permits and right-of-way permits for water lines on federal lands which run beneath the surface of the Stehekin Valley Road.

In the past few years, the NPS has denied permission for certain commercial uses of the road by several local residents of the Stehekin Valley. The denials have been based on a perceived conflict between the proposed commercial uses and the contractual right of an NPS concessioner.

For twenty-one years Chelan County did not engage in any road maintenance activities or otherwise assert any interest in the Stehekin Valley Road. Then, on July 9, 1991, the County adopted Resolution 91-72 which purports to rescind the quitclaim deed executed in 1970 and to return a portion of the Stehekin Valley Road to the Chelan County road system. This resolution was undoubtedly spurred by the NPS's refusal to grant certain use permits to local residents of the Valley and the resulting community interest in having the Stehekin Valley Road returned to the County road system.

Order Granting Motion
for Summary Judgment - 11

T BY:SPOKANE    ; 6- 7-93 ; 3:00PM ;   ATTY. E.D. WA.    4156276740;#13/25



EXH - 21

age 12 of 24

Following the adoption of Resolution 91-72, the County began to take actions inconsistent with the United States' ownership of the road. On November 16, 1991, a county employee, while conducting snow removal operations, removed material at Wilson Creek, widening the road and destroying a water diversion dike. In June 1992, Chelan County issued a permit authorizing a resident to place a culvert across the Stehekin Valley Road without prior consultation with or authorization from the NPS. On August 30, 1992, Chelan County commenced a bank stabilization project at a point along the Stehekin Valley Road commonly referred to as "Eight-Mile." This was to be accomplished by placing 1200 cubic yards of rip rap along the Stehekin Valley Road at the Eight-Mile location. The rip rap was acquired by removing rock from along side the Stehekin Valley Road approximately four miles from the project site.

This action was filed by the United States on August 31, 1992, to quiet title to the Stehekin Valley Road in the United States and to enjoin defendant from interfering with the NPS's administration of the road. The County does not contest the validity of the quitclaim deed; nor does it challenge the propriety of its Final Order of Vacation. However, in its counterclaim, the County asserts that the conveyance and the vacation were accomplished as an integral part of an express or implied contract between Chelan County and the United States, pursuant to which Chelan County

Order Granting Motion
for Summary Judgment - 12

NOTICE OF REMOVAL
OF ACTION -99-

EXH -

Page 13 of 24

agreed to transfer its interest in the road in exchange for the United States' agreement to maintain and administer the road in a manner not inconsistent with the County's prior maintenance and administration thereof. According to the County, the United States agreed to maintain the road in a manner which did not jeopardize the health, welfare and safety of users of the road and to continue to provide users of the road with the same unrestricted access to the road as they enjoyed prior to the transfer. (Chelan County's First Amended Answer, p. 4-5). The County, alleging that the United States has breached this agreement, counterclaims for damages and injunctive relief.

Alternatively, the County contends it had no authority to convey, and did not intend to convey, an unrestricted fee interest in Stehekin Valley Road to the United States. Its conveyance of the Stehekin Valley Road by quitclaim deed was limited to the purposes set forth in Resolution No. 637-E and in the enabling legislation, RCW 36.34.220. Because the County was only authorized to convey county property to the United States under RCW 36.34.220 "for flood control, navigation, power development, or for use in connection with federal projects . . . for the reclamation and irrigation of arid lands," the County argues that it necessarily retained a reversionary interest in the road. Thus, when the NPS disregarded the use restrictions impressed on the original conveyance and began to exercise unbridled, unrestricted

Order Granting Motion
for Summary Judgment - 13

authority over all aspects of road use, the County was entitled to divest the government of title to the road.

On September 3, 1992, this court entered a temporary restraining order, prohibiting defendant from performing any excavation and fill work and/or placement of rip rap along or in the vicinity of the Stehekin Valley Road. The temporary restraining order was granted on the plaintiff's representation that the County's actions would alter the river's natural character and thereby jeopardize fish spawning areas and animal habitats, destroy significant archaeological resources, and foreclose the River's opportunity to be designated as a Wild and Scenic River System. By stipulation of the parties, the temporary restraining order is to remain in effect until the case is resolved on the merits.

### DISCUSSION

The United States and the NCCC have each filed a motion for summary judgment, arguing that, as a matter of law, title to the Stehekin Valley Road should be quieted in the United States because the County relinquished all right, title and interest in the Stehekin Valley Road by executing and delivering the quitclaim deed to the United States for the lower 9.5 miles of the road and by formally vacating its interest in the remaining portion of the road. The plaintiffs contend that Resolution 91-72, which purports to rescind the deed and restore a portion of the road to the

Order Granting Motion
for Summary Judgment - 14

NOTICE OF REMOVAL
OF ACTION -101-


County road system, is null and void, as the Federal Quiet Title Act, 28 U.S.C. § 2409a, is the exclusive means by which the County can challenge the United States' title to real property.

1.   **SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. Zweig v. Hearst Corp., 521 F.2d 1129 (9th Cir.), cert. denied, 423 U.S. 1025 (1975). Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Senegen v. Weidner, 780 F.2d 727 (9th Cir. 1986). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. In other words, a party is entitled to summary judgment when the documentary evidence produced by the parties permits only one reasonable conclusion. Id. at 251.

The moving party has the initial burden to prove that no genuine issue of material fact exists. Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

Order Granting Motion
for Summary Judgment - 15

NOTICE OF REMOVAL
OF ACTION -102-



EXH- 21

Page 16 of 24

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Id. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "[T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248-49 (quoting First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288-89 (1968)). In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587.

At the summary judgment stage, the court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In resolving these issues, "the court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable

Order Granting Motion
for Summary Judgment - 16

NOTICE OF REMOVAL
OF ACTION -103-



jury might return a verdict in its favor based on that evidence." T.W. Elec. Service v. Pacific Elec. Contractors, 809 F.2d 626, 631 (9th Cir. 1987). See also, Anderson v. Liberty Lobby, Inc., 477 U.S. at 252.

LR 56 requires a party moving for summary judgment to set forth the specific facts relied upon in support of the motion. Any party opposing a motion for summary judgment must file a statement in the form prescribed by LR 56(a), setting forth the specific facts which the opposing party asserts establish a genuine issue of material fact precluding summary judgment. LR 56(b). "In determining any motion for summary judgment, the Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the [opposing party's LR 56(b) statement of disputed facts]." LR 56(c).

2.   INTERPRETATION OF THE QUITCLAIM DEED

The interpretation of a deed is a mixed question of law and fact; the parties' intent is a factual question, whereas the legal consequences of that intent constitute a question of law to be resolved by the court. Harris v. Ski Park Farms, 120 Wn.2d 727, 738 (1993). As a general rule, deeds are to be construed in a manner which gives effect to the intent of the parties. Harris v. Ski Park Farms, 120 Wn.2d 727, 739 (1993). "The intent of the parties is to be derived from the entire instrument and, if ambiguity exists,

Order Granting Motion
for Summary Judgment - 17

the situation and circumstances of the parties at the time of the grant are to be considered." Id. at 739. Even in the absence of an apparent ambiguity, extrinsic evidence may be considered as an aid in ascertaining the parties' true intent. Id. (citing Berg v. Hudesman, 115 Wn.2d 657, 801 P.2d 222 (1990)).

A deed which by its terms conveys land to a grantee operates as a grant of the fee. King County v. Hanson Investment Company, 34 Wn.2d 112, 119 (1949). In order to make a defeasible or conditional fee, "the deed must clearly indicate such an intent, either by express terms or by necessary implication from the language used." Id. at 119.

There is no ambiguity in the language of the 1970 quitclaim deed. The quitclaim deed clearly states that Chelan County conveyed and quitclaimed to the United States "all right, title and interest in and to [the Stehekin Valley Road]." The deed contains no language whatsoever indicating an intent on the part of the donor to retain a reversionary interest in the road. Nor does the deed limit the United States' use of the land in any way. In fact, the deed is silent as to any alleged purpose for the conveyance.

In contrast, the resolution drafted contemporaneously with the quit claim deed states that the road is of value to the United States for use in making water and snow measurements and surveys, and refers to the enabling legislation which permits transfer for this purpose. The

Order Granting Motion
for Summary Judgment - 18

NT BY:SPOKANE ; 6- 7-93 ; 3:07PM ; U.S. ATTY. E.D. WA.→ 4158276740;#20/25

EXH- ㉑ age 19 of 24

resolution does not, however, express the County's intent to have the title revert back to the County upon discontinuance of this use. Indeed, to read such an intent into the resolution would be inconsistent with other language in the resolution stating that "said road is no longer of value to the county for county purposes but is of value to the United States for federal purposes."

The resolution's reference to the enabling legislation, which is codified at RCW 36.34.220, merely serves to show the grantee's authority to take title to the land. King County v. Hanson Investment Company, 34 Wn.2d 112, 119-20 (1949). A companion statute, RCW 36.34.240, gives the federal government exclusive authority to administer tracts or parcels of land conveyed pursuant to RCW 36.34.220.[7] Nothing in either statute limits the federal government's administrative responsibilities, once it acquires the land, to those matters relating to flood control, navigation, or allied purposes. The County's decision to transfer the road

[7] RCW 36.34.240 reads:

Pursuant to the Constitution and laws of the United States and the Constitution of this state, consent of the legislature is given to the exercise by the congress of the United States of exclusive legislation in all cases whatsoever on such tract or parcels of land so conveyed to it: Provided, That all civil process issued from the courts of the state and such criminal process as may issue under the authority of the state against any person charged with crime in cases arising outside of said tract may be served and executed thereon in the same manner as if such property were retained by the county.

Order Granting Motion
for Summary Judgment - 19



under RCW 36.34.220, and hence, the resolution's reference to that legislation, was necessitated by the title company's reluctance or refusal to issue title insurance for the property if an alternative route of transfer was pursued. (Affidavit of John S. Wall, Exhibits A & B, Ct. Rec. 64).

Because reasonable minds could not differ as to the County's intent to convey all its interest in the Stehekin Valley Road, the court finds, as a matter of law, that the County did not retain a reversionary interest in the road.

Even if a reversionary interest was retained, the County does not allege that the Bureau of Reclamation has ceased to use the road for the purposes which formed the basis of the transfer pursuant to RCW 36.34.220. Rather, the County argues that the NPS's assumption of authority beyond that necessary to protect the federal government's legitimate water-related activities constitutes a breach of the limited use restriction, which should result in defeasance of the title conveyed. This argument is without merit in light of the exclusive jurisdiction given the federal government under RCW 36.34.240. Moreover, the denial of the permits, and the NPS's reasons for the denial, are not inconsistent with the federal government's use of the road under RCW 36.34.220.

Order Granting Motion
for Summary Judgment - 20



EXH - 21    Page 21 of 24

**3.   NPS's MAINTENANCE AND ADMINISTRATION OF STEHEKIN VALLEY ROAD**

At most, the Court could find, based on the stipulation in Stehekin River Resort. Inc. v. Chelan County, No. 25845 (Chelan County Superior Court April, 1973), that the parties entered into an implied covenant whereby the United States agreed to maintain the road in a manner consistent with the County's prior level of maintenance. Even assuming the existence of such an implied contract, the defendant has failed to set forth any facts which would establish that the NPS breached this duty. In contrast, the United States and the NCCC have submitted numerous affidavits evidencing the efforts of the NPS to maintain the road in a manner consistent with the County's prior practices and Congress' directive in 16 U.S.C. § 90a-1. The uncontroverted testimony contained in the affidavits shows that the condition of the Stehekin Valley Road has substantially improved since the NPS assumed responsibility for its upkeep.

The record is devoid of any evidence which would lend support to the County's claim that the parties agreed, expressly or impliedly, that the United States would administer the road so as to provide users of the road with the same unrestricted access they enjoyed prior to the transfer. The 1973 stipulation makes no reference to such an agreement. Regardless, the County has failed to show that the NPS has stopped or suspended any commercial uses

Order Granting Motion
for Summary Judgment - 21

NOTICE OF REMOVAL
OF ACTION -108-

NT BY:SPOKANE   ; 6- 7-93 ; 3:10PM   148 S. ATTY. E.D. WA. -   4156276740;#23/25

 

EXH- 21   Page 22 of 24

that were in existence at the time of the 1970 transfer. It has merely shown that the NPS refused to permit new or expanded commercial uses on the road.

The court, upon the defendant's failure to make a showing sufficient to establish the existence of an element essential to its counterclaim, is constrained to enter summary judgment on the counterclaim in favor of the United States. The complete failure of proof concerning the government's breach necessarily renders all other facts immaterial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

4.   28 U.S.C. § 2409a(f) STATUTE OF LIMITATIONS

The United States has consented to be sued in any action to adjudicate a disputed title to real property in which the United States claims an interest, but only if the action is commenced within twelve years of the date upon which it accrued. 28 U.S.C. § 2409a(f). "Such action shall be deemed to have accrued on the date the plaintiff or his predecessor in interest knew or should have known of the claim of the United States." 28 U.S.C. § 2409a(f). This statute of limitations on the United States' waiver of sovereign immunity is jurisdictional and must be strictly construed. State of Nevada v. United States, 731 F.2d 633, 634 (9th Cir. 1984); Humboldt County v. United States, 684 F.2d 1276, 1280 (9th Cir. 1982).

Order Granting Motion
for Summary Judgment - 22

NOTICE OF REMOVAL
OF ACTION -109-

EXH- 21   Page 23 of 24

The uncontroverted facts show that the United States, beginning as early as 1972, has claimed an interest in the Stehekin Valley Road beyond its limited use for flood control, navigation and other water-related purposes. In 1973, the NPS issued a concession permit to John O. E. Moore to provide food, lodging, transportation and other associated services along the Stehekin Valley Road. In 1973, the NPS began operating a shuttle bus service to various trailhead locations along the road. Since 1972, the NPS has authorized commercial use of the Stehekin Valley Road, including tours and taxi, under a single concession contract. Individuals who have attempted to engage in business activities without the NPS's permission have been cited and prosecuted for their conduct.

In 1984, various residents of the Stehekin Valley filed an action in the United States District Court for the Eastern District of Washington, attacking the manner in which the recreation area was being administered. The plaintiffs alleged specific grievances concerning the limitations placed on the use of the Stehekin Valley Road and the NPS's regulation of commercial activity. The plaintiffs sought, among other things, to enjoin the United States from attempting to regulate the Stehekin Valley Road. While the action was construed as one for judicial review under the APA and dismissed for failure of the plaintiffs to exhaust their administrative remedies, it serves as further

Order Granting Motion
for Summary Judgment - 23

NOTICE OF REMOVAL
OF ACTION -110-

JUN-07-'93 17:04    ID:SIERRA CLUB LEGAL SF    TEL NO:415-567-7740    #066 P25
ENT BY:SPOKANE    ; 6- 7-93 ; 8:12PM ; U.S. ATTY. E.D. WA.→    4156276740;#25/25

EXH - (21)   Page 24 of 24

evidence of the United States' claim to exclusive title in the Stehekin Valley Road.

Based on the NPS's pervasive assertion of jurisdiction over the administrative responsibilities for the Stehekin Valley Road, the County must be deemed to have known of the United States' claim of interest in the road since at least 1972. Consequently, the County's present attempt to dispute the United States' title is time-barred by 28 U.S.C. § 2409. Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' motions for summary judgment are GRANTED. Judgment shall be entered in favor of the United States and North Cascades Conservation Council.

IT IS SO ORDERED. The clerk is directed to enter this order and forward copies to counsel.

DATED this ___4th___ day of June, 1993.

_____
ALAN A. McDONALD
United States District Judge

Order Granting Motion
for Summary Judgment - 24

EXH - ㉒

Page 1 of 6

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FEB 22 1993

JAMES R. LARSEN CLERK
_____ DEPUTY
YAKIMA

ROBERT G. DODGE
CAMILLE PETERSON
FOREMAN & ARCH, P.S.
701 North Chelan
Wenatchee, WA 98801
Telephone: 509/662-9602

Attorneys for Defendant
Chelan County

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

UNITED STATES OF AMERICA,      )
                               )   No. CS-92-0331-AAM
        Plaintiff and          )
                               )   CHELAN COUNTY'S FIRST AMENDED
NORTH CASCADES CONSERVATION    )   ANSWER TO THE COMPLAINT OF
COUNCIL, a nonprofit           )   THE UNITED STATES OF AMERICA
Washington corporation,        )
                               )
        Intervenor-Plaintiff,  )
                               )
        v.                     )
                               )
CHELAN COUNTY, a Municipal     )
Corporation of the State       )
of Washington,                 )
                               )
        Defendant.             )
_____)

COMES NOW Defendant Chelan County and answers the Complaint
as follows:

I.

INTRODUCTION

Defendant admits that this is a civil action brought by the
United States, on behalf of the National Park Service,
Department of the Interior, to quiet title to certain

CHELAN COUNTY'S FIRST AMENDED ANSWER TO COMPLAINT OF THE
UNITED STATES OF AMERICA AND COUNTERCLAIMS - 1

Foreman & Arch
701 North Chelan Street
Post Office Box 3125
Wenatchee, Washington 98807-3125

NOTICE OF REMOVAL
OF ACTION -112-

controverted areas within the Lake Chelan National Recreation Area. Defendant denies the remainder of the introduction.

II.

## JURISDICTION AND VENUE

II.1.   Defendant admits Paragraph II.1.

II.2.   Defendant admits Paragraph II.2.

III.

## PARTIES

III.1.   Defendant admits Paragraph III.1.

III.2.   Defendant admits Paragraph III.2.

IV.

## GENERAL ALLEGATIONS

IV.1.   Defendant admits that legislation was enacted to establish the North Cascades National Park and the Ross Lake National Recreation Area and the Lake Chelan National Recreation Area subject to valid existing rights.

IV.2.   Defendant lacks sufficient information to admit or deny the first sentence of Paragraph IV.2. of the Complaint, and therefore denies the same. Defendant admits the second and third sentences of Paragraph IV.2.

IV.3.   Defendant admits the purpose of Lake Chelan National Recreation Area. Defendant admits that Plaintiffs' quotation of 16 U.S.C. § 90c-1. is a partial quotation of the statute.

IV.4.   Defendant admits the first sentence of Paragraph IV.4. Defendant denies the second sentence of Paragraph IV.4.

CHELAN COUNTY'S FIRST AMENDED ANSWER TO COMPLAINT OF THE
UNITED STATES OF AMERICA AND COUNTERCLAIMS - 2

Foreman & Arch
701 North Chelan Street
Post Office Box 3125
Wenatchee, Washington 98807-3125



Defendant lacks sufficient information to admit or deny the third sentence of Paragraph IV.4., and therefore denies the same.

IV.5.    Defendant denies the first sentence of Paragraph IV.5.  Defendant admits that the Board of Chelan County Commissioners purported to adopt a Resolution on March 30, 1970, conveying any interest that Chelan County had in the southernmost 1.5 miles of the Stehekin Valley Road to the United States by Quitclaim Deed.  Defendant admits that Chelan County purported to vacate the remainder of the road in order that it could be administered and maintained by the National Park Service.  Defendant denies that the road was lawfully vacated.

IV.6.    Defendant admits that an action was filed October 5, 1971, Stehekin River Resort, Inc., et al., v. Chelan County. Defendant denies the remainder of the first sentence in Paragraph IV.6.  Defendant admits the second sentence in Paragraph IV.6.  Defendant admits the third sentence in Paragraph IV.6.  Defendant denies the last sentence of Paragraph IV.6.

IV.7.    Defendant denies the first sentence of Paragraph IV.7.  Defendant lacks sufficient information to admit or deny the remainder of Paragraph IV.7., and therefore denies the same.

IV.8    Defendant lacks sufficient information to admit or deny Paragraph IV.8., and therefore denies the same.

//

//

CHELAN COUNTY'S FIRST AMENDED ANSWER TO COMPLAINT OF THE
UNITED STATES OF AMERICA AND COUNTERCLAIMS - 3

Foreman & Arch
701 North Chelan Street
Post Office Box 3125
Wenatchee, Washington 98807-3125

V.

EXH - (22)

Page 4 of 6

<u>INTERFERENCE WITH UNITED STATES' RIGHTS</u>

V.1.    Defendant admits Paragraph V.1.

V.2.    Defendant denies Paragraph V.2.

VI.

<u>CAUSE OF ACTION</u>

VI.1.   Defendant admits Paragraph VI.1.

VI.2.   Defendant denies Paragraph VI.2.

VI.3.   Defendant denies Paragraph VI.3.

<u>COUNTERCLAIMS</u>

COMES NOW Defendant Chelan County and for Counterclaims against Plaintiff United States, through the National Park Service and William Paleck, alleges as follows:

C.1.    Chelan County's conveyance of part of Stehekin Valley Road to the United States of America in March of 1970, as well as the road vacations effected in April and May of 1970 (collectively the "Road Transfer") were accomplished as an integral part of an express or implied contract between Chelan County and the United States of America. Pursuant to that contract, Chelan County agreed to the Road Transfer in exchange for the United States' agreement to maintain and administer the Stehekin Valley Road in a manner not inconsistent with Chelan County's prior maintenance and administration thereof. In particular, the United States agreed to maintain the Stehekin Valley Road in a manner which did not jeopardize the health, welfare and safety of users of the Stehekin Valley Road. The

CHELAN COUNTY'S FIRST AMENDED ANSWER TO COMPLAINT OF THE
UNITED STATES OF AMERICA AND COUNTERCLAIMS - 4

Foreman & Arch
701 North Chelan Street
Post Office Box 3125
Wenatchee, Washington 98807-3125



EXH - 22   Page 5 of 6

United States also agreed to continue to provide users of the Stehekin Valley Road with the same unrestricted access to the Road as they enjoyed prior to the Road Transfer.

C.2. The United States has failed to perform its end of the bargain and has breached the referenced contract with Chelan County by failing to maintain the Stehekin Valley Road according to the agreed-upon standard and has unlawfully and in breach of the agreement limited the access of Road users.

C.3. The United States, through the National Park Service and William Paleck, has unlawfully denied Chelan County residents equal access to the Stehekin Valley Road.

C.4. The United States, through the National Park Service and William Paleck, has injured and/or unreasonably jeopardized the health, safety, and welfare of Chelan County residents.

C.5. The United States, through the National Park Service and William Paleck, has wrongfully interfered with the Chelan County residents' fundamental constitutional right to free travel.

C.6. The United States, through the National Park Service and William Paleck, has unlawfully restricted Chelan County residents' right to engage in interstate trade.

WHEREFORE, having fully answered the Complaint of the United States of America and having asserted Counterclaims, Defendant Chelan County prays for the following relief:

CHELAN COUNTY'S FIRST AMENDED ANSWER TO COMPLAINT OF THE
UNITED STATES OF AMERICA AND COUNTERCLAIMS - 5

Foreman & Arch
701 North Chelan Street
Post Office Box 3125
Wenatchee, Washington 98807-3125
(509) 662-0602

NOTICE OF REMOVAL
OF ACTION -116-

EXH – ㉒ 6 of 6
Page 6 of 6

1. Dismissal of Plaintiff's Complaint with prejudice;

2. Enter an order enjoining the United States and the National Park Service from violating the fundamental constitutional right of Chelan County residents to equal access to the Stehekin Valley Road;

3. Enter an order requiring the United States and the National Park Service to perform routine road maintenance on the Stehekin Valley Road in order to protect the health, welfare and safety of Chelan County residents;

4. Enter an order enjoining the United States and the National Park Service from violating the fundamental constitutional right of Chelan County residents to free travel on the Stehekin Valley Road;

5. Enter an order enjoining the United States and the National Park Service from violating the fundamental constitutional right of Chelan County residents to engage in interstate commerce on the Stehekin Valley Road;

6. Damages in an amount to be proven at trial;

7. For Chelan County's costs incurred herein, including reasonable attorneys' fees; and

8. For such other and further other relief as the Court may deem appropriate.

DATED THIS 19th day of February, 1993.

FOREMAN & ARCH, P.S.

By: _____
Robert G. Dodge WSBA #12313
Attorneys for Chelan County

CHELACBL.X5

CHELAN COUNTY'S FIRST AMENDED ANSWER TO COMPLAINT OF THE
UNITED STATES OF AMERICA AND COUNTERCLAIMS - 6

Foreman & Arch
701 North Chelan Street
Post Office Box 3125
Wenatchee, Washington 98807-3125

NOTICE OF REMOVAL
OF ACTION -117-



Stehekin Road.

United States Department of the Interior

NATIONAL PARK SERVICE
Pacific Northwest Region
931 Fourth and Pike Building
Seattle, Washington 98101

EXH-23

19 7??

Page 1 of 7

IN REPLY REFER TO:

A3815
PNR(D)

November 13, 1970

Hon. Henry M. Jackson
Chairman, Committee on
    Interior and Insular Affairs
United States Senate
Washington, D. C. 20510

Dear Mr. Chairman:

We are pleased to reply to your recent inquiry on behalf of Mr. Robert
K. Christy, concerning questions raised over the Stehekin Valley Road.

Our Master Plan calls for minor improvement of the Stehekin Valley Road
from Stehekin Landing to the road's end at Cottonwood Camp - a distance
of 25 miles. Before maintenance or construction could be accomplished
by park funds, transfer of the road to the National Park Service was
needed.

In 1969, the first operating year of the North Cascades National Park
Service Complex, this road remained under the jurisdiction of Chelan
County. That year, Stehekin residents complained that the road main-
tenance was poor and that it had always been poor. The community was
unanimously in favor of a transfer to the National Park Service, yet
we had difficulty finding a way to transfer it. Finally, in April of
1970, the Office of the Interior Department's Solicitor in Portland
arranged a transfer to the Department of the Interior using statutory
powers of the U. S. Bureau of Reclamation.

Following this, the park assumed maintenance responsibility for the
Valley Road. It was graded several times during the summer, the Bridge
Creek bridge was replaced at a cost of $41,000 and the road reopened
all the way to Cottonwood Camp for the first time in many years. The
park devoted in one summer approximately four times as much in main-
tenance funds as the County averaged in previous calendar years.
Despite Mr. Christy's claim, the road as far as High Bridge was not
impassable and was in fact maintained by the same contract equipment
operator, Mr. Virgil Fellows, who had done the grading in past years
for the County. The park staff followed his advice as to times of

AME  Jackson, Henry M.
cession # \3560-4
x  107    Folder  19

REPRODUCTION FROM
THE UNIVERSITY OF WASHINGTON LIBRARIES

Gen Corr/Dept:
US  National  Park  Service
1970
NOCA 22169    2073

NOTICE OF REMOVAL
OF ACTION -118-



EXH- (23)

Page 2 of 7

grading, etc. Unfortunately, 1970 was a record summer for lack of
rainfall; and as you know, with limited road maintenance equipment,
it is generally considered futile to grade a dirt road unless it has
rained. Thus, for a month or so, the road was slightly rougher than
average, but not to any significant degree. Now that fall rains have
come, many loads of gravel have been hauled and graded over the rough
spots. We believe Mr. Christy will be pleased with the improvement.

We have also budgeted planning funds for this fiscal year to prepare
for reconstruction of the Stehekin Road. It is our hope to pave the
lower portion to correct an intense dust problem and generally upgrade
the upper part of the road to motor nature trail standards. However,
Mr. Richard Jeffers of Wenatchee has recently contested the legality
of the County Commissioner's action in transferring the road. Until the
status of the transfer is determined, we must withhold any further
planning or reconstruction expenditures.

In searching for basic causes of the recent concern over the road trans-
fer, we find it centering around snow removal in the Company Creek area.
Ten or 17 percent of the year-round residents live beyond the P.U.D.
Power Plant in the Company Creek area and are concerned that it won't
be plowed out this winter. The County has been unknowingly financing
its plowing over the years, yet feels that it cannot do it now, since
it is not a public road. Unless the County does assume this responsi-
bility, the six families may have to pay for plowing approximately
1.5 miles of road. We see no legal way for the National Park Service
to maintain a private road. Incidentally, there isn't a school bus.
Children are taken to school by their parents. Understandably, some
Stehekin residents have panicked somewhat over this issue and
apparently chose to challenge the road transfer as a means to get
"action." The park staff had always recommended and assumed the
County would take over maintaining 1.5 miles of the Company Creek Road
as a public service, in view of the fact that it was being relieved of
25 miles of road maintenance.

The park staff, with help from the Solicitor's Office, is now working
on the matter of transfer legality and responsibility for maintaining
and plowing the upper 1.5 miles of the Company Creek Road. In the
meantime, Mr. Christy can be assured that the main Stehekin Valley
Road below High Bridge is being maintained as good as, or slightly
better than in the past.

                    Sincerely yours,

                    John G. Rutter
                    John A. Rutter
                    Director

Enclosure

NOTICE OF REMOVAL
OF ACTION -119-

EXH- 23    Page 3 of 7

RECE...
NOCA

MAR 30 1971

JOSEPH L. HUGHES
RICHARD D. JEFFERS
GARFIELD R. JEFFERS

**HUGHES, JEFFERS & JEFFERS**
ATTORNEYS AT LAW
SUITE C
PROFESSIONAL CENTRE
WENATCHEE, WASHINGTON 98801

P. O. BOX 1888
TELEPHONE (AC 509) 662-2146

March 29, 1971

Honorable Board of Commissioners
Chelan County, Washington
Chelan County Courthouse
Wenatchee, Washington  98801

Re:  Stehekin River Road

Gentlemen:

I, as a property owner in the Stehekin area, have been attempting to assist the other residents in resolving the Stehekin River road problem with no emolument to me.

You are aware of the pending legal proceedings by a group of property owners in the Stehekin area to set aside the purported transfer of the Stehekin road to the United States of America. This proceeding has cast a cloud on the ownership of the road and the possible obligations of the County and the United States regarding maintenance of the same. In an effort to amicably resolve this matter, I have been in conferences with Mr. C. Richard Neely, the United States Solicitor representing the National Park Service, Mr. Whitmore, your Prosecuting Attorney, and the representatives of the Stehekin area residents.

The problems seem to eminate primarily from the failure of the National Park Service to assume responsibility for the maintenance of the road within reason on a year-round basis and, in particular, the snow removal on the road from the Stehekin Landing to the end on the Company Creek side of the Stehekin River and a reasonable distance on the North-easterly side of the River above the Company Creek bridge. The Park Service attempted to keep a part of these roads open during the past winter and the residents of the area have been advised that with adequate equipment and personnel to be available this coming year, there will be a decided improvement over the efforts of this past season.

NOCA 22169    2101

NOTICE OF REMOVAL
OF ACTION -120-

)                                    ).

Honorable Board of Commissioners          EXH- (23)      Page 4 of 7
March 29, 1971
Page Two



        The Park Service has to date refused to give serious
consideration to the road above the powerhouse on the Company
Creek side of the Stehekin River because the existing road-
way has not legally been made a part of the Chelan County
Road system.  Some of us disagree with this position inasmuch     ←
as the County has maintained this section of the roadway
for many years, and by reason of which we believe it to be
a part of the County system, irrespective of formal or legal
recognition.

        In any event, the Park Service seems willing to
consider the responsibility of the road above the powerhouse
if the property owners will grant a 30-foot permanent ease-
ment on the existing roadway.  In a joint effort to resolve
this matter, we would respectfully request that your County
Engineer be directed to furnish right of way descriptions
with property owners names and addresses for a 30-foot right
of way on the existing road above the powerhouse to the
end.  With this information, we can then attempt to secure
the necessary documents to satisfy the Park Service and,
hopefully, resolve this matter.

        This has been discussed with Mr. Whitmore, and I
believe he is in accord with this request.  I enclose a
list of names of purported property owners adjacent to the
road in question.

                        Respectfully submitted,

                        RICHARD G. JEFFERS

RGJ:le

Enclosure

cc:  Mr. Homer Trefry
     Mr. David Davis
     Mr. Fred Nierman
     Mrs. Milda Russell
     Mr. C. Richard Neely
     Mr. Lowell White
     Mr. E. R. Whitmore, Jr.
     Chelan County Engineer
     Mr. George Wagner
     Mr. Dan Campbell

                                        2101 page 2



Page 5 of 7

L3027
Files

4/15/71

Lands

Superintendent, North Cascades

Meeting with Chelan County Commissioners

On April 13, Mr. Richard Neeley, George Wagner and myself met with Mr. Richard Jeffers and the Chelan County Commissioners regarding ownership questions on the Stehekin Valley Roads.

Attorney Jeffers has brought legal action against the County of Chelan regarding their legal right to transfer the Stehekin Valley road to the National Park Service. Mr. Jeffers stated however that if the Company Creek Road (1.6 miles) could be maintained by the National Park Service, he would drop the suit on the Stehekin Valley Road (res judicata). This means that the he would stipulate that the County of Chelan did in fact legally transfer this road to the National Park Service and the case would be rested.

The National Park Service has agreed to maintain the 1.6 miles of Company Creek Road in its present condition and width and to keep it reasonably free of snow when the jurisdiction on this road is transferred to the National Park Service. It was agreed that this could be done through an easement.

There are apparently 44 landowners across which this road traverses. It was decided that if the County could come up with a center-line description of this road, that Mr. Jeffers would inturn submit this description to the various landowners involved and obtain an easement right from them. The County survey will begin when snow conditions warrant.

W. Lowell White

cc:
Stehekin
Director, PNR
File
White/ad

NOCA 22169        2102

NOTICE OF REMOVAL
OF ACTION -122-



Page 6 of 7

JOSEPH L. HUGHES
RICHARD G. JEFFERS
GARFIELD R. JEFFERS

**HUGHES, JEFFERS & JEFFERS**
ATTORNEYS AT LAW
SUITE C
PROFESSIONAL CENTRE
WENATCHEE, WASHINGTON 98801

P. O. BOX 1688
TELEPHONE (AC 509) 662-2146

May 4, 1973

United States Department of the Interior
Office of the Solicitor
Portland Region
1002 N. E. Holladay Street
P. O. Box 3621
Portland, Oregon  97208

Attention:  Mr. C. Richard Neely
Assistant Regional Solicitor

Re:  Stehekin River Resort, et al v. Chelan County
Chelan County Cause No. 25845

Dear Dick:

I enclose herein a signed copy of the Order and
Judgment and a Xerox copy of the Stipulation in the above
matter.  The judgment was signed and filed April 30, 1973.
I have taken the liberty of forwarding a copy to Lowell
White, Superintendent of the North Cascades National Park.

I believe this should conclude this matter and I
hope to everyone's satisfaction.

Once again you have been most cooperative in par-
ticipating with all concerned in solving what, at one time
at least, was a rather sticky problem.  Sometimes mutual
understandings with the inherent equities of the problem
bring about a far better solution to a problem than expound-
ing the legal principles and theories before the courts.

On behalf of the Stehekin Property Owners Associa-
tion and my firm, I wish to sincerely thank you, your office,
and Mr. Lowell White for your cooperation in the solution to
this problem.

Sincerely yours,

RGJ:le
Enclosures                      RICHARD G. JEFFERS
cc:  Mr. Lowell White
     Mr. E. R. Whitmore, Jr.
     Chelan County Board of Commissioners
     Mr. Donald West, Chelan County Engineer        NOCA 22169      2103

NOTICE OF REMOVAL
OF ACTION -123-

EXH – (23)

## APPENDIX G: COMPANY CREEK ROAD MAINTENANCE    Page 7 of 7

As part of its management and operational responsibilities at Lake Chelan National Recreation Area, the National Park Service maintains the Stehekin Valley road. When the National Park Service assumed this responsibility in 1971, it also committed to maintain the Company Creek road, which is a spur road located to the west of the Stehekin River. It connects with the Stehekin Valley road at the Harlequin Bridge. The lower portion of the Company Creek road provides access to NPS maintenance facilities, seasonal housing area, the Chelan County PUD generating plant, and the emergency airstrip. The middle and upper portion of the road provides access to approximately 15 private residences.

While the National Park Service has the legal authority to maintain the Stehekin Valley road, Harlequin Bridge, and the access to these public areas, the authority of the National Park Service to maintain the middle and upper portions of the Company Creek road is less clear. This is because it is not totally in federal ownership.

The National Park Service ordinarily spends public maintenance dollars on roads that are under federal control.

The National Park Service wants to continue its commitment of routine maintenance on the Company Creek road in good faith with the residents of the Stehekin Valley. Therefore, to to clarify the authority of the National Park Service, it is recommended that Congress amend the legislation establishing the Lake Chelan National Recreation Area to provide the National Park Service the authority to maintain the Company Creek road. Appropriate legislative language to this effect will be drafted and included in the legislative support data package that will be prepared after the final GMP/EIS and Record of Decision are completed.

In the interim, the National Park Service proposes to continue to honor its long-standing commitment to maintain the road to the extent funding allows without major reconstruction and/or expenditure of funds.

FINAL GEN. MGT. PLAN – LCNRA JUNE 1995

NOTICE OF REMOVAL
OF ACTION -124-

EXH - 24    Page 1 of 2



**United States Department of the Interior**    Rec'd 2/21/74

OFFICE OF THE SOLICITOR
PORTLAND REGION, 1002 N. E. HOLLADAY ST.
P. O. Box 3621, Portland, Oregon 97208

L3027

February 20, 1974

In reply refer to:

Memorandum

To:    Associate Regional Director, Professional Services,
       Pacific Northwest Region, National Park Service, Seattle

From:  Office of the Regional Solicitor, Portland

Subject: Right-of-Way Across Lot 15, Purple Point Addition to
         Stehekin, Washington; Your Reference: L1425(PNR)PSL

A right-of-way across the above land was acquired by the United
States by Right-of-Way Deed on January 16, 1919, from the Chelan
Electric Company, a Washington corporation. The right-of-way is
described as being a strip or piece of land 20 feet wide, 10 feet
wide on each side of a described center line. The strip of land
has been used as a road and public thoroughfare by the United
States while under the administration of the Forest Service,
Department of Agriculture, and such use has continued while under
the jurisdiction of the National Park Service. You now state
that, in addition to using the strip of land as a public road,
you wish to use it for a sewer line which will be buried within
the right-of-way. With the completion of the sewer line, you
intend to pave a 14-foot strip of the right-of-way for continued
use by the public and as access to the proposed sewage plant.

We have reviewed the right-of-way deed which you forwarded to us
with your letter of February 13, 1974, and it is our interpretation
of the instrument as a grant of a determinable fee. As such, the
United States has full title to the strip of land as described in
the deed so long as said strip is used for road purposes and no
other use is made of the strip which would be incompatible with
its use as a road and public thoroughfare. The use of the road
for a sewer line which will be buried is not incompatible with
its use as a public road and such use would not terminate the
interest of the United States.

Blue folder map



EXH - 24

Page 2 of 2

Should the United States ever abandon the strip as a public road or thoroughfare, or block it in any way, or make some use which is incompatible with its use as a public road, the strip would revert to the land through which it traverses.

You should be aware that the deed could be construed as an easement. The language of the deed even uses the word "easement." However, we do not view this as controlling and believe the proper interpretation is that of a determinable fee. Should the grant be construed by a court as an easement, it could also be held that the United States did not have the right to use the roadway for the laying of a sewer pipe. Should a court so hold, the Park Service would be required to pay additional compensation for the additional burden placed upon the servient tenement. While it is our opinion that the Park Service has the right to place the sewer line within the 20-foot strip of right-of-way, nevertheless, should a court hold that such right was not included as a part of the grant, the action on the part of the Park Service would be held to be an inverse condemnation for which the servient landowners would have a right under the Tucker Act to additional compensation.

The copy of the deed forwarded to us is herewith returned.

For the Regional Solicitor

C. Richard Neely
Assistant Regional Solicitor

Enclosure

2

NOTICE OF REMOVAL
OF ACTION -126-

EXH-(25)    Page 1 of 1

East 3509 Deer Roa(
Mead, Washington 99(

January 23, 1997

National Park Service
2105 Highway 20
Sedro Woolley, WA 98284-1799

Attention:  Mr. Bill Paleck

Re:  Stehekin Valley Road; Final outcome of Case CS-92-0331-AAM

Dear Mr. Paleck:

I am interested in learning of the legal status of the Stehekin
Valley Road after the final outcome of the referenced lawsuit
between the NPS/NCCC and Chelan County.

Specifically, I wish to know if the quiet title action and court
summary judgement resulted in a deed to the NPS for the underlying
land or just to an easement/right-of-way.  The summary judgement
infers that the dispute and final order was about "ownership" of
land in fee title and not merely an easement or dominant right to
use, improve and maintain the roadway.

I would appreciate receiving information from the NPS or others
which would answer that question.  A copy of the deed, title report
and title insurance should be sufficient to support your reply.  I
agree to pay reasonable costs, if any, for copying and mailing to
the address shown above.  If the costs exceed ten dollars ($10.00)
please advise in advance of processing this request.

Thank you,

Jim Bohn

NOTICE OF REMOVAL
OF ACTION -127-



EXH - (26)



United States Department of the Interior     Page 1 of 1

NATIONAL PARK SERVICE
Lake Chelan National Recreation Area
Ross Lake National Recreation Area
North Cascades National Park
2105 State Route 20
Sedro-Woolley, Washington 98284-9394

IN REPLY REFER TO:
L1425
(LACH 04-155)

February 21, 1997

Jim Bohn
East 2509 Deer Road
Mead, Washington 99021

Dear Mr. Bohn,

Thank you for your recent letter regarding ownership of the Stehekin Valley Road, Lake Chelan National Recreation Area.

An Order Granting Motion for Summary Judgement in the Case of the United States of America, North Cascades Conservation Council vs. Chelan County (No. CS-92-0031-AAM) was entered on June 4, 1993. The Court confirmed the validity and applicability of the quitclaim deed from Chelan County to the United States and noted, in part, that *"The quitclaim deed clearly states that Chelan County conveyed and quitclaimed to the United States "all right, title and interest in and to [the Stehekin Valley Road]."*"

The United States owns an easement for a 60 foot right-of-way, being 30 feet on each side of a surveyed center line. This easement is for the exclusive use, operation, and maintenance of a road within the 60 foot right-of-way. Although adjoining land owners would have retained ownership of the underlying real property, any activity within the 60 foot right-of-way that would adversely affect or interfere with use and maintenance of the road and its ability to accommodate public travel would not be permitted. For your information, we have enclosed a copy of the survey map showing the road right-of-way crossing your property.

If you have additional questions, please contact Dan Allen, Resource Management Specialist, in this office (360/857-5700 x 367).

Sincerely,

William F. Paleck
Superintendent

Enclosure

cc:     Regional Solicitor
        CC-SO Lands
        Management Assistant, Stehekin

READING FILE

Printed on Recycled Paper



EXH- 27

**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

1. **October 1, 1891:** The Lake Chelan Railroad and Navigation Co. have made a careful inspection of the Stehekin Valley and report an entirely feasible route for a wagon road and railroad (*Chelan Falls Leader*).

2. **November 5, 1891:** The distance from the head of the lake to Bridge Creek is about 15 miles, and those who have been over the route say the road can be built with a small amount of labor and expense. The prospectors and miner in these districts, and the people of Chelan and vicinity, many of whom are interested in the mines, are very anxious to have the road surveyed as far as Bridge Creek at once, and in this event have volunteered to build that much of road this fall (*Chelan Falls Leader*).

3. **March 31, 1892:** It is stated that the county commissioners have established the county road from the head of the lake, up the Stehekin River to three miles above the north of Park Creek, that being as far as the survey extends at present, and have granted an appropriation of $1,000 towards building the necessary bridges. Good enough (*Chelan Falls Leader*).

4. **April 13, 1893:** The Manhattan Railway Co. has filed its map of definite location at the land office at Waterville, showing the route of the proposed road from the Columbia River to Chelan, and from the head of the lake to the present terminus among the mineral locations in Horseshoe Basin… It is understood that work will be pushed on this road as soon as a force of men can be worked to advantage (*Chelan Falls Leader*).

5. **January 4, 1895:** All things considered it seems almost certain that the legislature will make a small appropriation this winter, not for a broad wagon road as was once intended, but for a first class trail over the Cascades, past the head of Lake Chelan (*Chelan Falls Leader*).

6. **May 24, 1895:** The trans-Cascade wagon road bill becomes operative June 13th, and the governor will then appoint the commissioners (*Chelan Leader*).

7. **August 16, 1895:** The state road commissioners Wilson, Weltz and Watson, together with engineer of the expedition, were passengers on the down steamer Stehekin Tuesday, returning this morning. Their trip to Chelan was for the purpose of examining the outlet for the state road via the lake (*Chelan Leader*).

8. **May 8, 1896:** The state road commission last week decided to adopt the Cascade pass over which to build a wagon road (*Chelan Leader*).

9. **May 22, 1896:** It is learned that Commissioner Watson will begin state road work on Bridge Creek as soon as the snow will permit (*Chelan Leader*).

10. **Spring 1896:** ME Field of Stehekin given contract for construction of bunkhouse to house the work crews along lower Bridge Creek.

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 1 of 17

NOTICE OF REMOVAL
OF ACTION -129-



**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**



11. **June 19, 1896:** State Road Commissioner J.H. Watson is said to be busy with a force of men opening a road from the lead of Bridge Creek to Cascade Pass.

12. **1896:** Construction began. Timber cut 20 feet wide, heavy excavation limited to 4 feet wide, rocks and stumps removed. In the end, "road" was little more than a pack trail.

13. **August 14, 1896:** It is understood that wages on the state road are $2.00 per day per man (*Chelan Leader*).

14. **September 11, 1896:** T.H. Culbertson returned Saturday from Bridge Creek and reported only about ten more days of state road work before the appropriation runs out (*Chelan Leader*).

15. **June 18, 1897:** Billy Dorwin, state road commissioner, and Pat McDonald, spent several days at the Lake View house last week, departing for the scene of action at Bridge Creek on Friday's boat. Mr. Dorwin purchased most of the supplies for the road crew at Hardenburgh's instead of getting them on the outside –a good precedent (*Chelan Leader*).

16. **June 17, 1898:** Will Little is helping to make a trail into the Bridge Creek district for the Clagstone outfit (*Chelan Weekly Leader*).

17. **August 20, 1898:** Our business men will please make a note of the fact that lots of mining trade is going from Bridge Creek to Twitsp because the trail is better than that to the head of Lake Chelan. Let's get in and make the trail better (*Chelan Leader*).

18. **October 21, 1898:** A petition is being circulated asking for an appropriation by the next legislature of $7,000 to build a wagon road from Stehekin to Bridge Creek (*Chelan Leader*).

19. **1899:** State road commissioner Hoag reported road complete from Stehekin to within 3 miles of Bridge Creek, and 2 of 3 bridges complete (*not credited*).

20. **February 24, 1899:** Article on state appropriations, in part; $1,650 for the erection of four bridges – two on Bridge Creek, one on Maple Creek, and one on the north fork of Bridge Creek, where the road crosses these creeks – and $5,000 for building and repairing the road from the mouth of Bridge Creek to Stehekin landing at the head of Lake Chelan (*Chelan Leader*).

21. **April 7, 1899:** The prospects are bright for the mining interests on and above the head of Lake Chelan this year. The sum of $5,500 is to be expended by the state in making a road from Stehekin into the heart of the mining district (*Chelan Leader*).

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 2 of 17

NOTICE OF REMOVAL
OF ACTION -130-



EXH- 27

Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

22. **May 26, 1899:** State Road Commissioner O.A. Hoag goes up the lake today to look over the route from Stehekin to Bridge Creek and size of the situation preparatory to laying out that important piece of road, letting contracts and getting one started (*Chelan Leader*).

23. **June 16, 1899:** State Road Commissioner Keller arrived here on Friday morning, and Commissioner Richardson on Sunday. The board went to Stehekin Monday, to lay out the Stehekin-Bridge Creek road and to get ready to let contracts for building the same (*Chelan Leader*).

24. **June 23, 1899:** Road Commissioners Hoag, Keller and Richardson returned from Stehekin and Bridge Creek on Tuesday's boat, having located and surveyed that very important branch of the Marblemount-Sans Poil state road, It is understood they made some few changes from the present trail, notably at the head of the lake, where it will start from Mr. Purples' place on the north bank of the Stehekin River, and skirt the mountains, thus avoiding the river overflow, and near the mouth of the Agnes, where it will follow the Stehekin River—bridging it twice—instead of climbing the steep hill by Coon Lake. Bids for the work will be received tomorrow and contract let (*Chelan Leader*).

25. **June 30, 1899:** William Gibson returned from surveying the Stehekin – Bridge Creek state road. There were five or six bidders for the contracts at the head of the lake on the state road, but up to the time of going to press, so far as could be learned and as no one had given bonds and nothing was certain as to who would finally do the work (*Chelan Leader*).

26. **September 14, 1899:** Notice to Contractors: Notice is hereby given that the State Road Commissioners of the Sans-Poil Marble Mount state road will receive sealed bids up to 4 o'clock p.m., Friday, September 15th 1899, at Stehekin, Wash., for the building of a state wagon road from the 3-mile post on the state survey, following line of survey along foot of mountain to Stehekin Landing near Purple's warehouse at the head of Lake Chelan. Road bed to be 8 feet wide, all brush and small trees to be cut out to a width of 16 feet, road to be kept above high water and low bottom land. Bidders will be required to bid on work by the mile. Successful bidders will be required to give bond in double the amount of contract price. The Commissioners reserve the right to reject any and all bids. By order of Commissioners s7-14 O.A.Hoag, Secretary (*Chelan Leader*).

27. **October 19, 1899:** State Road Commissioners Hoag and Richardson went up the lake Monday to take a final look over the bridge and road work done there this season (*Chelan Leader*).

28. **December 21, 1899:** State Road Commissioner O.A. Hoag mailed his final report to the governor on Saturday, as secretary of the Marblemount-Sans Poil board of road commissioners. It is signed by the full board, and contains a plain, comprehensive statement of receipts and disbursements, accounting for every cent of expenditure and showing where it went. It also states all material facts relating to the route and location and

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 3 of 17

NOTICE OF REMOVAL
OF ACTION -131-



EXH- 27

### Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

evidences the most thorough acquaintance with the business at hand. The showing made cannot fail to be highly creditable alike to the board and the state administration (*Chelan Leader*).

29. **March 1, 1900:** A road district was established at the head of Lake Chelan, covering the same territory as School District 21, and Maj. J.W. Horton was appointed road supervisor (*Chelan County Commissioner Board meeting agenda*).

30. **April 12, 1900:** A road extending from M.E. Field warehouse at Stehekin to the Marblemount state road was declared a county road (*Chelan Leader* – part of an article about the Chelan County board meeting).



31. **1906:** By 1906, $35,000 had been spent on the Cascade Pass wagon road. The State Highway Commission of that year estimated that 75% of the money had been wasted. The only thing to show for it in the valley was a 14 mile stretch of road and trail between Bridge Creek and Lake Chelan, along the Stehekin (*Chelan Weekly Leader*).

32. **February 28, 1908:** If the United States congress makes the appropriation of money for national forest administration which the department of agriculture has asked for – and it is reasonably certain that the appropriation will be made – Supervisor Milham will have a sum of about $32,000 for expenditure on the Chelan national forest during the next fiscal year, beginning July 1, 1908. Of this about $10,000 will be expended in the immediate vicinity of Lake Chelan. The estimate made for the work to be done … include $1,500 for improvements to the wagon road up the Stehekin river valley… (*Chelan Leader*).

33. **April 21, 1913:** An allotment of $7,000 from the regular permanent improvement fund of the forest service was made by the last Congress to cover the cost of construction and improvement of the following list of road projects with the state: included Stehekin valley $600 (*Wenatchee World*).

34. **July 3, 1913:** Duncan McArthur, who has had charge of a crew of men on the Stehekin forest for Supervisor Milham the past two months, came down the first of the week to spend the Fourth. They are at work on a road up the Stehekin, which is being built by the government in the interest of the Chelan timber (??)… road building will continue up the valley as far as Bridge Creek. This is through a rough mountainous district where one could hardly go at present with a saddle horse, but Mr. Duncan reports that they are finishing the road up so that it will be in good shape for automobiles (*Chelan Leader*).

35. **October 22, 1914:** County Commissioner T.W. Cowan and County Engineer Fred Warren went up to the head of the lake last Friday to look over some work done by the forest service on the county road up the Stehekin valley and to look over the proposed change of the channel of the Stehekin river at one point to protect the road where it is now located (*Chelan Leader*).

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 4 of 17

NOTICE OF REMOVAL
OF ACTION -132-

EXH – ㉗



Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

36. **1915:** Replace original bridge at High Bridge with wagon bridge.

37. **May 12, 1915:** A syndicate of eastern capitalists are buying 3 mines in Horseshoe Basin from Horseshoe Basin Mining and Development and Cascade Gold and Copper Mining for $900,000. The deal indicates the building of a railroad up the Stehekin River from the head of Lake Chelan to Horseshoe Basin (*Wenatchee Daily World*).

38. **June 7, 1917:** The bridge at the Stehekin built by the Forestry Bureau and the Great Northern has been completed (*Chelan News Leader*).

39. **June 2, 1921:** in part; This year the legislature appropriated $20,000 for the construction of an automobile road from Marblemount to Stehekin, at the head of Lake Chelan (*Chelan Leader – reprinting article from Seattle Post Intelligencer*).

40. **1922:** The distance from Puget Sound to the head of Lake Chelan via Cascade Highway is 123 miles. Of this entire distance, Chelan County has already built 14 miles of wagon road on the east end (*The Lone Barrier* – a booklet).

41. **June 14, 1922:** Oscar Hayden has been transferred to Stehekin where he is helping on the road now being built by the Forest Service and the County (*Chelan News Leader*).

42. **July 19, 1922:** A.M. Pershall was down lake passenger on the boat Tuesday, having been doing some rock work on the road between High Bridge and Bridge creek. The powder was donated by the Forest Service, the work by Mr. Pershall and Tuttle's Boat company the transportation. The road will now be in much better condition for tourists to get to the Bridge creek, the home of the brook trout (*Chelan Leader*).

43. **September 17, 1925:** A crew of 25 men are at work at Stehekin, two miles above high bridge constructing a light duty Forest Service road which is being built primarily for fire protection. Work started on this road July 1 and already $5,000 has been spent. The road will be eventually built as far as North Fork. When completed the road is estimated to cost some $12,000 (*Chelan Valley Mirror*).

44. **March 25, 1926:** The state highway department this year will begin construction of the Cascade highway which heretofore has existed only on paper... The sum of $70,000 was appropriated for this road by the State at the last regular session of the legislature and it is this money that will be expended on this road.... When the road is completed, no doubt a great deal of traffic will pass through Lake Chelan as the cars could be ferried to the head of the lake (*Chelan Valley Mirror*).

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 5 of 17

NOTICE OF REMOVAL
OF ACTION -133-

EXH- (27)

### Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

45. **June 3, 1926:** Freight boat to Stehekin Wednesday morning with grader, tractor load of supplies, also crew of men to be used in extending road from Stehekin to Bridge Creek (*Chelan Valley Mirror*).

46. **June 10, 1926:** The Forest Service shipped a big supply of groceries to the head of the lake for the road crew (*Chelan Valley Mirror*).

47. **July 5, 1927:** It is understood that the road between Rainbow Falls and High Bridge, at Stehekin, will be greatly improved this summer by the Forest Service road crew. Field's barge, towed by the Mohawk with Hal Field at the wheel, took up a load of provisions and equipment last Thursday. The load included two catipillars, a big grader, truck hay, gas, powder, etc. (*Chelan Valley Mirror*).

48. **August 27, 1927:** The new road which is being constructed by the Bureau of Roads from First Creek to 25-Mile Creek will be finished for use next year, continued Mr. Field,… When complete it will enable those who desire to drive through over a good road all the way from 25-Mile Creek. We have two barges, each capable of handling 15 cars. In addition to that we have the boats to handle the barges. Next year it will be possible to drive from Wenatchee to 25-Mile Creek and those desiring will be able to be at Bridge Creek that night with their automobile. Bridge Creek is 15 miles from the head of the lake (*Wenatchee World*).

49. **October 13, 1927:** The Comanche took up a barge load of general freight for the road camp at the head of the lake; one item was a power shovel. Some size and weight (*Chelan Valley Mirror*).

50. **October 13, 1927:** The rebuilding of about a mile and one half of road at the head of the lake, which when it was built several years ago, was by mistake put in below the 1,100 foot level; is now being started, the work to be done by Stewart Johnson, contractor. Mr. Johnson has the contract to rebuild all of the roads around the lake that will be flood, and so far the work has been done by subcontractors, but this piece of road work at the head of the lake will be done by Mr. Johnson himself. Fields' barge, loaded with equipment, which included a 35 ton steam shovel, 42 tons of coal, one truck, large quantity of gasoline, culvert pipes, machinery and other equipment, was taken up lake last Sunday might by the Commanche. As the barge was heavily loaded, they had to wait until the wind went down in the evening before starting (*Chelan Valley Mirror*).

51. **December 8, 1927:** The Cascade Pass Highway means as much to the Eastsiders as it does to the Westsiders, and yet the great bulk of the work necessary to put this constructive proposition across has been left to the Westsiders, and thanks to them they have done their part excellently. However, a greater portion of their work is being done through the Cascade Pass Highway association and we can help by becoming members of that association. A drive is on this side of the "hump" to get members for the association. It

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 6 of 17

NOTICE OF REMOVAL
OF ACTION -134-



EXH- 27

Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

costs $1 to become a member and your membership, by helping put over the highway, will pay more dividends that you can imagine. The Chelan Valley will benefit tremendously by the highway and membership here should be 100 percent. Get in tough with Clark Wood, Lake Chelan Chamber of Commerce secretary, who is receiving memberships for the association. Your moral support for the highway as expressed by your association membership is twice as important as the nominal fee of $1 you are asked to pay. Help the association and help yourself (*Chelan Valley Mirror*).

52. **July 26, 1928:** A crew of about 18 men is working this summer rebuilding the road from Stehekin to High Bridge in the lower end of the Stehekin Valley. It is estimate the crew will be working there all summer. The apportionment for the work is about $6,000 (*Chelan Valley Mirror*).

53. **July 26, 1928:** The picture showing fine stretch of highway on the Stehekin river at the head of Lake Chelan. This is the finished road of the forest reserve that is completed for 15 mile from the Lake to Bridge Creek where it will join the Cascades Pass highway from Marblemount to Methow Valley. The forest reserve is now spending considerable money and has a large force of men straightening and widening this section of road. With an appropriation of $800 for the widening of the Bridge Creek bridge the road crew would be able to start work on the upper side and extend a good truck road nine miles to the point where the tram line would bring ore from the Horseshoe Basin. Eight miles of this road would be built over the old surveyed railroad grade and would cost little as brushing out would allow the grader to blade the surface 12 feet in width (*Wenatchee World*).

54. **August 16, 1928:** No better method of keeping the Cascades Pass before the eye of the public each year could be employed than the annual Cascade Pass pilgrimages of which this one is the third. Such pilgrimages make new converts to the proposition and re-new the faith of others in the matter. It is played up in the big daily papers and the interest of the state is thus focused on the needed highway. The Cascade Pass is of such important that it is this year no less that a political issue. The next time a politician approaches you, ask him how he stands on this matter. Let's make it a real political issue (*Chelan Valley Mirror*).

55. **October 18, 1928:** The forest service crew employed in the road from Stehekin to Bridge Creek this summer is now completing its season work. While interrupted by lightning fires the job has progressed to Coon Run Creek and may get finished up to the grade at High Bridge. Some rock and hand work will be left to be done next year if appropriations are available. The old road has been worked over, relocated in places and made much more usable under the standards adopted for forest development roads (*Chelan Valley Mirror*).

56. **October 18, 1928:** Work on the Stehekin-Bridge creek road will be brought to a close this week by forest service officials in charge. There has been much widening and straightening of old roadbed and a great deal of new work by relocating this highway. A

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 7 of 17

NOTICE OF REMOVAL
OF ACTION -135-

EXH - 27

**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

large force has been employed since June and a near boulevard is the result. This will be part of the Cascade Pass highway from the lake to Seattle via Sedro-Woolley *(Wenatchee World)*.

57. **October 18, 1928:** Road work on the Chelan National Forest this year has been principally on the Lake Shore project beyond First Creek and improving the Stehekin Valley road. The first of these has been a Forest Highway project constructed by the Bureau of Public Roads. Allotments for forest highway funds are made by the secretary of agriculture on recommendation of a board composed of the forest service, Bureau of Public Roads and state highway officials. He first approves a definite list of roads on or near the national forests on which forest highway funds may be used and then year to year allots funds for the work. As stated by the forest supervisor, PT Harris, the raising of Lake Chelan which required the relocation of many building along the lake had something to do with the placing of the Lake Shore road on the list. The Stehekin Valley project is a betterment of the old road under standards adopted for forest development roads. These are of lover grade than the forest highway specifications. Such roads are usually for the purpose of opening up forest areas for fire or other forest business. They are constructed directly by the forest service *(Chelan Valley Mirror)*.

58. **October 18, 1928:** Much of the incomplete (33 mile) gap in this project lies in National Forest Reserves. Both Senator Wesley L. Jones and Congressman Lin H. Hadley and Sam hill have pledged their support in curing federal aid for its construction. Surely Skagit and Chelan counties have contributed more than their share to this development that will be beneficial to the entire state. Now it is up to the state and federal governments to complete the job *(Wenatchee Daily World)*.

59. **December 10, 1928:** Favorable weather for the past few weeks permitted the road crew at the head of the lake, to complete the mile and one-half of road from, the head of the lake to Purple's Point. A few weeks ago the weather looked stormy, and it was thought that work for the season would have to be discontinued. Since that time the snow has gone off and the weather has been ideal for road work. The road, 9 feet wide, which was started about one month ago, was completed the first part of this week, and the crew of 25 men began breaking camp today. There was nearly a half mile of difficult rock work, which called for considerable blasting, and considering these facts, the road was built in excellent time *(Chelan Valley Mirror)*.

60. **January 3, 1929:** The Cascades Pass Highway Association has asked to be included in the State highway system, so as to be eligible to Federal aid appropriations. This means that if we get Federal aid on the Cascade Pass highway, that 50 per cent of the cost will be borne by the Federal government. The further liklihood of securing Federal aid seems assure, due to the fact that the Army department favors this northern highway across the state, claiming it to expiedent as a military highway *(Chelan Valley Mirror)*.

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 8 of 17

NOTICE OF REMOVAL
OF ACTION -136-



EXH-27

## Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

61. **January 24, 1929:** Governor Hartley, recommend in this budget, $150,000 for the Cascade Pass highway (why they continue to call this a "wagon road" we don't know, but it makes no great difference). We wanted more than $150,000 from the legislature, but the very fact that the Governor included the Cascade Pass highway in the budget is encouraging. If an additional $100,000 is squeezed on the Cascade Pass highway budget, probably the Governor would not veto the bill (*Chelan Valley Mirror*).

62. **March 7, 1929:** Concerning the Cascade Highway itself, Senator Bollinger feels sure that the legislature will appropriate as least the $150,000 asked for and maybe twice that amount. Senator Bollinger is of the opinion that it may be well to have representation at Olympia, when the Bureau of Public Roads and the State highway committee meets after the session of legislature. It is hoped to have the Federal Government match dollar for dollar with the State appropriations (*Chelan Valley Mirror*).

63. **March 28, 1929:** Federal aid for the Cascade Pass highway has been secured which makes the total amount of money available for the highway in 1929, 1930, $400,000. Although Governor Hartley only recommended that $150,000 be appropriated by the legislature this year... the legislature at the last minute, appropriated $200,000, and those here... feel certain the governor will not veto the bill... Members of the Eastside Cascade Pass association, are anxious that half of this $400,000 that is available, or the amount that will be due from the federal government, be spent in building the road on this side of the pass from Bridge Creek up to the foot of the Horse Shoe Basin, a comparative easy stretch of road to build (*Chelan Valley Mirror*).

64. **April 4, 1929:** If there was any one here who thought that the Cascades Pass highway would never be built, that misconception ought to have been erased from the mind by now with the news that the State legislature appropriated $200,000 and that the Federal government through the bureau of public roads will match dollar for dollar with State monies. This means that the Cascade highway has been put in the Federal system and that State appropriations will be continuously matched by Federal appropriations. Every session of legislature will see this road being awarded additional sums for its completion and the completion of this road is entirely possible within the next five years. At any rate it is a cinch that it is going to be built (*Chelan Valley Mirror*).

65. **August 1, 1929:** There is a road crew fixing the road at the head of the lake, just below High Bridge. The road is now in very good shape clear to Bridge Creek. The fire guard who was formerly located at High Bridge, is now located at Bridge Creek. Dan Devore, veteran packer of that section, also has moved his headquarters to Bridge Creek (*Chelan Valley Mirror*).

66. **September 6, 1930:** $200,000 for Cascade Pass – State Calls for Road Bids: Another step was taken yesterday by the state highway department at Olympia toward giving people and products for the Methow valley and the Stehekin country an outlet to the Pacific coast, by

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

NOTICE OF REMOVAL
OF ACTION -137-

**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

calling for bids on a $200,000 contract on the Cascade wagon road. The bids called for 160,000 yards of class "A" excavation and 73,000 solid rock excavation *(Wenatchee Daily World)*.

67.  **April 30, 1931:** Roy Weeman, district ranger at Stehekin, reports that the maintenance work on the road from Stehekin to High bridge has been complete and that the road is in good shape. The road is not open to Bridge creek however, as there are still some snow banks and slides that are obstructing the way *(Chelan Valley Mirror)*.

68.  **October 22, 1931:** $20,000 IS PROVIDED FOR CASCADE HIGHWAY; Work This Year Between Upper Bridge Creek And Summit: The Cascade wagon road has had $20,000 apportioned for the extension. This is a new road which will connect North Central Washington with Western sate points through the Methow valley. For the past few years work has been going on from both sides of the mountains. The 10-mile extension allowed for this year will begin at Upper Bridge Creek and extend to the summit of the Cascades. The state has expended some money on this new road *(Chelan Valley Mirror)*.

69.  **October 29, 1931:** If $20,000 is to be spent in road work next summer, between Bridge Creek and Cascade Pass a good many miles of road should be constructed. Just how efficiently the money will be spent and how good a road is to be built, is not known, but quite a few miles of fine road could certainly be built for that sum, as the proposed road lies right along the river bed, on an easy grade and over a country that would require very little rock work. The completion of this road will mean the easy development of the rich lead and silver properties in the Horse Shoe Basin district, known as one of the richest ore deposits in the State but hitherto inaccessible because of lack of transportation *(Chelan Valley Mirror)*.

70.  **August 11, 1932:** Two hundred thousand dollars federal money for North Central Washington highway projects was allocated by state and federal officials meeting in Olympia yesterday. Betterment on the Lake Chelan highway is Chelan County for $10,000. The $10,000 appropriation for the Lake Chelan highway will be used to better the highway from First Creek to 25-Mile creek, local officials believe... *(Chelan Valley Mirror)*.

71.  **March 15, 1934:** Excerpt from letter by EF Banker, then director of the State Department of Conservation and Development: *It* (Cascade Highway*) was established as a state road about thirty years ago, and was the first state highway created by legislative act. It is know as State Road No. 1. It was a secondary highway until the 1932-33 session of the legislature, when it was made a primary highway, and is now eligible for state money, Bureau of Public Road funds, and Forest Reserve money, but cannot qualify for federal aid as it is not a part of the federal aid system (Chelan Valley Mirror)*.

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 10 of 17

NOTICE OF REMOVAL
OF ACTION -138-



**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

72. **May 17, 1934:** The forest service has shipped via of the freight boat and barge one tractor, two trucks, one grader, one compressor, five head of horses, and several tons of powder and various other road equipment to Stehekin for betterment and maintenance between Bridge creek and Stehekin. Bill Cheetam Okanogan is to be in charge *Chelan Valley Mirror*).

73. **September 20, 1934:** Forest Supervisor PT Harris reports that the survey party of the state highway department has just completed a survey of the proposed Cascades Pass highway. The party has been working on the survey for about two years and has gone over both projected routes, over Twisp pass and the Washington pass. Its final finding will be turned over to the highway department at once. A substantial new bridge has built at Bridge creek by the forest service, Harris said ((*Chelan Valley Mirror*).

74. **May 23, 1935:** The Chelan Forest Service is seeking to have the county replace a county dock that was had at one time at the head of Lake Chelan, and also to contribute more that its customary amount of $300 a year toward the maintenance of the 15 miles of highway at the head of the lake. It appears that the county commissioners, working on a limited budget, can see no way clear at present to build a dock, and as the highway maintenance, they sate they are limited according to the gas tax money derived from usage of the road. The road has hitherto been maintained on a co-operative basis between the Forest Service and Chelan county. This year the Forest Service is asking that the county raise its ante, in that there have been quite a number of bad slides on the road this past winter (*Chelan Valley Mirror*).

75. **October 8, 1936:** The favorable weather and the lack of forest fires during the present field season have enabled the forest service at Stehekin to make many desirable improvements, says Richard P. Bottcher, Stehekin district ranger. New road bridges have been erected at Rainbow creek and at Thimbleberry creek. The Stehekin road is being embellished with a new set of mile posts and information signs (*Chelan Valley Mirror*).

76. **April 29, 1937:** Definite steps are being taken to interest the United States forest service in building a 12-imles road from Bridge creek, above the head of Lake Chelan, up the Stehekin valley to the foot of the Cascade Pass. The Chelan County Panning council passed a resolution last Monday endorsing this road project and the Lake Chelan chamber of commerce did likewise at its regular meeting, Monday of this week. The proposed road is being urged for three definite reasons. First, it is needed for fire protection. Second, it will open up a virgin recreational ground, unsurpassed in beauty. Third, at will hasten the development of the rich Horse Shoe basin and Doubtful lake mining properties. And let it be said to the credit of the forest service department at least in this section, that they know how to build good mountain roads and can build them economically (*Chelan Mirror*).

77. **February 28, 1939:** Chelan business men today were viewing with interest the mine-to-market bill, passed by the house at Olympia Saturday. The bill provides for an

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 11 of 17

NOTICE OF REMOVAL
OF ACTION -139-

EXH- (27)

**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

appropriation of $100,000, half of which is to be spent during each year of the biennium, at the discretion of the mine-to market commission. The Chelan chamber of commerce is expected to ask for a slice of the $100,000 for development of a road from Bridge creek to the foot Horseshoe basin, Claude Bennett, chamber president, said last night. This road would be only 12 miles long, as there is now a good road from the head of Lake Chelan to Bridge creek. The road would be on the river grade and there would be little rock and work, those who know the country say. The road would cost between $20,000 and $25,000, he said. The state would pay an amount to be matched by the county *(Wenatchee World)*.

78.  **May 5, 1939:** Recent opinion by the state attorney general that the $100.000 of stated funds appropriate by the legislature for mine-to-market roads and the $100.000 counties are required to put up as matching money can be used to sponsor federal projects means a considerable extension of the mine-to market program in the opinion of John B. Fink, director of conservation and development. Eleven applications for mine-to-market projects have come to his office already, Fink said. An application has been put in for a road from Bridge Creek to Horseshoe Basin above Lake Chelan.... *(Wenatchee Daily World)*.

79.  **May 15, 1939:** County Engineer Don Black and two state highway department engineers today went into the Horseshoe Basin country at the head of Lake Chelan to being a state approved two-day investigation of a 10-mile mine-to-market road to open the area's mineral wealth. The state Mine-to- Market road commission approved the investigation Saturday. The mine-to-market road law was passed by the 1939 legislature to encourage construction or roads to mineralized areas *(Wenatchee Daily World)*.

80.  **May 24, 1939:** Estimated cost of the Horseshoe Basin mine-to-market road to open the area at the lead of Lake Chelan to mining development is $25,470, a preliminary survey sheet compiled by county and state engineers showed today as sent to the Chelan county auditor's office. The figures have been forwarded to the state nine-to-market road commission with a request that the state spend half the amount from its new $100,000 mine-to-market road fund. The road they suggest would run from Bridge Creek up the Stehekin river to the basin, a 1,200 foot rise in 10 miles. Included in their recommendation was a 40-foot log bridge at Rock creek *(Wenatchee Daily World)*.

81.  **May 29, 1939:** What happens to the Horseshoe Basin mine-to-market road depends now upon what the claim owners in the basin do, Ralph Dunning, county commissioner, said at commissioner's meeting here today. Dunning and County Engineer Don Black conferred JB Fink, director of the State Department of Conservation and Development, and state Mine-Market road chairman Friday. We want assurance now that the claim owners will actually develop their properties if we go farther, Dunning said. The job, as outlined by county and state engineers, would cost $25,000, half to be county and half state money. Dunning said the county hoped to cooperate with the state in making a forced account

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 12 of 17

EXH - (27)

**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

project to be done by state and county labor without letting contracts to private companies *(Wenatchee Daily World)*.

82. **June 8, 1939:** The mines-to-market road commission authorized the highway director today to proceed with construction of two roads, one at the head of Lake Chelan…The eight-mile $25,000 Lake Chelan job will extend into Horseshoe basin, following up Stehekin river from Bridge creek to Rouse camp. Already there is a road for 18 miles from the head of the lake at Stehekin up Stehekin river to the first of many rich ore deposits in Horseshoe basin. County Engineer Don Black surveyed the job and estimated that a road could be built for about $25,000. His recommendation was accepted by the county commissioners and now had the state's approval *(Wenatchee World)*.

83. **August 22, 1939:** Activities of the Mines-to-Market Road commission which recently approved construction of mining road in the Horseshoe Basin country… are threatened with disruption because of a mixup in legal interpretation, said a United Press story from Olympia. An appropriation of $100,000 was authorized – supposedly to be matched by counties, private individuals, and the federal government for aid to the Washington mining industry. Complications arose, however, when J.B. Fink director the department of conservation and development, pointed out that the state appropriation was to be drawn from the motor vehicle fund. It was into this fund that the counties and individuals were to make their contributions. Consequently, it was unclear whether the total funds available for the 1939-41 biennium amounted to $200.000 as intended, or $100.000. Eventually… the question went to attorney General G.W. Hamilton… He finally ruled that the authorized expenditures form the motor vehicle fund for the mines-to-market commission could not legally exceed $100.000 for the biennium *(Wenatchee Daily World)*.

84. **February 21, 1940:** Of the three mine-to-market roads now under construction in the state, two of them are in North Central Washington, one up the Stehekin river in Chelan county and the other from above Twisp to near Lookout pass in Okanogan county, according to a report from the secretary of state's office. The Stehekin road is about 45 per cent completed, and the Twisp road around 30 per cent. Washington's mineral production in 1939 was valued at $35,000,000 the report shows. This is an increase of $1,801,929 over 1938, and even a much greater gain over 1937 *(Wenatchee Daily World)*.

85. **March 7, 1940:** Work on the 10-mile road from Stehekin into the Horseshoe Basin area will probably be resumed in June, weather conditions permitting, according to County Commissioner Art Garton in a recent interview. Garton said that about half the road was completed last summer before snow made it impossible to continue operations, and about 45 per cent of the state and county funds allocated for the purpose have been spent. The road is being constructed with county funds matched with state money from a $50,000 grant for the development of mine-to-market roads. The cost for partial construction to the Horseshoe Basin district was estimated a $25,000 last summer. Garton was of the opinion that approximately 30 days more this year would finish the job. He also pointed out that

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 13 of 17

NOTICE OF REMOVAL
OF ACTION -141-



**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

(in) April 1 another $50,000 state fund would be made available, but commissioner have not determined whether or not to add to the Horseshoe Basin grant in order to apply for additional state money (*Chelan Valley Mirror*).

86.  **November 7, 1940**: Important mineralized areas, particularly in North Central Washington, have already been opened and further of such areas, whose hidden treasures are a vital necessity to national defense, will presently be opened as result of completion of another 20 miles of good highway, it is announced by J.B. Fink, head of the State Department of Conservation and Development and chairman of the Mines-to-Market Road Commission. Chelan county: Up Stehekin river into the Horseshoe basin district. This area is regarded as particularly promising mining section (*Chelan Valley Mirror & Northwest News Weekly*).

87.  **January 6, 1941**: The state today turned over to Chelan county as completed the Stehekin river mine-to-market road. The eight-mile stretch from Bridge creek to the Horseshoe Basin will now be classed as a county road and maintained by the county. State report to commissioners showed total cost of the project as $24,587.20 (*Wenatchee Daily World*).

88.  **March 13, 1941**: Achie Smith, county commissioner, spent last week in Olympia conferring with state officials in an attempt to work out plans for the completion of the mine-to-market road about Lake Chelan. Smith reported the trip to be highly successful. Three miles of road is yet to be constructed and a great deal of work in necessary to put the lower 16 miles of the route in shape for heavy traffic (*Chelan Valley Mirror*).

89.  **November 22, 1944**: Chelan county commissioners have authorized road construction at a cost not to exceed $16,000 to improve the Horseshoe Basin road near the head of Lake Chelan. Twenty-five per cent of the cost will be borne by the county and 75 per cent by the state, in accordance with the law governing mine-to-market roads, County Engineer Don West said today. The work will consist of a change in location of a portion of the old road which is subject to wash-outs by the Stehekin river each spring and extending the present road about a half mile. There are a number of mines and mining claims in this area that will be served by the new road (*Wenatchee Daily World*).

90.  **August 7, 1945**: The Washington mine-to-market road commission headed by Art Garton of conservation and development yesterday approved five road projects. Projects included...STEHEKIN ROAD – CHELAN: $5,000 contingent upon county commissioner approval of relocating the resent road (*Wenatchee World*).

91.  **August 30, 1945**: Chelan county commissioners are taking an inspection trip over the Horseshoe Basin, mine-to-market road at the head of Lake Chelan. This road was built last year and the commissioners are inspecting the work to determine the advisability of extending the road. It is in one of the most difficult section of the country for road building. Sheldon Glover, state engineer for the department of the conservation

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 14 of 17



EXH-㉗

### Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

accompanied the commissioner on their trip. They will return Friday afternoon *(Wenatchee World)*.

92. **April 23, 1948**: Forest Service builds new Bailey-Type bridge across the Stehekin (river at Harlequin crossing) *(Spokesman-Review)*.

93. **June 3, 1948**: Floods Hit Out-Lying Localities – Chelan by-Passed in Devastation Received in NW Past Week: ... Damage at Lucerne and Stehekin was small except for the roads which are washed out quite badly. Most of the road up from Stehekin is badly damaged *(Chelan Mirror)*.

94. **July 25, 1949**: State May Build Road to Horseshoe Basin Mines – A new state-built road from the head of Lake Chelan into the Horseshoe Basin mining district is in prospect of the near future, Chelan County Commissioner K.P. Sexton announced today. There is a 28-mile stretch of road from Stehekin into the heart of the mining district necessary for the continued development of the district, Sexton says. The Washington law permits the state to build mine-to-market road to aid in the development of areas that give indications of being worth developing. Once built, the road would revert to the county in which it is located, the county to assume responsibility for its maintenance *(Wenatchee Daily World)*.

95. **October 10, 1949**: The Stehekin road, the road that nobody wanted, leading from Stehekin into the Horseshoe Basin area at the head of Lake Chelan, is no longer a homeless waif, Chelan County Commissioner William Galbraith announced today. The state has allocated $23,000 to rebuild the unwanted stretch of roadway, Galbraith said. The road was formerly built by the state, the only piece of state-built road in Chelan county, Galbraith explained today. Then during the flood period in 1948 a section of the road was washed out. The mining people in the district built a detour around the destroyed area, but it wasn't much of a road. Then the last legislature, to further complicate the issue, voted to give the road back to the county. It wasn't a road they gave us – it was a detour, Galbraith explained. It would have cost us a lot of money to rebuild it into a usable road, and we didn't want to accept a white elephant, so we balked, he added. The county refused to accept the gift. There the matter has been deadlocked for time, until today announcement that $23,000 of state funds have been allotted to rebuild the road cleared the situation up again *(Wenatchee World)*.

96. **December 8, 1949**: Up-Lake Country Suffers Severe Storm Damage – Don West, county engineer, Slim Lem, county road supervisor, and Bill Galbraith, county commissioner, accompanied Forest Service district Ranger, Leonard Rampton and Sim Besson on an up-lake inspection trip last Wednesday... The trip was made primarily to look over the damage done by the severe wind and rain storm the previous week. A lot of damage was done by the river, mostly washouts, according to Mr. Galbraith. And he emphasized that damage was much more severe than from the 1948 flood. Although a complete survey of the damage could not be made at this time, nor a great deal of repair work done before the heavy snows of winter, the county does have a D-6 bulldozer in operation to clear slides

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 15 of 17

NOTICE OF REMOVAL
OF ACTION -143-

EXH-27

**Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)**

and make the roads passable. Curt Courtney is operating the bulldozer and expects to finish in about ten days (*Chelan Valley Mirror*).

97. **June 11, 1953:** At Bridge Creek – Chelan County Commissioners Benton Bangs and county engineer Don West were in Stehekin last Thursday. They examined the road and other county installations (*Chelan Valley Mirror*).

98. **July 12, 1956:** Stehekin road to be patrolled – Sheriff's road patrol will extend to the 24-mile-long county road at Stehekin on the head of Lake Chelan. Sheriff Dick Nickell said today that he expects to send a deputy into that area within the next two weeks. The purpose is not to check speeders on this dirt road that extends into an unpopulated are of the Cascades Mountains, but to see that motorists are using 1956 license plates on their cars. Since the only means of reaching Stehekin are by boat or plane, the visits of law enforcement officials do not come often. It is only fair that the motorists using the county road pay the license fee since it is the most costly road in Chelan County to maintain when considering per capita use basis, said Nickell (*Chelan Valley Mirror*).

99. **November 6, 1969:** Chelan County won't turn the Stehekin River Road over to the North Cascades National Park until all the legal aspects are worked out. That was the general outcome of a meeting between county commissioners and park officials last week during the commissioner' regular session at Wenatchee. Present at the meeting were Roger Cantor, Sedro-Woolley, superintendent of the North Cascades National Park; Jerry Hammond, a national parks official from Sedro-Woolley, and George Wagner, ranger at Stehekin. Engineer Don West said the park service wants control of the road and that the meeting covered what will be involved in turning it over to the park department. He said the park service "*absolutely assured us that it (the road) will be maintained and improved, including the bridges*". He made the comment to allay fears of residents there that if the park service takes the road over, it won't be maintained. West said the next step is for the attorneys to work out the mechanics of the turnover. He said he had no idea how long that might take. In the meantime, the county will continue to maintain the road (*Chelan Valley Mirror*).

100. **March 31, 1970:** <u>County gets rid of Stehekin road</u> – Turning over title to a 12-mile stretch of county road from Stehekin to Bridge Creek to the federal government was approved Monday by Chelan County commissioners. And County Engineer Don West breathed a sigh of relief. "*It's one of the most expensive roads to maintain that we have,*" West said of the isolated Stehekin area road. Maintenance has been done by contract with area residents. County commissioners said the area is included in the North Cascades National Park. That agency will assume the responsibility of improving and maintaining the roadway now (*Wenatchee World*).

101. **May 28, 1970:** <u>New bridge to be built in Stehekin Valley</u> – The National Park Service will build a new bridge across Bridge Creek in the Stehekin Valley this summer. This would

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 16 of 17

148

EXH - 27

Chronology of Costs & Work Effort on the Stehekin Valley Road (1891 – 1970)

re-open the Stehekin road to Cottonwood for vehicles late this summer, according to District Ranger George Wagner, Chelan, North Cascades National Park. Construction will be underway before July 1, said Wagner. The road recently was transferred to the National Park Service by Chelan County. Repair of a washout about one-half mile below Cottonwood also will be accomplished this summer, the district ranger said *(Wenatchee World)*.

102. **May 19, 1970**: Excerpts from article re: National Park Service plans for Stehekin: Some residents voiced concern about maintaining the road on the west side of the Stehekin river which provides access to several resident homes and summer cabins. This road is on private land. It wasn't transferred to the park service at the time Chelan recently turned over the main county road up the valley to the Federal agency. The park service is investigating the problem *(Wenatchee World)*.

This document prepared by Plaintiff from newspaper articles obtained from the National Park Service

Page 17 of 17

NOTICE OF REMOVAL
OF ACTION -145-

E-FILED

JULY 09, 2020
TRISTEN WORTHEN
DOUGLAS COUNTY CLERK
KMM

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF DOUGLAS

JAMES BOHN,

      Plaintiff,

vs.

CHELAN COUNTY,

      Defendant.

No. 20-2-00147-09

NOTICE OF APPEARANCE
BY DEFENDANT CHELAN COUNTY

TO:      JAMES BOHN, Plaintiff

AND TO:    CLERK OF THE COURT

PLEASE TAKE NOTICE that the appearance of the defendant CHELAN COUNTY is hereby entered in the above-entitled action through Robert W. Sealby, Chelan County Deputy Prosecuting Attorney, without waiving any defenses or objections, including but not limited to objections to improper jurisdiction or service, or any other defenses available to the Defendant.

Defendant requests that all future pleadings or papers herein, exclusive of original process, are to be served upon said attorney at the address below stated.

Defendant and its undersigned attorney do not agree to accept service by facsimile or electronic communications, i.e. e-mail.

NOTICE OF APPEARANCE BY
DEFENDANT CHELAN COUNTY -1-

DOUGLAS J. SHAE
CHELAN COUNTY
PROSECUTING ATTORNEY
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

DATED this 9th day of July, 2020.



Robert W. Sealby  WSBA #21330
Chelan County Deputy Prosecuting Attorney
P.O. Box 2596
Wenatchee, WA 98807-2596
(509) 667-6330
Attorney for Defendant Chelan County

NOTICE OF APPEARANCE BY
DEFENDANT CHELAN COUNTY -2-

DOUGLAS J. SHAE
CHELAN COUNTY
PROSECUTING ATTORNEY
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

NOTICE OF REMOVAL
OF ACTION -147-



E-FILED

JULY 09, 2020
TRISTEN WORTHEN

DOUGLAS COUNTY CLERK
KMM

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF DOUGLAS

JAMES BOHN,

    Plaintiff,

vs.

CHELAN COUNTY,

    Defendant.

No. 20-2-00147-09

DECLARATION OF SERVICE

I, Cindy Dietz, under penalty of perjury under the laws of the State of Washington, declare that on the 9th day of July, 2020, I caused a true and correct copy of the NOTICE OF APPEARANCE BY DEFENDANT CHELAN COUNTY to be served on the following in the manner indicated below:

James Bohn
3509 East Deer Road
Mead, WA 99021

(X)  U.S. Mail, postage prepaid
( )  E-Mail
( )  Facsimile
( )  Hand Delivery

Signed at Wenatchee, Washington, this 9th day of July, 2020.

Cindy Dietz
Legal Administrative Supervisor
Chelan County Prosecuting Attorney's Office

DECLARATION OF SERVICE

DOUGLAS J. SHAE
CHELAN COUNTY
PROSECUTING ATTORNEY
P.O. Box 2596
Wenatchee, WA 98807
(509) 667-6202

NOTICE OF REMOVAL
OF ACTION -148-